**U.S. DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| Mr. Michael Moates, individually and on behalf of DC Chronicle, a 501(c)3 non-profit charity organization | Case No.: 4:20-CV-00896 |
| | **AMENDED COMPLAINT** |
| Plaintiffs, <br> v. | **JURY TRIAL DEMANDED** |
| | Judge: Mazzant |
| Facebook Inc., Facebook Payments Inc, Mark Zuckerberg, as Chief Executive Officer, Sheryl Sandberg, as Chief Operating Officer | Date Action filed: <br> Date set for trial: |
| | **FILED** |
| Defendants. | NOV 2 5 2020 |
| | Clerk, U.S. District Court <br> Eastern District of Texas |

**I. NATURE OF THE CASE**

1. Plaintiff Michael Moates brings this action individually and on behalf DC Chronicle. These plaintiffs (collectively referred to as "Plaintiffs") bring this action against Defendants Facebook Inc, Facebook Payments Inc, Mark Zuckerberg (in his official capacity as CEO), and Sheryl Sandberg (in her official capacity as COO), (hereinafter referred to collectively as "Defendants," or individually by their respective acronyms). This complaint seeks equitable and injunctive relief for the disabling of Michael Moates' Facebook, Messenger, Instagram Accounts, CrowdTangle, all pages and groups connected to these accounts, and the disabled features on the Oculus Go Device (hereinafter referred to collectively as "Products,".) This includes the data that is stored on the servers that the refuse to release to the Plaintiff. This complaint also seeks damages for fraudulent and unauthorized charges or attempted charges after products were disabled, loss of wages due to deactivation, and fraudulent advertising.

COMPLAINT AND REQUEST FOR PUNITIVE DAMAGES, AND
PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE)
- 1 -

1

## II. JURISDICTION and PARTIES

2

3

2. Defendants Michael Moates resides does business with principal places of business in

4

Denton, Texas. The amount in controversy exceeds $75,000. Therefore, jurisdiction of this court

5

is proper.

6

3. This Court has subject matter jurisdiction over Moates's federal antitrust

7

claims pursuant to the Clayton Antitrust Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331

8

and 1337.

9

4. The Court also has subject matter jurisdiction over the state law claims pursuant to 28

10

U.S.C. § 1332 based on the diversity of citizenship of Moates, on one hand, and of Facebook, on

11

the other.

12

13

## III. FACTUAL ALLEGATIONS

14

5. Since August 29th, the Plaintiff has invested $10,546 (See Exhibit A) on advertising

15

with Facebook Inc. to build a following through "likes" on multiple of his pages that allow him

16

to earn income via engagement of posts[1]. Reach is determined by number of followers and likes.

17

When someone spends money to build an audience they invest, and that money is returned

18

19

through different types of engagements.

20

6. On October 7th, 2020, the defendant received an email message and notification on the

21

Facebook website stating that he was not following community standards (See Exhibit B). The

22

Plaintiff, unsure of what he did wrong immediately reached out to Facebook Support. Facebook

23

24

Support responded that his page was "in good standing," (See Exhibit C) acknowledged that this

25

"may have cause confusion" for the Plaintiff and instructed him "have this reported as a bug."

26

5.On October 20th, 2020, the Defendants disabled access to the defendants Facebook (See

27

Exhibit D) and Facebook Business Manager Account (which included Creator Studio, Pages, and

28

Ads). This was done without any notification or explanation and the Plaintiff was made aware

when he attempted to access his account, he saw a message that read "For more information, or

if you think your account was disabled by mistake, please visit the Help Center," on Facebook

7. Shortly thereafter, the Plaintiff's Instagram was disabled and a message appeared,

"Thanks for Providing Your Info. We'll review your info and if we can confirm it, you'll be able

to request a review in the Help Center within approximately 24 hours," on Instagram.

8. Subsequently, the Plaintiff was unable to access his Oculus and Crowd Tangle

accounts due to Facebook disabling Facebook login.

9. After all of this took place on October 20th, 2020, the Plaintiff reached out to Carolyn

Everson (Vice President, Facebook) who said she "So sorry this happened" and "hoping for

some resolution." She included two of her staff members Meghan Orbe and Conrad Gibson on

her email. Conrad responded very quickly asking for some details and said "I'll be in touch once

I have an update from the account team." Conrad responded two days later stating "Apologies

for the delay as I worked with our team on your request. I heard back this morning and it seems

that your accounts were disabled permanently and, due to policy guidelines, they are unable to

share why the accounts were deactivated. I am so sorry this happened to you. I asked for more

information, but they were unable to share with me. I wish I could give you a better explanation,

but unfortunately, we have these rules in place to protect a user's privacy. I know that you had a

lot of photos saved to your accounts that you wanted to access. They provided me with the

following information on how to request data from a closed account." The links Conrad provide

were broken and did not work. (See Exhibits E) The Plaintiff subsequently reached out and was

given a new link. Upon filling out the request in the new link for his data Facebook said "The

---

[1] https://www.facebook.com/business/ads/ad-objectives

1   Facebook account associated with the email address you provided to us has been disabled for

2   violation of our Terms of Service." They did not provide the data they admit belongs to him.

3       10. After getting no resolution from Carolyn Everson and her team, on October 23, 2020,

4   the Plaintiff reached out to Fidji Simo (Head of Facebook, Facebook Inc.). He explained the

5   situation again and she said "I want to look into why that happened" and again her colleague

6   would follow up "Priya will follow up." Priya emailed that same day saying "Will have some

7   more info shortly - thanks for your patience here!" To date, she has never followed up with the

8

9   Plaintiff. (See Exhibits F)

10      11. Less than a month and a half after initial Facebook ads were bought to invest in a

11  business page following and audience Facebook disabled the account after making over $10,000

12  from the Plaintiff.

13

14      12. The week before Facebook disabled the account, they charged the Plaintiff $5,137 for

15  an audience they took away less than 6 days later. (See Exhibit G)

16      13. The Defendants have a history of disabling accounts without any explanation. (See

17  citations below)

18

19      14. The Defendants has not shown that the Plaintiff violated any rules on each platform

20  that he was banned from. In fact, they have stated multiple times that they really can't say why

21  his account was disabled.

22      15. The Defendants have a history of selectively enforcing their terms of service and

23  community standards or updating them so that it benefits them for profit. For example, in April

24  of 2012 the Ad Guidelines said "Ads must not promote the sale of prescription pharmaceuticals[2]"

25

26

27

28  ───────────────
    [2] https://archive.is/V8iS4#selection-1699.7-1699.68

but that was quickly changed so the Defendants could profit from big pharmaceutical companies such as Vyvanse[3].

16. The Plaintiff's ask the court to consider the Defendants not protected under Section 230 of the Communications Decency Act. They are no longer a distributor of information, but they selectively publish their own information. The employee third party fact-checkers that they pay and then promote on the platform. This makes them a publisher not simply a platform.

17. Facebook admits in terms of service that "guarantee it" {keeping Facebook safe}.

18. Facebook engaged in unlawful monopolistic by acquiring many competing companies. This included its acquisition of Instagram in 2012, its purchase of WhatsApp in 2014, its purchase of Oculus in 2014 and many others. This is especially shown when they target the accounts of users from one platform to the next. Facebook Inc. imposes unreasonable and unlawful restraints to completely monopolize both markets and prevent competition across a spectrum of social media and software related companies. For example, according to Facebook, "If you are new to Oculus, or using Oculus Quest 2, a Facebook account is required to use your device, apps, and the Oculus store.[4]" Therefore, if you purchase an Oculus device and Facebook decided you are not worthy of their platform you can no longer use the device you purchased. Same goes across all of the platforms, if they disable you on Facebook, they disable your Instagram[5][6][7], Messenger, and Crowdtangle without cause.

19. The anti-competitive consequences of Facebook's conduct are pervasive. These products have become an integral part of people's daily lives; as a primary source for news, a

---

[3] https://www.facebook.com/ads/library/?active_status=all&ad_type=all&country=US&view_all_page_id=2577210512505316&sort_data[direction]=desc&sort_data[mode]=relevancy_monthly_grouped
[4] https://www.oculus.com/blog/facebook-accounts-on-oculus/?locale=en_US (https://archive.is/wip/1MjUL)
[5] https://twitter.com/Hysminai_Uchiha/status/1322289749592334336
[6] https://twitter.com/mamaneedabottle/status/1322246967313969152
[7] https://twitter.com/Wolfstroy/status/1322321489861947392

1  place for entertainment, a tool for business, a means to connect with friends and family, and

2  more. For many consumers, the products are stay connected to the digital world.

3      20. Not only does Facebook serve as a monopoly but they target based on political

4  influence. The disabled the Plaintiff's and many others accounts[8][9][10] three days before the 2020

5  

6  Presidential Election.

7      21. Furthermore, the Defendants have a tendency to give users the run around. The tell

8  you to "send in your ID" and they will get back to you and this never happens[11]. They have a

9  history of emailing consumers and saying they will respond with more information but then do

10  not follow up. They claim they will text you a code but never do[12].

11  

12      22. The Plaintiff has approached the defendants to attempt to resolve this situation. The

13  Defendants chose to mislead the plaintiff by saying they would respond with more information

14  and work to seek a resolution and then began ignoring and blowing off the Plaintiff. Evidence

15  will be introduced in court do support this claim.

16      23. Accordingly, Plaintiff seeks injunctive relief in court to end Apple's

17  unreasonable and unlawful practices. Facebook's conduct has caused and continues to cause

18  

19  financial harm.

20

21

22

23

24

25

26

27

28

---

[8] https://twitter.com/rob2675/status/1322285933589389315
[9] https://twitter.com/BeckyNieshalla/status/1322287481883152385
[10] https://twitter.com/BriskeyBaby/status/1322284608918937600
[11] https://twitter.com/politicalpastry/status/1322263450832281602
[12] https://twitter.com/barbi_mr/status/1322298733338525696

1

## IV. CAUSES OF ACTION

2

### FIRST CAUSE OF ACTION

3

#### Fraud

4

5
24. From August to October the Plaintiff spent $10,546 on advertising with Facebook

6
Inc.

7
25. The Defendants advertised these ads as giving the Plaintiff the ability to get people

8
"engage with your posts through comments, shares and likes." They disabled his account so he

9
could not get this benefit but still charged him.

10

11
26. The Defendants committed a second type fraud. They did so by placing ads in front of

12
the Plaintiff that caused him to follow certain pages that have now lost their investment from the

13
advertisement he clicked on.

14

15
### SECOND CAUSE OF ACTION

16
#### Strict Tort Liability

17

18
27. The aforementioned banned accounts caused the Plaintiff to lose his audience and

19
revenue from said audience.

20
28. The aforementioned banned accounts caused the Plaintiff to lose value in his Oculus

21
device he purchased from the company.

22
29. The banned accounts has caused the Plaintiff emotional distress including anxiety and

23
depression due to loss of all data, revenue, and communications.

24

25

26

27

28

1

2

**THIRD CAUSE OF ACTION**

**<u>Violation of Civil Rights</u>**

3

4

5

6

7

8

9

10

11

12

13

30. The Plaintiff suffers from Anxiety and Depression. The Defendants violated the Americans with Disabilities Act when they did not provide reasonable accommodations and discriminated against the Plaintiff by the choosing to exclude and segregate him without cause. To date, they have no policies or procedures in place for those with mental health issues that are covered under the ADA laws. See (Guillermo Robles v Dominos Pizza, LLC) "Title III of the ADA, the section of the ADA in question, says that companies can't discriminate against disabled individuals "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation."

14

15

**FOURTH CAUSE OF ACTION**

**<u>Violation of Anti-Trust Laws</u>**

16

17

18

19

20

21

31. The Sherman Act also makes it a crime to monopolize any part of interstate commerce. An unlawful monopoly exists when one firm controls the market for a product or service, and it has obtained that market power. Defendants' has acquired multiple companies in violation of anti-trust laws in order to dominate the market. They acquired Instagram, WhatsApp, CrowdTangle, Giphy, Oculus, and others.

22

23

24

32. This is shown in their behavior when the not only disabled the Facebook account of the Plaintiff but his Instagram, Crowdtangle, and Oculus accounts.

25

26

33. They violated the Clayton Act which says it prohibits mergers or acquisitions that are likely to lessen competition. This happened when Facebook purchased Instagram.

27

**FIFTH CAUSE OF ACTION**

28

**Data Theft**

34. Defendants claim "You can download a copy of your data at any time" in their terms of service. However, this is not true. They have stolen and hijacked the Plaintiffs data across all of the platforms.

35. Again, Defendants has manipulated its Terms of Service which used to state "you own all of the content and information you post on Facebook, and you can control how it is shared.[13]" The removed this sometime between March 2018 and September 2020.

36. Defendants engaged in "largest known leak in Facebook history[14]" by giving access to Plaintiffs personal private data to Cambridge Analytica.

**SIXTH CAUSE OF ACTION**

**Violation of Contract (Terms of Service)**

37. Defendants violated their own terms of service[15] when they allowed high profile sex offenders to join[16][17][18].

38. Defendants violated their own terms of service when they allowed illegal multi-level marketing pyramid schemes on Facebook[19].

---

[13] https://www.latimes.com/business/lazarus/la-fi-lazarus-facebook-cambridge-analytica-privacy-20180320-story.html#:~:text=The%20reality%20is%3A%20Your%20data,free%2C%E2%80%9D%20said%20Scott%20J.

[14] https://www.nytimes.com/2018/04/04/us/politics/cambridge-analytica-scandal-fallout.html

[15] https://web.archive.org/web/20140526070122/https://www.facebook.com/terms.php

[16] https://www.facebook.com/billcosby

[17] https://www.facebook.com/miketyson

[18] https://www.facebook.com/tupacshakur/

[19] https://www.facebook.com/advocare/

39. Defendants violated their own terms of service by allowing people "transfer your account (including any Page or application you administer) to anyone without first getting our written permission."

40. Defendants violated their own terms of service by allowing people to "bully, intimidate, or harass any user."

41. Defendants violated their own terms of service by allowing content that is "hate speech, threatening, or pornographic; incites violence; or contains nudity or graphic or gratuitous violence."

42. Defendants violated their own terms of service by doing actions that are "unlawful, misleading, malicious, or discriminatory."

43. Defendants violated their own terms of service by allowing content that is a violation of intellectual property laws.

44. Defendants violated their own community standards by allowing violence and threats. Including messages to the Plaintiff telling him to "kill himself."

45. Defendants violated their own community standards by allowing bullying and harassment, hate speech, graphic content, nudity and pornography, and spam.

46. Defendants violated their own community standards by disabling the Plaintiff's account claiming he violated community standards when in fact he did not.

**Punitive Damages**

47. The conduct of Defendants described above is outrageous. Defendants' conduct demonstrates a lack of respect for the law and shows that they are interested in only earning a profit. They have committed theft, fraud, civil rights violations, and many other violations of the law.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for a judgment against Defendants for:

1.  Injunctive and equitable relief as the Court deems appropriate including:

Requiring Defendant reactivate all accounts on the products; and

2.  Compensatory damages to be paid by all Defendants, according to proof at trial;

3.  Punitive damages as the court deems appropriate;

4.  Any other relief as the court deems appropriate.

Dated:

_____,

Michael Moates
Pro Se
2700 Colorado Blvd #1526
Denton, TX 76201