**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| MICHAEL MOATES, individually and on behalf of DC CHRONICLE,<br><br>*Plaintiffs,*<br><br>v.<br><br>FACEBOOK, INC., FACEBOOK PAYMENTS, INC, MARK ZUCKERBERG, as Chief Executive Officer, SHERYL SANDBERG, as Chief Operating Officer,<br><br>*Defendants.* | Civil Action No. 4:20-cv-00896-ALM-KPJ |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND .......................................................................................................... 3

III. LEGAL STANDARD.................................................................................................. 5

IV. ARGUMENT................................................................................................................ 5

A. Plaintiff fails to show a substantial likelihood of success on the merits................ 6

1. Plaintiff submits no evidence or reasoned argument to support his antitrust theory of liability. .......................................................... 6

2. Plaintiff seeks relief that is barred by the Communications Decency Act.......................................................................................... 8

3. Plaintiff seeks relief that is barred by the First Amendment. ................... 10

B. Plaintiff has not proven and cannot prove that he will be irreparably harmed absent a temporary restraining order.................................................................... 12

C. The remaining factors favor Defendants............................................................ 13

V. CONCLUSION........................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arthritis & Osteoporosis Clinic of E. Texas, P.A. v. Azar*,
450 F. Supp. 3d 740 (E.D. Tex. 2020) ........................................ 2

*Brittain v. Twitter, Inc.*,
2019 WL 2423375 (N.D. Cal. June 10, 2019) ........................................ 9

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
479 U.S. 104 (1986) ........................................ 8

*City of Dallas v. Delta Air Lines, Inc.*,
847 F.3d 279 (5th Cir. 2017) ........................................ 5

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........................................ 7

*CoreClarity, Inc. v. Gallup, Inc.*,
2020 WL 5095130 (E.D. Tex. Aug. 28, 2020) ........................................ 2, 5, 13

*Deerfield Medical Center v. City of Deerfield Beach*,
661 F.2d 328 (5th Cir. 1981) ........................................ 12

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ........................................ 8

*Donovan v. Road Rangers Country Junction, Inc.*,
736 F.2d 1004 (5th Cir.1984) (per curiam) ........................................ 1

*Ebeid v. Facebook, Inc.*,
2019 WL 2059662 (N.D. Cal. May 9, 2019) ........................................ 10

*Federal Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) ........................................ 10

*Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*,
2020 WL 7064607 (5th Cir. Dec. 3, 2020) ........................................ 5

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
515 U.S. 557 (1995) ........................................ 11

*Johnson v. Hosp. Corp. of Am.*,
95 F.3d 383 (5th Cir. 1996) ........................................ 6, 7

*Kiepfer v. Beller*,
944 F.2d 1213 (5th Cir. 1991) ....................7

*King v. Facebook, Inc.*,
2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ....................10

*La'Tiejira v. Facebook, Inc.*,
272 F. Supp. 3d 981 (S.D. Tex. 2017) ....................8, 9, 11

*Lancester v. Alphabet Inc.*,
2016 WL 3648608 (N.D. Cal. July 8, 2016)....................10

*Langdon v. Google, Inc.*,
474 F. Supp. 2d 622 (D. Del. 2007)....................11

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982)....................6

*Mann v. Choate*,
2018 WL 1400945 (E.D. Tex. Mar. 19, 2018) ....................13

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
925 F.3d 1263 (D.C. Cir. 2019) ....................9

*Miami Herald Publ'g Co. v. Tornillo*,
418 U.S. 241 (1974)....................11

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
806 F.3d 835 (5th Cir. 2015) ....................7

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984)....................7

*Phototron Corp. v. Eastman Kodak Co.*,
842 F.2d 95 (5th Cir. 1988) ....................7

*Planned Parenthood Ass'n of Hidalgo Cty. Texas, Inc. v. Suehs*,
692 F.3d 343 (5th Cir. 2012) ....................2, 5, 6

*PruneYard Shopping Center v. Robins*,
447 U.S. 74 (1980)....................10

*Reno v. Am. Civil Liberties Union*,
521 U.S. 844 (1997)....................11

*Riggs v. MySpace, Inc.*,
444 F. App'x 986 (9th Cir. 2011) ....................10

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
487 U.S. 781 (1988)....................10

*Turner Broadcasting System, Inc. v. FCC*,
512 U.S. 622 (1994)....................10

*Zhang v. Baidu.com, Inc.*,
10 F. Supp. 3d 433 (S.D.N.Y. 2014)....................11

*Zinter v. Salvaggio*,
2018 WL 5098785 (W.D. Tex. Oct. 19, 2018)....................12

**Federal Statutes**

42 U.S.C. § 1983....................6

Clayton Act § 16....................8

Communications Decency Act § 230....................1, 2, 6, 8, 9, 10

Sherman Act.................... *passim*

**Rules**

Fed. R. Civ. P. 6(c)(2)....................12

## I. INTRODUCTION[1]

This action arises from allegations that Defendant Facebook, Inc.[2] violated various federal and state laws when it disabled social media accounts belonging to *pro se* Plaintiffs Michael Moates and DC Chronicle. To remedy the alleged harm, Plaintiffs seek monetary damages, as well as an order requiring Facebook to reinstate the deactivated accounts.[3] Defendants will move to dismiss Plaintiffs' amended complaint in due course, including because Plaintiffs' threadbare recitals fail to state any claim, as pled would violate Facebook's First Amendment rights, and are barred by section 230(c)(1) of the Communications Decency Act. [4]

In the instant motion, individual Plaintiff Michael Moates[5] demands ***emergency*** relief from this Court in the form of a temporary restraining order. Plaintiff's sole basis for seeking this relief is his allegation that Facebook is in violation of the Sherman Act, though the relief he seeks bears no connection to federal antitrust law. Plaintiff requests the Court issue an order (1) "compelling" Facebook to reinstate the deactivated accounts; (2) "restraining" Facebook

---

[1] Throughout this brief, unless otherwise stated, emphases were added to quotations and internal punctuation, alternations, and citations were omitted from them.

[2] Plaintiffs' Amended Complaint also names Facebook Payments, Inc., Mark Zuckerberg, and Sheryl Sandberg as Defendants, though only Facebook has been served. In any event, the Amended Complaint fails to articulate what role, if any, that those Defendants played in the conduct alleged by Plaintiffs. *See* ECF No. 5. Accordingly, Defendants focus herein on the conduct alleged against Facebook, Inc.

[3] ECF No. 5 (Amended Complaint), Prayer For Relief.

[4] Plaintiffs recently sought and obtained permission to proceed *in forma pauperis*. ECF No. 7. But in federal court, a corporation—which Plaintiff DC Chronicle appears to be—is not permitted to proceed *pro se*. "[T]he 'clear' rule is 'that a corporation as a fictional legal person can only be represented by licensed counsel." *Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir.1984) (per curiam). When a corporation declines to hire counsel to represent it, a court may properly dismiss the corporation's claims. *See id.* Accordingly, Defendants intend to move to dismiss any claims asserted by DC Chronicle on this basis as well.

[5] Because the motion appears only to seek relief for Plaintiff Moates, and not for Plaintiff DC Chronicle, Defendants will use the singular "Plaintiff" when discussing the emergency motion and the plural "Plaintiffs" when discussing the amended complaint. But to the extent DC Chronicle claims entitlement to any temporary injunctive relief, any such claim must be rejected because DC Chronicle cannot obtain such relief while it proceeds *pro se*. *See* n. 3, *supra*.

"from disabling any access" to those already disabled accounts; and (3) "restrain[ing]" Facebook "from taking any adverse action against Plaintiff."[6] Instead of seeking merely to preserve the status quo pending further litigation, Plaintiff's emergency motion demands the opposite: a mandatory injunction requiring Facebook to reverse course and reinstate the same accounts it allegedly disabled. *See Arthritis & Osteoporosis Clinic of E. Texas, P.A. v. Azar*, 450 F. Supp. 3d 740, 748 (E.D. Tex. 2020) ("The purpose of a preliminary injunction is to ***preserve the status quo*** and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits.").

There is no basis in fact or law for the extraordinary relief Plaintiff seeks. Nor is there any reason for this Court to award any relief at the outset of this litigation, without Plaintiff having proven a single element of any of his claims. Indeed, Plaintiff fails to establish any ***one*** of the four factors required for a temporary restraining order. *See Planned Parenthood Ass'n of Hidalgo Cty. Texas, Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (setting out the four factors a moving party must satisfy to win preliminary injunctive relief); *CoreClarity, Inc. v. Gallup, Inc.*, 2020 WL 5095130, at *2 (E.D. Tex. Aug. 28, 2020) (applying those same factors to a motion for temporary restraining order). Plaintiff submits no evidence—as he must—to establish that he will suffer irreparable injury absent an emergency temporary restraining order. Nor does Plaintiff clearly establish—as he must—that he is substantially likely to prevail on the merits of his Sherman Act claim. Facebook's conduct in removing or restricting access to content uploaded to its platform is protected by the Communications Decency Act ("CDA") and the First Amendment. Furthermore, the balance of hardships favors Defendants, and the

---

[6] ECF No. 6 (Plaintiffs' Emergency Motion for Temporary Restraining Order) at 1.

emergency injunctive relief Plaintiff seeks would disserve the public interest. Accordingly, this Court should deny Plaintiff's emergency motion.

## II. BACKGROUND

Plaintiffs Michael Moates and DC Chronicle filed this action in November 2020, accompanied by an application for leave to proceed *in forma pauperis*.[7] Shortly thereafter, Plaintiffs jointly lodged an amended complaint, and Plaintiff Moates filed the instant emergency motion.[8] On November 30, 2020, this Court granted Plaintiffs' request to proceed *in forma pauperis* and ordered Defendants to respond to Plaintiff Moates's emergency motion within 7 days of receipt of service of process.[9]

Plaintiffs claim to be users of various Facebook-related products and services, including Facebook's advertising services.[10] In their amended complaint, Plaintiffs allege that Facebook wrongfully disabled their "Facebook, Messenger, Instagram," and "CrowdTangle" accounts, as well as "all pages and groups connected to these accounts."[11] Plaintiffs also accuse Facebook of disabling "features" on an "Oculus Go Device" presumably owned by Plaintiffs.[12] Plaintiffs concede that these accounts were disabled several weeks after Facebook warned Plaintiffs in writing that they were "not following [Facebook's] community standards."[13]

---

[7] ECF No. 1 (Complaint); ECF No. 3 (Motion for Leave).

[8] ECF No. 5 (Amended Complaint); ECF No. 6 (Emergency Motion for Temporary Restraining Order).

[9] ECF No. 7. Service was issued on December 3, 2020 (ECF No. 9). As of the date of the filing of this brief, Facebook has not confirmed receipt of service.

[10] ECF No., 5, ¶¶ 5–8.

[11] *Id.*, ¶ 1. Throughout the Amended Complaint, Plaintiffs use the singular "Plaintiff" without distinguishing between Plaintiff Moates and Plaintiff DC Chronicle. For purposes of responding to the instant the time being, Defendants construe Plaintiffs' allegations as applying to Mr. Moates and the DC Chronicle alike.

[12] *Id.*

[13] *Id.*, ¶ 6 & Exhibit B. Defendants object to the incomplete "evidence" contained in the exhibits to the unverified amended complaint. Plaintiffs purport to submit correspondence between Plaintiffs and Facebook, but the exhibits

Plaintiffs' amended complaint raises a host of statutory and common-law claims, including claims under the Sherman Act, the Clayton Act, and the Americans with Disabilities Act, as well as state-law claims for fraud, "strict tort liability," and breach of contract.[14] Plaintiffs also allege a cause of action for "data theft" without specifying the underlying source of law.[15] Although all of Plaintiffs' claims stem from the theory that Facebook wrongfully disabled Plaintiffs' accounts, the amended complaint also alludes to various other sorts of alleged wrongdoing, including that Facebook "violated their own terms of service"[16] by allowing other users to engage in "bullying and harassment," and by "allow[ing] high profile sex offenders" to operate Facebook accounts.[17] To remedy the alleged injuries, the amended complaint seeks compensatory damages, punitive damages, and injunctive relief requiring Facebook to reinstate Plaintiffs' disabled accounts.

Unlike the amended complaint with its many claims, Plaintiff Moates's three-page emergency motion appears to rely solely upon a theory of antitrust injury. Invoking the Sherman Act, Plaintiff seeks an order (1) "compelling" Facebook to reinstate the deactivated accounts; (2) "restraining" Facebook "from disabling any access" to those already disabled accounts; and (3) "restrain[ing]" Facebook "from taking any adverse action against Plaintiff."[18] After requesting that relief, the emergency motion provides a list of authorities and summarily

---

appear to have been edited to omit Plaintiffs' own messages to Facebook.

[14] *Id.*, ¶¶ 24–46.

[15] *Id.*, ¶¶ 34–36.

[16] Plaintiffs acknowledge the terms of service that govern their relationship with Facebook but ignore the requirement of those terms that any dispute with Facebook must be litigated in state or federal court in California. In addition to moving to dismiss Plaintiffs' claims, Defendants will move to transfer any remaining claims under those terms of service.

[17] *Id.*, ¶¶ 37, 45.

[18] ECF No. 6 (Plaintiffs' Emergency Motion to Temporary Restraining Order) at 1.

articulates the four factors required for a temporary restraining order.[19] It also represents that the evidentiary record "***will be*** supported by overwhelming evidence that Facebook has engaged in illegal activity."[20] But no evidence or affidavit is attached to the motion, and the underlying amended complaint is unverified.

## III. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried its burden of persuasion." *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 2020 WL 7064607, at *2 (5th Cir. Dec. 3, 2020). That burden requires the moving party to prove four factors: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that their substantial injury outweighed the threatened harm to the party whom they sought to enjoin, and (4) that granting the preliminary injunction would not disserve the public interest." *Suehs*, 692 F.3d at 348. A movant's failure "to sufficiently establish any one of the four factors requires" the reviewing court "to deny the movant's request for a preliminary injunction." *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). The same standard applies to a request for a temporary restraining order. *See CoreClarity*, 2020 WL 5095130, at *2.

## IV. ARGUMENT

Plaintiff Moates falls far short of proving that he is entitled to the extraordinary remedy he seeks. His emergency motion fails to satisfy any one of the four factors required for a temporary restraining order or a preliminary injunction. Accordingly, this Court must deny Plaintiff's emergency motion.

---

[19] *Id.* at 1–2.

[20] *Id.* at 1.

**A. Plaintiff fails to show a substantial likelihood of success on the merits.**

Plaintiff must establish a "substantial" likelihood that he will succeed on the merits of his Sherman Act cause of action, which is the apparent sole basis for his emergency motion.[21] *Suehs*, 692 F.3d at 348. This he cannot do. Moreover, his motion cannot succeed because it seeks relief that is barred by Section 230 of the Communications Decency Act and the First Amendment.

**1. Plaintiff submits no evidence or reasoned argument to support his antitrust theory of liability.**

Plaintiff's motion invokes Sections 1 and 2 of the Sherman Act, but he comes nowhere close to establishing a likelihood of success under either theory. To prevail on a Section One claim, Plaintiff Moates must show that Defendants "(1) engaged in a conspiracy (2) that produced some anti-competitive effect (3) in the relevant market." *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 392 (5th Cir. 1996). Plaintiff Moates makes no attempt to demonstrate a "substantial" likelihood of success on any one of these elements, much less all three. First, Plaintiff offers no evidence or argument to suggest the cooperation of two or more entities, as is required to state a Section 1 claim. *Id.* ("Section one applies only to concerted action; unilateral conduct is excluded from its purview."). Indeed, Plaintiffs' amended complaint lacks any

---

[21] In his emergency motion, Plaintiff Moates specifically argues that relief is warranted because he "is likely to succeed on the merits of its claims that Facebook's conduct violates Sherman Act." ECF No. 6 at 1. He does not argue that he is likely to prevail on any other claim or legal theory. Moreover, his list of authorities is limited to Sections 1 and 2 of the Sherman Act, a handful of cases applying federal antitrust law, and a website purporting to contain a transcript of an antirust hearing held in July 2020 before the U.S. House of Representatives. *See id*. at 2. Of all the authorities cited in Plaintiff Moates's emergency motion, only *Bernhardt v. Los Angeles County* does not involve antitrust law, but that case is inapplicable to any of Plaintiff's other causes of action because the plaintiff in *Bernhardt* asserted a federal civil rights claim under 42 U.S.C. § 1983. *See* 339 F.3d 920 (9th Cir. 2003). Plaintiffs here have not pled a Section 1983 claim, nor could they, because Defendants are not state actors. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935–36 (1982).

allegations even hinting at the sort of conspiratorial conduct that Section One proscribes. The amended complaint appears to focus entirely on a monopoly theory, which would arise solely under Section Two, but fail for the reasons described below. *See* ECF No. 5, ¶¶ 31-33. In fact, Plaintiff's motion suggests only that Facebook has removed his access to Facebook's own platforms—a unilateral decision not proscribed by Section One. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ("A [company] of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently."); *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015) (noting that Sherman Act liability "is not levied for independent refusals to deal").

Second, Plaintiff has offered no evidence or argument suggesting that Facebook's actions unreasonably "restrained competition" or had any effect on the relevant market. *Kiepfer v. Beller*, 944 F.2d 1213, 1221 (5th Cir. 1991) ("An antitrust plaintiff must show not just that the defendants' actions injured him, but that they unreasonably restrained competition."). Third and finally, Plaintiff makes no attempt to define the "relevant market" at issue. *See Johnson*, 95 F.3d at 392. Each of these shortcomings preclude any likelihood of success—much less a "substantial" one—under Section One of the Sherman Act.

Nor has Plaintiff satisfied his burden for purposes of a Section Two monopolization claim, which calls for a showing that the alleged monopolist (1) possesses "monopoly power in the relevant market" (2) through "the willful acquisition or maintenance of that power[,]" (3) that causes "antitrust injur[y]." *Comcast Corp. v. Behrend*, 569 U.S. 27, 43 (2013). As a matter of law, this is impossible on the current record because "***more than mere pleading*** is necessary to establish standing" to sue for antitrust injury. *Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 98 (5th Cir. 1988) (reversing grant of preliminary injunction in an antitrust action because the

district court erroneously "determined that the pleadings sufficed standing alone" for antitrust injury). It is not enough for Plaintiff Moates to state that Defendants hold too much market power because Facebook has "acquired multiple companies"[22]; he must actually show a substantial likelihood of proving the existence of an unlawful monopoly, supported by evidence, not just allegations.[23]

Given the absence of any evidence or developed argument to suggest any likelihood—much less a "substantial" one—that Plaintiff Moates will prove an antitrust claim, the Court must deny Plaintiff's emergency motion.

### 2. Plaintiff seeks relief that is barred by the Communications Decency Act.

Plaintiff's motion claim separately fails because it seeks relief that is barred by the CDA. By enacting the CDA, "Congress provided broad immunity . . . to Web-based service providers for all claims stemming from their publication of information created by third parties." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). This immunity is codified at 47 U.S.C. § 230, which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1). "At its core, the CDA bars lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content." *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 992

---

[22] ECF No. 5 at ¶ 31.

[23] The same would be true for an injunction sought under the Clayton Act, although Plaintiff does not identify that Act as a basis for relief in his motion. *See Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111 (1986) (a plaintiff seeking an injunction under § 16 of the Clayton Act must "allege an injury of the type the antitrust laws were designed to prevent"). Plaintiff makes no effort to explain how his alleged injury, or the extraordinary relief he seeks, bears any connection to the acquisitions referenced in the amended complaint. *See* ECF No. 5, ¶¶ 31-33.

(S.D. Tex. 2017). The CDA has been held to bar a wide variety of claims, including federal antitrust claims. *See Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1266, 1272 (D.C. Cir. 2019) (holding CDA barred federal antitrust claims premised on website's publication of categories of content that allegedly "severely restricted" consumers' ability to "discover and contact Plaintiffs and other legitimate locksmiths").

Facebook is unquestionably an "interactive computer service" provider under the Act. *La'Tiejira*, 272 F. Supp. 3d at 993 ("Many courts have held that Facebook satisfies the definition for 'interactive computer service'" under the CDA). And the accounts and content at issue constitute "information provided by another information content provider," as they were all created by Plaintiff, not Facebook itself. *See, e.g., Brittain v. Twitter, Inc.,* 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019) (user accounts "qualify as 'information provided by another information content provider'" where user "expressly acknowledges that he, not Twitter, created and operated the accounts").

Moreover, the amended complaint here focuses on exactly the sort of "publisher" conduct to which CDA immunity applies—Facebook's alleged decision to remove or restrict Plaintiff's third-party accounts or other content. Although the amended complaint purports to allege antitrust injury, its "Violation of Anti-Trust Laws" cause of action focuses instead on Defendants' alleged "behavior when the [sic] not only disabled the Facebook account of the Plaintiff but his Instagram, Crowdtangle, and Oculus accounts." This sort of conduct—Facebook's regulation of the material hosted on its platforms—falls squarely within the CDA's broad immunity. Indeed, courts have repeatedly held that a website's blocking or removing a plaintiff's posts or suspending a plaintiff's account is among the types of "publisher conduct immunized" by section 230(c)(1) of the CDA. *See Sikhs for Justice*,144 F. Supp. 3d 1088, 1095

(N.D. Cal. 2015); *Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119–20 (N.D. Cal. 2020) (holding that CDA applied to claims "based on Facebook's decision to remove [plaintiff's] account, postings, and content"); *King v. Facebook, Inc.*, 2019 WL 4221768, at *3–4 (N.D. Cal. Sept. 5, 2019) (holding that CDA applied to plaintiff's claims based on Facebook "either removing his posts, blocking his content, or suspending his accounts" because such claims "are barred by the immunity provided under Section 230 of the CDA"); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *4–5 (N.D. Cal. May 9, 2019) (holding that CDA applied to claims "stem[ming] from [Facebook's] decision to remove plaintiff's post or restrict plaintiff's ability to publish new posts" because the "decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct"); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (Section 230(c)(1) immunizes "decisions to delete [plaintiff's] user profiles"); *Lancester v. Alphabet Inc.*, 2016 WL 3648608, at *2–3 (N.D. Cal. July 8, 2016) (dismissing claims based on removal of plaintiff's videos under Section 230(c)(1)).

Accordingly, CDA immunity precludes any chance that Plaintiff will succeed on his Sherman Act claim, as well as his other claims that are not at issue here.

**3. Plaintiff seeks relief that is barred by the First Amendment.**

Plaintiff's motion is also fatally flawed because it seeks to violate Facebook's First Amendment rights under the U.S. Constitution. The First Amendment protects "the decision of both what to say and what not to say." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 797 (1988); *see also Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 641 (1994). Plaintiff cannot, consistent with the First Amendment, tell Facebook "what it must print." *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 88 (1980). This, however, is precisely what Plaintiff's motion seeks to do: Plaintiff asks the Court to issue an injunction

requiring Facebook to carry his content on its platform, despite Facebook's decision not to. But the First Amendment safeguards Facebook's "exercise of editorial control or judgment." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 575 (1995). Just as a newspaper cannot be required to publish op-ed columns, Facebook cannot be required to host content on its platform that it chooses to reject. *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Courts have consistently held that these First Amendment principles protect editorial judgments made by social media companies—including Facebook—about third-party content on their platforms. *See, e.g.*, *La'Tiejira*, 272 F. Supp. 3d at 91, 994 (finding Facebook had made a sufficient showing under Texas's anti-SLAPP statute that the plaintiff's claims "arise directly and exclusively from Facebook's First Amendment right to decide what to publish and what not to publish on its platform"); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y. 2014) (concluding the First Amendment barred claims against search engine for excluding from its search results information about certain political topics); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629–30 (D. Del. 2007) (concluding Google and Microsoft could not be compelled to "place Plaintiff's ads for his websites in prominent places on their search engine results" because such relief would "contravene Defendants' First Amendment rights"); *Reno v. Am. Civil Liberties Union*, 521 U.S. 844 (1997) (First Amendment protections extend to the Internet). Because Facebook's decisions to remove content from its service are squarely protected by the First Amendment, there is no "substantial" likelihood that Plaintiff will succeed on the merits of his Sherman Act claim.

**B. Plaintiff has not proven and cannot prove that he will be irreparably harmed absent a temporary restraining order.**

Plaintiff's motion must be denied for an additional reason: he has not proven and cannot prove "a substantial threat" that he will suffer irreparable harm if he is made to wait for this litigation to run its course through a trial on the merits. As an initial matter, he fails to submit evidence—whether through an affidavit[24] or verified complaint[25]—to support his claim of irreparable harm. That is reason enough to reject Plaintiff's motion outright. *See, e.g.*, *Zinter v. Salvaggio*, 2018 WL 5098785, at *5 (W.D. Tex. Oct. 19, 2018) (observing that a motion for TRO or preliminary injunction must be supported by "[e]vidence that goes beyond the unverified allegations of the pleadings and motion papers").

The motion faces other fundamental problems. For one, Plaintiff Moates appears to concede that his alleged "irreparable harm" is rooted partially, if not entirely, in monetary loss. *See* ECF No. 6 at 1–2 ("The issue at stake that is causing irreparable harm is that without access to the platform, the Plaintiff has lost all of his revenue."). But "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Accordingly, Plaintiff's alleged loss of unidentified revenue to date—or any alleged deprivation of future revenue—cannot serve as a basis for the emergency relief he seeks.

Moreover, Plaintiff's account data will be retained during this litigation. As set out in the attached declaration from Jenny Pricer, Facebook is preserving all of Plaintiff's known account

---

[24] Nor may he belatedly submit any such affidavit. *See* Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion.").

[25] Plaintiffs' unverified amended complaint was neither sworn under oath nor executed under penalty of perjury.

data and will do so for the duration of this litigation.[26] Because reinstatement of Plaintiff's accounts would be possible at the ***conclusion*** of this litigation, Plaintiff has no basis for demanding the same relief on an emergency basis at the ***outset*** of this litigation, before he has proven a single element of any one of his claims.

For all these reasons, Plaintiff has failed to show that he would be irreparably harmed absent the issuance of a temporary restraining order.

**C. The remaining factors favor Defendants.**

Plaintiff Moates fares no better with the remaining factors, despite his obligation to "***clearly*** carr[y] the burden of persuasion" as to each. *CoreClarity*, 2020 WL 5095130, at *2. Indeed, he offers no explanation for why the equities favor a temporary restraining order,[27] and it would be well within this Court's discretion to find that issue waived. *See Mann v. Choate*, 2018 WL 1400945, at *8 (E.D. Tex. Mar. 19, 2018) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any event, the equities favor Defendants, who otherwise would be forced to reinstate Plaintiff's accounts despite the apparent fact—if the amended complaint's allegations are taken at face value—that Plaintiff was found to be in violation of Facebook's community standards.[28] Accordingly, reinstating Plaintiff's accounts risks affirmatively harming the broader Facebook community, which Facebook's community standards are in place to protect. And it would be inequitable to

---

[26] Ex. 1 (Jenny Pricer Declaration) at ¶ 3.

[27] ECF No. 6 at 1 (asserting without argument that the balance of equities "tips sharply in Moates's favor").

[28] ECF No. 5, ¶ 6 & Exhibit B.

award such relief on a preliminary basis, absent any proof of wrongdoing, when the same remedy would be available after a trial on the merits.[29]

As for the fourth factor—whether granting the restraining order "would not disserve the public interest"—Plaintiff argues only that "the public interest supports an injunction based on the fact that [Defendants] are impairing the operations of a charity organization."[30] Defendants presume that the "charity organization" in question is Plaintiff DC Chronicle, although neither the motion nor the amended complaint offer any evidence or allegations to suggest that DC Chronicle is, in fact, a charity organization. But assuming the DC Chronicle is a charity organization, this is not a salient fact for purposes of weighing whether an injunction would benefit the public interest. To the contrary, an injunction would *disserve* the public interest by forcibly reinstating Plaintiff's accounts, contrary to Facebook's First Amendment rights and to the detriment of the user community protected by Facebook's community standards. If litigants in Plaintiff's position were automatically entitled to account reinstatement pending the conclusion of any litigation, the public interest would be disserved by Facebook's inability to safeguard its users from accounts that engage in abusive or harassing behavior in violation of Facebook's terms of service.

## V. CONCLUSION

To win the emergency relief he seeks, Plaintiff Michael Moates must establish each of the four factors discussed above. He has failed to prove a single one of them, thus his motion

[29] *See* discussion at Section IV.B.

[30] ECF No. 6 at 1.

fails. Accordingly, Defendants respectfully request that this Court deny Plaintiff's Emergency Motion for a Temporary Restraining Order.

Respectfully submitted,

Dated: December 11, 2020

By: */s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.
Texas Bar Number 00785097
glennthames@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone: 903 597-8311
Facsimile: 903 593-0846

ATTORNEY FOR FACEBOOK, INC., FACEBOOK PAYMENTS, INC, MARK ZUCKERBERG, SHERYL SANDBERG

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with this document via the Court's CM/ECF system pursuant to Local Rule CV-5. Service outside the court's electronic-filing system has been completed on December 11, 2020 as follows:

Michael Moates
2700 Colorado Blvd. #1526
Denton, TX 76201
PLAINTIFF, *pro se*

Certified Mail – Return Receipt Requested

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.