**U.S. DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

**FILED**

DEC 1 7 2020

Clerk, U.S. District Court
Eastern District of Texas

Mr. Michael Moates, individually and on behalf of DC Chronicle, a 501(c)3 non-profit charity organization

    Plaintiffs,

v.

Facebook Inc., Facebook Payments Inc, Mark Zuckerberg, as Chief Executive Officer, Sheryl Sandberg, as Chief Operating Officer

    Defendants.

Case No.: 4:20-cv-00896-ALM-KP

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

1. It is important to note that the Plaintiff made multiple good faith attempts to communicate with the attorneys on this matter. It should also be noted it is unclear who attorneys of record for the Defendants are at this time. There have been multiple attorneys added and removed from communications with Plaintiff. In fact, the Plaintiff has never communicated with the attorney who filed this opposition and was unaware they were on this litigation.

2. Please note that as of 17 December 2020, Plaintiffs have not been served with the Defendants Opposition to the Temporary Restraining Order.

3. Please note that any information regarding the Terms of Service is informational only as the Plaintiff considers the Terms of Service null and void and will argue this at a later date.

4. The Defendants make the claim that there is lack of evidence in the complaint and it should be noted that the Plaintiff has evidence to admit in trial.

5. At this time the Plaintiff would like to disclose a learning disability and depression and anxiety disorders. Plaintiff requests reasonable accommodations form the court. The main request being that anything that is in writing be allowed to be argued orally in a hearing.

6. Plaintiff wants to be clear that he does not simply hold Facebook Inc. liable for content but also for actions unrelated to content or publisher arguments as seen below. The main purpose of their argument is surrounding the First Amendment of the United States Constitution and the Communications Decency Act while there are some things that need to be argued on the content/publishing front they failed to address the other issues that are not related to content.

7. It's important to note that if the Defendants are going to request DC Chronicle be dismissed from the lawsuit. They should not be allowed to use evidence regarding DC Chronicle as they would no longer be a party to this lawsuit and would be unable to defend themselves. The evidence the Plaintiff is referencing is the email sent to DC Chronicle regarding a warning about one of the accounts in question. The Defendants included this in their Opposition to the Temporary Restraining Order.

8. Defendants claim, "Plaintiffs' Amended Complaint also names Facebook Payments, Inc., Mark Zuckerberg, and Sheryl Sandberg as Defendants, though only Facebook has been served. In any event, the Amended Complaint fails to articulate what role, if any, that those Defendants played in the conduct alleged by Plaintiffs. See ECF No. 5. Accordingly, Defendants focus herein on the conduct alleged against Facebook, Inc" however it sounds as though the attorneys for the Defendants are not talking to each

other. This matter has already been resolved. The expectation is that a motion to dismiss Mr. Zuckerberg, Ms. Sandberg, and Facebook Payments Inc from the lawsuit. The Defendants are working on the language and the Plaintiff is awaiting their purposal. The Plaintiff had previously communicated with the attorney on this matter prior to the filing being submitted.

9. It appears the Defendants are attempting to mislead the court by providing factually false information, misleading information, and omitting details to the court.

   a. First, the Defendants represent that "…Facebook has been served" but in a subsequent email to the Plaintiff state "Though the Court's orders discussed having the clerk serve Facebook with your complaint, it has not yet been received (though the December 2 orders, docket number 7 and 8, were received by Facebook yesterday)." The date of this email was 16 December 2020.

   b. Defendants state "Because the motion appears only to seek relief for Plaintiff Moates, and not for Plaintiff DC Chronicle, Defendants will use the singular "Plaintiff" when discussing the emergency motion and the plural "Plaintiffs" when discussing the amended complaint" but then use evidence that was sent to DC Chronicle regarding the violation of rules. The Plaintiff requests this evidence be considered inadmissible if DC Chronicle is not allowed to proceed independently as it was addressed to the company rather than Moates.

   c. Defendants state "Facebook's conduct in removing or restricting access to content uploaded to its platform is protected by the Communications Decency Act ("CDA") and the First Amendment" but fail to argue how this allows for accounts

to be deleted or disabled, products that are sold to be rendered useless, stealing money for services not provided, etc.

    d. Defendants claim "Defendants object to the incomplete "evidence" contained in the exhibits to the unverified amended complaint. Plaintiffs purport to submit correspondence between Plaintiffs and Facebook, but the exhibits appear to have been edited to omit Plaintiffs' own messages to Facebook" however nothing was edited. The messages from Facebook were screenshotted. The Plaintiff is happy to provide the messages he sent to the court and Defendants although they should have them as they responded to the messages.

10. Defendants claim, "To remedy the alleged harm, Plaintiffs seek monetary damages, as well as an order requiring Facebook to reinstate the deactivated accounts." Which is accurate however absent reinstatement of the account the Plaintiff seeks all data associated with these accounts.

11. The Defendants also claim, "Instead of seeking merely to preserve the status quo pending further litigation, Plaintiff's emergency motion demands the opposite: a mandatory injunction requiring Facebook to reverse course and reinstate the same accounts it allegedly disabled." While this is partially accurate the Plaintiffs also request that in the order Facebook not be allowed to deactivate any remaining accounts that are active. So, this is not just an injunction request as the Defendants put it. It is also a restraint request to keep the accounts intact.

12. Facebook's illegal anti-trust activity, fraud, violation of civil rights, data theft, and violation of contract are not covered by the First Amendment or Communications Decency Act. Also, when Facebook chooses to do business with someone, they waive

certain First Amendment rights. For example, Facebook Inc. entered into a contract with the Plaintiff where they made a commitment to provide a service. This is called their Terms of Service. Facebook cannot simply disable access to users accounts without cause especially products that were sold to the Plaintiffs as that would be fraud. In fact, the Communications Decency Act specifically states ""No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" it doesn't absolve the Defendant from contractual agreements, violating criminal law or liability of civil actions for violating criminal law, etc. The law protects them from what other people say and do but does not protect them from their own actions especially if they are not "acting in good faith." Also, it is important to note the Communications Decency Act does not allow Defendants to unilaterally disable accounts. The law states "No provider or user of an interactive computer service shall be held liable on account of— any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." This does not allow for the deactivation of accounts but rather the removal of content from the site. Defendants cite La'Tiejira v. Facebook, Inc., 272 F. Supp. 3d 981, 992 which says "At its core, the CDA bars lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content" but again this is not referencing the accounts it only relates to the content. Their argument does not address private messages, non-publishing interactions such as reacting to a post or private messaging someone.

Furthermore, these arguments are about content but not the use of products such as the Oculus Go the Plaintiff owns which does not publish to a platform. The device is used to play games, watch movies, etc.

13. Plaintiff argues that Facebook Inc is not one operation and that each section should be considered differently. For example, the Plaintiff produces no content to Oculus or CrowdTangle and therefor these platforms are not subject to the CDA. Thus, the Plaintiff is not a "Information Content Provider" in these systems he is simply a reader. With regard to the Oculus device Facebook Inc released an update requiring users to use Facebook to access this device after the Plaintiff purchased it. The original Terms of Service when the Plaintiff bought the Oculus device make no mention of requiring a Facebook account. Facebook admits this change saying "Previously, the platform was managed by Oculus (also known as Facebook Technologies), which has been part of Facebook since 2014. We updated our Terms of Service and Privacy Policy on October 11th 2020, to reflect that this responsibility was transferred to Facebook, Inc. (or Facebook Ireland Ltd. for European Region users). In practice, this means Facebook manages all decisions around use, processing, retention and sharing of your data. This change applies to all users.[1]" This was not part of the original sale. It was changed less than a month before they disabled the Plaintiff's access. The Plaintiff never consented to this change in the Terms of Service. Nor was the Plaintiff made aware of this change until the Oculus device was disabled.

---

[1] https://support.oculus.com/424208161507635 See section titled Have you updated the Terms of Service and Privacy Policy?
[2] https://web.archive.org/web/20190601010218/https://www.oculus.com/legal/terms-of-service/

14. In addition to the above, when the Plaintiff initially bought the device and agreed to the Terms of Service, he did not have any requirement to have a Facebook account to access the device. At that time, he did not have to agree to Facebook's Terms of Service[2]

15. Facebook claims it has the First Amendment right to ban the Plaintiffs account without cause but the CDA specifically states that good faith must exist. In addition, the Plaintiff has the First Amendment right to interact with government officials in public forms. By disabling the account Defendants have taken away that First Amendment right to interact with government in a public form. Facebook is acting as a proxy on behalf of government officials to ban people and disable their access to a public forum[3].

16. Defendants claim "Plaintiff Moates appears to concede that his alleged "irreparable harm" is rooted partially, if not entirely, in monetary loss" this is completely in accurate and without merit. Outside of the monetary loss there is the loss of data, communications, the access to a device purchased, access to business records, access to records requested under the orders of a grand jury subpoena (that would also serve as a defense to Moates).

17. Defendants state "Plaintiff's account data will be retained during this litigation. As set out in the attached declaration from Jenny Pricer, Facebook is preserving all of Plaintiff's known account data and will do so for the duration of this litigation" but the declaration by Jenny Pricer only states the retainment of the Facebook and Instagram accounts not the Oculus, WhatsApp, Messenger, and CrowdTangle accounts.

18. Defendants state "reinstating Plaintiff's accounts risks affirmatively harming the broader Facebook community, which Facebook's community standards are in place to protect"

---

[3] See Knight First Amendment Inst. at Columbia Univ. v. Trump and Davison v Randall

but fail to provide a shred of evidence to this effect. They have not provided any evidence that the Plaintiff is a threat to the community or has caused any harm.

19. Defendants claim "allegation that Facebook is in violation of the Sherman Act" however, this is not accurate. The Plaintiff alleges illegal anti-trust activity, fraud, violation of civil rights, data theft, and breach of contract.

   a. First Allegation – Anti-trust. Defendants has a long-documented history of purchasing other companies it is competing with to control the market. Currently the United States has pending litigation against Facebook for violation of such laws. (See Federal Trade Commission v Facebook Inc.). The litigation alleges "Facebook holds monopoly power in the market for personal social networking services ("personal social networking" or "personal social networking services") in the United States, which it enjoys primarily through its control of the largest and most profitable social network in the world." The litigation talks about how Facebook took Instagram and WhatsApp out of the market because they saw them as competition.

   b. Second Allegation – Fraud.

      i. Defendants say that their actions are protected by the First Amendment and the Communications Decency Act. However, we are not talking about a free account. The Plaintiff paid for services to the Defendants and the Defendants disabled the account after receiving over $10,000 in less than 5 months. The did not provide these services. This is not only fraud but breach of contract. Also they charged the Plaintiff $1,500 for followers 2 days before disabling his account giving him no access to the followers.

ii. The Defendants also illegally charged the Plaintiffs accounts on more than one occasion after the Plaintiff withdrew consent for automatic payments. So not only did they take away his source of income and steal over $10,000 from him, they continued to attempt charges on through his bank after disabling his account. They even continued after consent was withdrawn. A pending complaint will be filed with the FTC, CFPB, and Texas Attorney General's Office.

iii. 18 USC 1038 False Information and Hoaxes states "Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title, section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), or section 46502, the second sentence of section 46504, section 46505 (b)(3) or (c), section 46506 if homicide or attempted homicide is involved, or section 60123(b) of title 49 is liable in a civil action to any party incurring expenses incident to any emergency or investigative response to that conduct, for those expenses." It is clear that Facebook Inc. intended to provide misleading information when they made a promise to provide the data to the Plaintiff's. They also entered into a contract to provide services and goods to the Plaintiff's and the subsequently restricted the ability of the Plaintiff to use those goods and services.

  c. Third Allegation – Data Theft.

    i. With Regard to Facebook (Facebook TOS govern Facebook Messenger, Facebook Groups, Facebook Pages, as well as the platform) - When the Plaintiff signed up in 2014, he entered into a legally binding contract with Facebook Inc known as their Terms of Service. Those Terms of Service states "You own all of the content and information you post on Facebook[4]." By their own admission Plaintiffs own the content stored on their servers that they are preventing us from having.

    ii. With Regard to Instagram (Instagram TOS govern Instagram Messenger, Instagram Stories, and the platform as a whole) – Again when the Plaintiff signed up the Terms of Service stated, "We do not claim ownership of your content...[5]" Again, they have information stored on their servers that belong to the Plaintiff and are refusing to give that data to him.

    iii. With Regard to Oculus – Again when the Plaintiff signed up in 2019 the Terms of Service stated, "we do not claim any ownership rights in or to your User Content[6]." Again, they have information stored on their servers that belong to the Plaintiff and are refusing to give that data to him.

---

[4] https://web.archive.org/web/20140822221741/http://www.facebook.com/terms.php
[5] https://www.facebook.com/help/instagram/termsofuse

- 10 -

Michael Moates, Pro Se

2700 Colorado Boulevard #1526

Denton, TX 76201

(817)-999-7534

michaelsmoates@gmail.com

---

[6] https://web.archive.org/web/20190702034402/https://www.oculus.com/legal/terms-of-service/

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded by first class mail [or, delivered in person, or certified mail] to each attorney/party of record on this date: 17 Dec 20.

_____
Signature of Party

*Print Name/Address/Phone Number:*

Michael Moates
2700 Colorado Blvd
#1526
Denton, TX 76201

*Please list all parties/addresses to be served:*

Earl Glenn Thames Jr
110 N College Ave Suite 500
Tyler, TX 75702
glennthames@potterminton.com