FILED

DEC 2 8 2020

Clerk, U.S. District Court
Texas Eastern

**U.S. DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| Mr. Michael Moates | Case No.: 4:20-cv-00896 |
| Plaintiff | |
| v. | **JURY TRIAL DEMANDED** |
| Facebook Inc. | |
| Defendant | Judge: Kimberly Priest Johnson |

# <u>2nd AMENDED COMPLAINT</u>

1

# **TABLE OF CONTENTS**

*List of Statutes, Rules, and Justifications*..................................................................................6

    Cases.........................................................................................................................................6

    Statutes....................................................................................................................................6

    Federal Regulations.................................................................................................................7

    US Constitution........................................................................................................................7

    Executive Orders......................................................................................................................7

    Other........................................................................................................................................7

*I. NATURE OF THE CASE*..........................................................................................................8

*II. JURISDICTION and PARTIES*................................................................................................8

*III. FACTUAL ALLEGATIONS*....................................................................................................9

    ONLINE ADVERTISING.............................................................................................................9

    BUGS REGARDING COMMUNITY STANDARDS.......................................................................10

    MASS DISABLING OF ACCOUNTS USING ANTI-TRUST POWER................................................10

    ACCEPTANCE OF RESPONSIBILITY AND FRADULENT STATEMENTS MADE BY FACEBOOK.................11

    WHY DID FACEBOOK BAN THE PLAINTIFF FROM FACEBOOK, INSTAGRAM, OCULUS, CROWDTANGLE, WHATSAPP, AND GIPHY?....................................................................................................12

    FRAUD, THEFT, AND MISLEADING STATEMENTS...................................................................15

    HISTORY OF ACTING IN BAD FAITH WITHOUT EXPLANATION................................................15

    VIOLATION OF THE COMMUNICATIONS DECENCY ACT (PLAINTIFF ARGUES ACT IS INVALID)............16

    COMMUNICATIONS DECENCY ACT IS UNCONSTITUTIONAL...................................................18

    STATEMENT OF RIGHTS AND RESPONSIBILITIES (TERMS OF SERVICE)...................................20

    ANTI-TRUST VIOLATIONS, RENDERING PURCHASED PRODUCTS INVALID WITHOUT CAUSE.............21

    POLITICAL TARGETING..........................................................................................................23

    FURTHER MISLEADING AND INACCURATE STATEMENTS.......................................................23

    VIOLATION OF SHAREHOLDER RIGHTS, INSIDER TRADING....................................................24

    PRIVACY VIOLATIONS AND ILLEGAL TRACKING OF USERS.....................................................25

    MISLEADING STATEMENTS, FRAUD, AND BREACH OF CONTRACT..........................................26

    ATTEMPT TO HONOR CONTRACT BY PLAINTIFF...................................................................27

    GRAND JURY SUBPOENA, DATA THEFT.................................................................................27

BREACH OF CONTRACT, VIOLATION OF DUE PROCESS............................................28
    FACEBOOK OVERSIGHT BOARD...................................................................28

FACEBOOK ALLOWING CONTINUED USE STOLEN FACEBOOK GROUPS........................30

ALLEDGED PERJURY BEFORE THE COURT.............................................................30

THIRD PARTY FACT CHECKERS..........................................................................30

VIOLATION OF STATE LAWS.............................................................................31
    TEXAS PRIVACY PROTECTION ACT...............................................................31
    TEXAS BUSINESS AND COMMERCE CODE TITLE 2, CHAPTER 17 DECEPTIVE TRADE PRACTICES ....................................................................................................................32

IV. CAUSES OF ACTION....................................................................................33

FIRST CAUSE OF ACTION..................................................................................33
    Fraud – Violation of the Lanham Act, Texas Deceptive Trade Practices Act, Electronic Fund Transfer Act, Regulation E...............................................................................33

SECOND CAUSE OF ACTION...............................................................................34
    Liability – Breach of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act, Uniform Trade Secrets Act.....................................................................34

THIRD CAUSE OF ACTION.................................................................................35
    Violation of Civil Rights – Violation of the Americans with Disabilities Act............................35

FOURTH CAUSE OF ACTION...............................................................................37
    Violation of Anti-Trust Laws – Violation of the Sherman (Section 2) and Clayton Acts (Section 7)........................................................................................................37

FIFTH CAUSE OF ACTION..................................................................................38
    Data Theft – Breach of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act.......................................................................................................38

SIXTH CAUSE OF ACTION..................................................................................40
    Violation of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act....40

SEVENTH CAUSE OF ACTION..............................................................................42
    Violation of Regulation FD, Unfair Practices, Insider Trading...........................................42

EIGHTH CAUSE OF ACTION...............................................................................42
    Violation of Right to Privacy Based on the Texas Constitution.........................................42

..............................................................................................................44

..............................................................................................................45

FIRST REQUEST FOR RELIEF.............................................................................45

Punitive Damages.........................................................................................45

V. PRAYER FOR RELIEF....................................................................................45

List of Exhibits.............................................................................................47

Exhibit A – Proof of Advertising.........................................................................47

Exhibit B – Email from Facebook on Community Standards ................................................. 47

Exhibit C – Email from Facebook Saying "account in good standing" ................................ 47

Exhibit D – Proof of Disabled Facebook Account .............................................................. 47

Exhibit E – Proof of Disabled Instagram Account .............................................................. 47

Exhibit F – Emails from Michael Moates to Carolyn Everson – Vice President, and Response from Everson, Conrad Gibson (where Meghan Orbe was included) ................................................. 47

Exhibit G – Email from Facebook Re-Conrad Gibson stating, "The Facebook account associated with the email address you provided to us has been disabled for violation of our Terms of Service." ...... 47

Exhibit H – Email from Michael Moates to Fidji Simo (Head of Facebook) and Response from Simo, and Priya ................................................................................................................................ 47

Exhibit I – Receipt Showing Facebook Charged Moates for Audience They Disabled 1 Week Prior ... 47

Exhibit J – Broken Contact Form .......................................................................................... 47

Exhibit K – Proof of Shareholder status – Showing evidence of shares ................................ 47

Exhibit L – Proof of Grand Jury Subpoena .......................................................................... 47

Exhibit M – Proof of Active Groups as of 26 December 2020 after Plaintiff account disabled ........... 47

Exhibit O – Proof of that Facebook allows targeting based on mental disability or disorders ........... 48

Exhibit P – Proof ending authorization of automatic debts and subsequent charge and attempted charges without consent ......................................................................................................... 48

Exhibit Q – E-Mail from Lisa-Bart Dolan, Manager Politics and Government ..................... 48

Exhibit R – Proof of Facebook 14 day waiting period to delete pages ................................ 48

Exhibit S – Copy of Complaint, Statement of Facts Surrounding Facebook Anti-trust violations (FTC v Facebook) ............................................................................................................................ 48

Exhibit T – Copy of Complaint, Statement of Facts Surrounding Facebook Anti-trust violations (State of New York, et al v Facebook) ............................................................................................. 48

Exhibit A ........................................................................................................................... 49

Exhibit B ........................................................................................................................... 51

Exhibit C ........................................................................................................................... 53

Exhibit D ........................................................................................................................... 55

Exhibit E ........................................................................................................................... 57

Exhibit F ........................................................................................................................... 59

Exhibit G ........................................................................................................................... 64

Exhibit H ........................................................................................................................... 67

Exhibit I ............................................................................................................................. 69

Exhibit J ............................................................................................................................. 72

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Exhibit K*..................................................................................................74
*Exhibit L*..................................................................................................76
*Exhibit M*.................................................................................................81
*Exhibit N*.................................................................................................83
*Exhibit O*.................................................................................................85
*Exhibit P*..................................................................................................89
*Exhibit Q*.................................................................................................93
*Exhibit R*..................................................................................................95
*Exhibit S*..................................................................................................97
*Exhibit T*..................................................................................................98
Exhibit U                                                                          100

1
2

# List of Statutes, Rules, and Justifications

3

## Cases

4
5

Reno v ACLU

6

Douglas v Talk America

7

FTC v Facebook – Pending

8

Guillermo Robles v Domino's Pizza

9

SEC v Texas Gulf Sulphur Co.

10

Commonwealth v Michelle Carter

11

Knight First Amendment Institute v Trump

12

FTC v Advocare et al

13

Doe v Facebook

14

Teatotaller v Facebook

15

Jane Doe No. 14 v. Internet Brands, Inc.

16

## Statutes

17
18

28 United States Code § 1332

19

Sherman Antitrust Act of 1890, Section 2

20

Clayton Antitrust Act of 1914, Section 7

21

Clayton Antitrust Act of 1914, Section 16

22

Lanham Act of 1946

23

Americans with Disabilities Act of 1990

24

Communications Decency Act

25

Texas Deceptive Trade Practices Consumer Protection Act

26

Electronic Fund Transfer Act

27

Under the Restore Online Shoppers' Confidence Act

28

Uniform Trade Secrets Act

6

Medical Records Privacy Act

Texas Student Privacy Act

Tex. Bus. & Com. Code § 503.001 et seq

## Federal Regulations

17 Code of Federal Regulations Section 243

Regulation Fair Disclosure

## US Constitution

First Amendment

Fifth Amendment

Fourteenth Amendment

## Executive Orders

Executive Order on Preventing Online Censorship – 28 May 2020

## Other

Facebook Terms of Service

Breach of Contract

7

# I. NATURE OF THE CASE

1. Plaintiff Michael Moates brings this action individually. The Plaintiff bring this action against Defendant Facebook Inc. This complaint seeks equitable and injunctive relief for the disabling of Michael Moates' Facebook, Messenger, Instagram Accounts, CrowdTangle, all pages and groups connected to these accounts, and the disabled features on the Oculus Go Device (hereinafter referred to collectively as "Products,".) This includes the data that is stored on the servers that the refuse to release to the Plaintiff.

2. This complaint also seeks damages for fraudulent and unauthorized charges or attempted charges after products were disabled and loss of wages due to deactivation. Next, the Plaintiff seeks equitable and injunctive relief due to violation of the Sherman Act and the Clayton Act. Next, this complaint seeks equitable relief for breach of contract, fraud, and false advertising under the Lanham Act.

3. Finally, Plaintiff seeks to assert his rights as a shareholder of Facebook. He seeks equitable and injunctive relief. It is important to note that DC Chronicle is not a Plaintiff in this case and evidence introduced regarding DC Chronicle is introduced to the extent it effected the Plaintiffs direct paid advertising and Facebook accounts. Also note, the DC Chronicle News Page is not owned by DC Chronicle but owned by Moates to empower the organization.

# II. JURISDICTION and PARTIES

4. Plaintiff Michael Moates resides does business with principal places of business in Denton, Texas. The amount in controversy exceeds $75,000. Therefore, jurisdiction of this court is proper.

5. This Court has subject matter jurisdiction over Moates's federal antitrust

8

1   claims pursuant to the Clayton Antitrust Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331

2   and 1337.

3        6. The Court also has subject matter jurisdiction over the state law claims pursuant to 28

4   U.S.C. § 1331, 1332, and 1337 based on the diversity of citizenship of Moates, on one hand, and

5

6   of Facebook, on the other.

7        7. This venue is correct as Facebook does business in the district. For the same reasons

8   personal jurisdiction is also established. For example, Facebook employed representatives inside

9   Best Buy at the time the Plaintiff bought his Oculus device.

10

11                    ## III. FACTUAL ALLEGATIONS

12                        ### ONLINE ADVERTISING

13

14       8. Since August 29th, the Plaintiff has invested $10,546 (See Exhibit A or online[1]) on

15   advertising with Facebook Inc. to build a following through "likes, followers, and engagement"

16   on multiple of his pages that allow him to earn income via engagement of posts[2]. Reach is

17   determined by number of followers and likes. When someone spends money to build an audience

18   they invest, and that money is returned through different types of engagements. In this case, the

19   Plaintiff used the Facebook ad system for their Engagement ads.

20

21       9. According to their website, the description of these types of ads is "Get more people to

22   follow **your** Page or engage with **your** posts through comments, shares and likes. You can also

23   choose to optimize for more event responses or offer claims." It's important to note that the

24   Plaintiff alleges that the word "your" implies that he retains ownership of the page that he is

25   investing in. Dictonary.com defines "your" as "one's (used to indicate that one belonging to

26

27   ───────────────

[1]https://archive.is/q10ZA
https://archive.is/wip/ldfNp
[2] https://www.facebook.com/business/ads/ad-objectives

28

oneself or to any person[3])" The Plaintiff asserts that he retains ownership of these pages and Facebook is simply a host for these pages. All data, followers, engagement, etc. belongs to the Plaintiff. It's important to note that Facebook is not a free service. **You pay for their service in multiple ways. 1) You pay when they use your data for ads. 2) You pay for the right to have an audience when you run ads that build your page following and subscribers.**

### BUGS REGARDING COMMUNITY STANDARDS

10. On October 7th, 2020, the Plaintiff received an email message and notification on the Facebook website stating that he was not following community standards (See Exhibit B). The Plaintiff, unsure of what he did wrong immediately reached out to Facebook Support. Facebook Support responded that his page was "in good standing," (See Exhibit C) acknowledged that this "may have cause confusion" for the Plaintiff and instructed him "have this reported as a bug." Plaintiff asks the court to note that he does not have access to the email he sent to Facebook support as it was sent using their internal systems and Facebook Inc. has blocked the Plaintiff from access to retrieve anything from his account. The Plaintiff will request this as a part of discovery as it goes to his defense. The Plaintiff also wants the court to recognize that he did file it as a bug as they instructed him, but they never fixed the problem. This was one of the many inaccurate statements made by Facebook during this process.

### MASS DISABLING OF ACCOUNTS USING ANTI-TRUST POWER

11. On October 20th, 2020, the Defendant disabled access to the Plaintiff's Facebook (See Exhibit D) (which included access to Messages, Profile Data, Groups, Pages and More) and Facebook Business Manager Account (which included Creator Studio, Pages, and Ads). This was done without any notification or explanation and the Plaintiff was made aware when he attempted to access his account, he saw a message that read "For more information, or if you

---
[3] https://www.dictionary.com/browse/your

think your account was disabled by mistake, please visit the Help Center," on Facebook (See Exhibit D).

12. Shortly thereafter, the Plaintiff's Instagram was disabled (which included all photos, videos, messages, and stories), and a message appeared, "Thanks for Providing Your Info. We'll review your info and if we can confirm it, you'll be able to request a review in the Help Center within approximately 24 hours," on Instagram (See Exhibit E).

13. Subsequently, the Plaintiff was unable to access his Oculus, Crowd Tangle, and Messenger accounts due to Facebook disabling Facebook login. Facebook login is a feature that allows you to use your Facebook account to login into 3rd party apps and websites.

## ACCEPTANCE OF RESPONSIBILITY AND FRADULENT STATEMENTS MADE BY FACEBOOK

13. After all of this took place on October 20th, 2020, the Plaintiff reached out to Carolyn Everson (Vice President, Facebook) who said she "So **sorry this happened**" and "hoping for some resolution." She included two of her staff members Meghan Orbe and Conrad Gibson on her email. Conrad responded very quickly asking for some details and said, "I'll be in touch once I have an update from the account team." Conrad responded two days later stating "Apologies for the delay as I worked with our team on your request. I heard back this morning and it seems that your accounts were disabled permanently and, due to policy guidelines, they are unable to share why the accounts were deactivated. I am so sorry this happened to you. I asked for more information, but they were unable to share with me. I wish I could give you a better explanation, but unfortunately, we have these rules in place to protect a user's privacy. I know that you had a lot of photos saved to your accounts that you wanted to access. They provided me with the following **information on how to request data from a closed account**." The links Conrad

11

provide were broken and did not work. (See Exhibits E) The Plaintiff subsequently reached out and was given a new link. Upon filling out the request in the new link for his data Facebook said, "The Facebook account associated with the email address you provided to us has been disabled for violation of our Terms of Service." (See Exhibit G) They did not provide the data they admit belongs to him. There are a couple of important notes here. They claim the Plaintiff violated their Terms of Service but previously in writing stated that it was a "bug" and Facebook accepted responsibility for a mistake by acknowledging the "confusion" they caused and when Vice President Carolyn Everson said she was "so sorry this happened." The apology above is clearly an admission of guilt. Especially when she says she is working on a resolution. That in itself shows Facebook made a mistake and is working to rectify it but never does.

14. After getting no resolution from Carolyn Everson and her team, on October 23, 2020, the Plaintiff reached out to Fidji Simo (Head of Facebook, Facebook Inc.). He explained the situation again and she said, "I want to look into why that happened" and again her colleague would follow up "Priya will follow up." Priya emailed that same day saying, "Will have some more info shortly - thanks for your patience here!" To date, she has never followed up with the Plaintiff. (See Exhibit H) This was again another misleading statement by Facebook where they made a commitment in writing to the Plaintiff but did not follow through.

## WHY DID FACEBOOK BAN THE PLAINTIFF FROM FACEBOOK, INSTAGRAM, OCULUS, CROWDTANGLE, WHATSAPP, AND GIPHY?

15. The Plaintiff reached out to Facebook to see why his account was disabled. Many individuals said that they could not tell him why due to privacy reasons. However, one individual, Lisa-Bart Dolan (Politics and Government Outreach Associate Manager) finally said why the Plaintiff was blocked. She said "We will remove any Facebook Pages, Groups and

Instagram accounts representing QAnon, even if they contain no violent content. This is an update from the initial policy in August that removed Pages, Groups and Instagram accounts associated with QAnon when they discussed potential violence while imposing a series of restrictions to limit the reach of other Pages, Groups and Instagram accounts associated with the movement. Pages, Groups and Instagram accounts that represent an identified Militarized Social Movement are already prohibited. And we will continue to disable the profiles of admins who manage Pages and Groups removed for violating this policy, as we began doing in August. You can read more about this policy here: https://about.fb.com/news/2020/08/addressing-movements-and-organizations-tied-to-violence/" See Exhibit Q. The Plaintiff had a page titled QAnon that had no QAnon content on it and was inactive. This seems to be an update to their Community Standards which is part of their Terms of Service. The Plaintiff takes issue with multiple parts of this starting with the fact that they have a duty to notify anyone when they change contractual agreements, which they did not. See Douglas v Talk America. The second issue here is in the initial statement by Facebook they stated "Pages, Groups and Instagram accounts associated with these movements and organizations will be removed when they discuss potential violence."  Two issues with this statement, first they disabled his accounts across all platforms even though it doesn't say the entire Facebook account or any other accounts except for Instagram accounts that include this kind of content which is the not. Second, the page that he ran was in active and had not a single piece of violent content on it. This statement was released by Facebook on 19 August 2020.

    16. On 6 October 2020, Facebook gave an update again saying "On August 19, we announced a set of measures designed to disrupt the ability of QAnon and Militarized Social Movements to operate and organize on our platform. In the first month, we removed over 1,500

13

Pages and Groups for QAnon containing discussions of potential violence and over 6,500 Pages and Groups tied to more than 300 Militarized Social Movements. But we believe these efforts need to be strengthened when addressing QAnon. Starting today, we will remove any Facebook Pages, Groups and Instagram accounts representing QAnon, even if they contain no violent content. This is an update from the initial policy in August that removed Pages, Groups and Instagram accounts associated with QAnon when they discussed potential violence while imposing a series of restrictions to limit the reach of other Pages, Groups and Instagram accounts associated with the movement. Pages, Groups and Instagram accounts that represent an identified Militarized Social Movement are already prohibited. And we will continue to disable the profiles of admins who manage Pages and Groups removed for violating this policy, as we began doing in August." Again, it is important to note that they said they were removing Pages, Groups and Instagram accounts associated with the movement in August but never said anything about "we will continue to disable the profiles of admins who manage Pages and Groups removed for violating this policy, as we began doing in August."

17. The Plaintiff also asks the court to note that in mid-October he attempted to delete the Qanon page to follow Facebook policy. He did this in good faith after becoming aware of the policy. Facebook has a safeguard in place that requires you to wait 14 days before you can delete a Facebook page. See Exhibit R. So, the Plaintiff ultimately had his account disabled even though he was attempting to comply with their policies. It's important to know he was not required as he was not notified, nor did he consent. It's important to note that this is not an issue of First Amendment or Communications Decency Act rights. This is Facebook unilaterally changing a contractual agreement without notifying the parties of the agreement. They then seek to hold the parties accountable to their new requirements even though they never previously

14

notified, nor did they give time for the Plaintiff to follow new said terms. It's also important to note that the policy seems to only apply to individuals Facebook seeks to target[45]. Keep in mind that none of the content on this page was related to QAnon. In fact, the majority of news outlets that covered the story had more information about this conspiracy theory than the page that caused the Plaintiffs account to be disabled.

### FRAUD, THEFT, AND MISLEADING STATEMENTS

18. Less than a month and a half after initial Facebook ads were bought to invest in a business page following and audience Facebook disabled the account after making over $10,000 from the Plaintiff. Again, it is important to note that Facebook engaged in a business transaction in which they sold advertising to build a following on multiple pages owned by the Plaintiff. Then they took the Plaintiff's access to pages owned by him. They have not refunded the Plaintiff, in fact they continued to charge him after stealing pages belonging to him.

19. The week before Facebook disabled the account, they charged the Plaintiff $5,137 for an audience they took away less than 6 days later. Again, pages belonging to the Plaintiff. (See Exhibit I) As stated in this complaint, Facebook acknowledge the pages belong to the Plaintiff.

### HISTORY OF ACTING IN BAD FAITH WITHOUT EXPLANATION

20. The Defendant have a history of disabling accounts without any explanation. (See citations below) It is the belief of many that Facebook changed its policies days before the election and that is why many of the accounts were disabled. Facebook has not admitted this; however, it is important to note that the Plaintiff did not agree to any such rules or changes to any contractual agreements.

---

[4] https://www.facebook.com/Low-IQanon-111246930715323/
[5] https://www.facebook.com/events/the-bell/where-we-go-one-we-go-all-the-qanon-conspiracy/3282309081786961/

**VIOLATION OF THE COMMUNICATIONS DECENCY ACT (PLAINTIFF ARGUES ACT IS INVALID)**

21. The Defendant has not shown that the Plaintiff violated any rules on each platform that he was banned from. In fact, they have stated multiple times that they really can't say why his account was disabled. They claim that he is a threat to their platform but have not provided any evidence to support this. Their actions are in bad faith. This is important to note as the Defendant will likely use the Communications Decency Act to defend its actions. Good Faith is required in order to not be liable. The Communications Decency Act says, 47 U.S. Code § 230 - Protection for private blocking and screening of offensive material – "any action voluntarily taken in **good faith** to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected" The Defendant has not met their burden of proof that this was in good faith or that any of the required elements of "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected" exist. The Plaintiff argues that Facebook Inc is engaging in bad faith actions. For example, the citizen journalism organization Project Veritas was able to uncover that that content moderators remove people without cause based on political view in bad faith. In one video a content moderator can be seen saying "If someone is wearing a MAGA hat, I am going to delete them for terrorism.[6]" This is clearly bad faith. It is also important to note that the Plaintiff alleges Mark Zuckerberg committed perjury before the United States Congress when he said, "none of the changes we make are target in any kind of biased way." Yet here you have someone blocking for wearing a hat.

---

[6] https://www.projectveritas.com/news/facebook-content-moderator-if-someone-is-wearing-a-maga-hat-i-am-going-to/

22. Another example of this, would be when the Plaintiff would get messages such as telling him to kill himself and he would report it to Facebook and they would not act on these reports. They would say it is not against their community standards. This shows bad faith. Especially since these kinds of messages are against the law. Had the Plaintiff acted on these statements the individuals who sent them could be prosecuted. See Commonwealth v Michelle Carter. She argued that she had the right to free speech and the Supreme Court left in place the Massachusetts Supreme Court ruling that she did not.

23. The final example of acting in bad faith is when Mark Zuckerberg said this to his friend in regard to user data[78]:

Zuckerberg: Yeah so if you ever need info about anyone at Harvard

Zuckerberg: Just ask.

Zuckerberg: I have over 4,000 emails, pictures, addresses, SNS

[Redacted Friend's Name]: What? How'd you manage that one?

Zuckerberg: People just submitted it.

Zuckerberg: I don't know why.

Zuckerberg: They "trust me"

Zuckerberg: Dumb fucks.

Clearly, Mark Zuckerberg thinks the people who use the Facebook products are suckers, and he shows that he has no intentions of engaging in good faith or protecting the user data.

---

[7] https://www.esquire.com/uk/latest-news/a19490586/mark-zuckerberg-called-people-who-handed-over-their-data-dumb-f/
[8] https://www.esquire.com/uk/latest-news/a19490586/mark-zuckerberg-called-people-who-handed-over-their-data-dumb-f/

## COMMUNICATIONS DECENCY ACT IS UNCONSTITUTIONAL

24. The Plaintiff also argues that the Communications Decency Act is unlawful because Congress created a law that allows for the restriction of speech which is unconstitutional under the First Amendment of the United States Constitution. The Congress does not have the authority to make a law that restricts speech "whether or not such material is constitutionally protected" without a constitutional amendment. By enacting the Communications Decency Act, the Congress made a law that goes against the US Constitution "prohibiting the free exercise thereof; or abridging the freedom of speech." The Supreme Court held in Reno v ACLU that "the CDA lacks the precision that the First Amendment requires when a statute regulates the content of speech." In addition, President Donald Trump issued an Executive Order clarifying that the policy of the United States requires "It is the policy of the United States that the scope of that immunity should be clarified: the immunity should not extend beyond its text and purpose to provide protection for those who purport to provide users a forum for free and open speech, but in reality use their power over a vital means of communication to engage in deceptive or pretextual actions stifling free and open debate by censoring certain viewpoints.[9]" Another example supporting this argument is that the courts have ruled that social media is a "designated public form." In Knight First Amendment Institute v Trump, the Second Circuit Court of Appeals held that "This case requires us to consider whether a public official may, consistent with the First Amendment, "block" a person from his Twitter account in response to the political views that person has expressed, and whether the analysis differs because that public official is the President of the United States. The answer to both questions is no." The Plaintiff argues that the Communications Decency Act allows social media companies to do this on behalf of

---

[9] https://www.whitehouse.gov/presidential-actions/executive-order-preventing-online-censorship/

18

government officials without liability or accountability which is unconstitutional. Rather than the official doing it themselves they just ask the social media companies to do it.

25. Plaintiff argues that the Communications Decency Act is unconstitutional because it is too vague. For example, the law defines interactive computer service as "Interactive computer service." The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions" but it does not define what providers are covered under the interactive computer service definition. So, if you replace Interactive Computer Service with United States Government you have a law that removes liability from the government of censoring speech without due process. In addition, the law says "No provider or user of an interactive computer service shall be held liable" but this would allow the US Government to censor without due process which is covered under the Fifth and Fourteenth Amendments of the US Constitution. It would also violate the First Amendment rights in which the government cannot censor speech, religion, press, or petition. All of these would be at risk if this law is allowed to stand. This law doesn't exclude anyone and is not specific enough. It puts constitutional rights at risk. Supreme Court Justice has encouraged the court to take up the evaluation of the meaning of Section 230. In, Malwarebytes Inc v Enigma Software Group USA, LLC the Supreme Court voted not to take the case and Justice Thomas said "Extending §230 immunity beyond the natural reading of the text can have serious consequences." He also said "Without the benefit of briefing on the merits, we need not decide today the correct interpretation of §230. But in an appropriate case, it behooves us to do so.[10]"

---

[10] https://www.supremecourt.gov/orders/courtorders/101320zor_8m58.pdf

26. The Plaintiff's ask the court to consider the Defendant not protected under Section 230. They are no longer a distributor of information, but they selectively publish their own information. The employee third party fact-checkers that they pay and then promote on the platform. This makes them a publisher not simply a platform. In addition, many courts have found that the Communications Decency Act does not in fact give Facebook blanket immunity. Also, it is important to note that the Plaintiff does not simply hold the Defendant accountable as a publisher or speaker. For example:

i. Facebook tried to use the Communications Decency Act to say they were not liable for rape and trafficking of a 16-year-old girl. The Texas 14th Court of Appeals ruled that the Communications Decency Act does not allow for a dismissal.

ii. Facebook tried to use the Communications Decency Act to say they were not liable for breach of contract. See Teatotaller v Facebook.

iii. Internet Brands Inc tried to argue that they were not required to follow through with their duty to warn and the Ninth Circuit Court of Appeals held that the Communications Decency Act did not provide immunity. See Jane Doe No. 14 v. Internet Brands, Inc.

**STATEMENT OF RIGHTS AND RESPONBILITIES (TERMS OF SERVICE)**

27. The Defendant have a history of selectively enforcing their Terms of Service and community standards or updating them so that it benefits them for profit. For example, in April of 2012 the Ad Guidelines said "Ads must not promote the sale of prescription pharmaceuticals[11]" but that was quickly changed so the Defendant could profit from big pharmaceutical companies such as Vyvanse[12].

---

[11] https://archive.is/V8iS4#selection-1699.7-1699.68
[12] https://www.facebook.com/ads/library/?
active_status=all&ad_type=all&country=US&view_all_page_id=2577210512
505316&sort_data[direction]=desc&sort_data[mode]=relevancy_monthly_gr
ouped

28. Facebook admits in terms of service that "guarantee it" {keeping Facebook safe}.

## ANTI-TRUST VIOLATIONS, RENDERING PURCHASED PRODUCTS INVALID WITHOUT CAUSE

29. Facebook engaged in unlawful monopolistic by acquiring many competing companies. See Exhibit S and Exhibit T. Please note that these complaints are only introduced as statements of fact to establish a timeline for the court. There is no other purpose, and the plaintiff is willing to argue these statements on the merits. This included its acquisition of Instagram in 2012, its purchase of WhatsApp in 2014, its purchase of Oculus in 2014, its purchase of CrowdTangle in 2016, its purchase of Giphy in 2020, and many others. The Clayton Act states, "No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." But this is exactly what they have done. To date, Facebook hold monopoly power in the market for social media. There is no other social media company that compares to Facebook in size of daily users. By purchasing these companies Facebook seeked to end competition in the market. According to Similar Web[13] (a website that tracks website popularity), Facebook owns 3 of the top 25 websites in the world. It is important to note no other websites in the top websites in the world compare to Facebook. Further behavior shows that Facebook is using the purchases to manipulate the market. For example, this is especially shown when they target the accounts of users from one platform to the next. Facebook Inc. imposes unreasonable and unlawful restraints

---

[13] https://www.similarweb.com/top-websites/

to completely monopolize both markets and prevent competition across a spectrum of social media and software related companies. For example, according to Facebook, "If you are new to Oculus, or using Oculus Quest 2, a Facebook account is required to use your device, apps, and the Oculus store.[14]" Therefore, if you purchase an Oculus device and Facebook decided you are not worthy of their platform you can no longer use the device you purchased. Same goes across all of the platforms, if they disable you on Facebook, they disable your Instagram[151617], Messenger, and Crowdtangle without cause. They are using anti-competitive practices to obtain total control of the market. This is a violation of the Clayton and Sherman Acts. It is important to note as well that the government may have an interest in this case as they recently filed a lawsuit asserting the same claims. See FTC v Facebook. The Plaintiff is communicating with the government on this matter. According to a filing by the government Mark Zuckerberg expressed his desire to shrink the marked in a 2008 email stating "it is better to buy than compete." The Plaintiff has been harmed by these actions. As you can see above due to Facebook dominating the market the Plaintiff is unable to use certain products because Facebook has blacklisted him across multiple platforms. Facebook has also changed the status quo to make services blocked by people they blacklist.

30. The anti-competitive consequences of Facebook's conduct are pervasive. These products have become an integral part of people's daily lives; as a primary source for news, a place for entertainment, a tool for business, a means to connect with friends and family, and more. For many consumers, the products are stay connected to the digital world.

---

[14] https://www.oculus.com/blog/facebook-accounts-on-oculus/?locale=en_US (https://archive.is/wip/1MjUL)
[15] https://twitter.com/Hysminai_Uchiha/status/1322289749592334336
[16] https://twitter.com/mamaneedabottle/status/1322246967313969152
[17] https://twitter.com/Wolfstroy/status/1322321489861947392

## POLITICAL TARGETING

31. Not only does Facebook serve as a monopoly but they target based on political influence. The disabled the Plaintiff's and many others accounts[18][19][20] three days before the 2020 Presidential Election. According to 18 US Code 594, "Whoever intimidates, threatens, coerces, or attempts to intimidate, threaten, or coerce, any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not to vote for, any candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner, at any election held solely or in part for the purpose of electing such candidate, shall be fined under this title or imprisoned not more than one year, or both." Facebook intimidated conservative voters by singling them out[21] and saying that if they supported organizations that favor President Donald Trump, they would remove you from their platform. This restriction of information and targeting of conservatives effects the vote. It targeted and threatened individuals based on their political affiliation.

## FURTHER MISLEADING AND INACCURATE STATEMENTS

32. Furthermore, the Defendant has a tendency to give users the run around. The tell you to "send in your ID" and they will get back to you and this never happens[22]. They have a history of emailing consumers and saying they will respond with more information but then do not

---

[18] https://twitter.com/rob2675/status/1322285933589389315
[19] https://twitter.com/BeckyNieshalla/status/1322287481883152385
[20] https://twitter.com/BriskeyBaby/status/1322284608918937600
[21] https://about.fb.com/news/2020/08/addressing-movements-and-organizations-tied-to-violence/
[22] https://twitter.com/politicalpastry/status/1322263450832281602

follow up. They claim they will text you a code but never do[23]. These promises are made in bad faith when the company has no intention of following up with you.

## VIOLATION OF SHAREHOLDER RIGHTS, INSIDER TRADING

33. Let the court take note that the Plaintiff Michael Moates owns shares in Facebook Inc. (See Exhibit K) According to Title 17 of the Code of Federal Regulations, companies are required to provide information to its shareholders, and this is done under what is called Regulation Fair Disclosure. Now in 2013, the SEC clarified that information may be disseminated via social media but only if certain requirements were met. One of these requirements requires that Investors must have access to the social media platform that is not restricted[24]. A couple of issues here. First, the Plaintiff argues that by disabling his account his access is restricted. Second, Facebook admits that it uses Chief Executive Officer and Chairman of the Board Mark Zuckerberg's Facebook Page (assuming the mean profile) to produce information that is required under Regulation FD.[25] The Plaintiff has the legal right to this information but cannot access it because CEO Zuckerberg's Facebook profile can only be accessed if you have an active Facebook account. You can access Zuckerberg's about page but not the feed with the information that is required to be disclosed. To that end, Facebook Inc. is in violation of the regulation by failure to produce information under Regulation FD to the Plaintiff. SEC regulation FD ("Fair Disclosure") requires that if a company intentionally discloses material non-public information to one person, it must simultaneously disclose that information to the

---

[23] https://twitter.com/barbi_mr/status/1322298733338525696

[24] https://web.archive.org/web/20160402091125/http://www.goodwinprocter.com/Publications/Newsletters/Client-Alert/2013/0405_SEC-Clarifies-Social-Media-Use-and-Reg-FD-Compliance.aspx?article=1

[25] https://investor.fb.com/investor-news/press-release-details/2020/Facebook-Reschedules-Release-of-Second-Quarter-2020-Financial-Results-and-Conference-Call/default.aspx

24

public at large. In the case of an unintentional disclosure of material non-public information to one person, the company must make a public disclosure "promptly." Federal law defines an insider as a company's officers, directors, or someone in control of at least 10% of a company's equity securities. To that end Zuckerberg is clearly an insider who must release all information publicly but has not done so. Facebook has restricted a shareholder's legal right to access information. The Second Circuit Court of Appeals has held in SEC v Texas Gulf Sulphur Co. that a "level playing field" theory of insider trading is required. The court stated that anyone in possession of inside information must either disclose the information or refrain from trading.

## PRIVACY VIOLATIONS AND ILLEGAL TRACKING OF USERS

34. The Defendant have a history of engaging in online stalking and tracking users' without consent and privacy violations.

A. For example, Facebook collected the content of Plaintiffs' messages without his consent. The Plaintiff only found this out after looking at their current Terms of Service which he is not bound by as he never consented nor received notification of. See Douglas v Talk America. It is important to note that much of the information sent on Facebook is information that would be protected by HIPPA, FERPA, and many other privacy acts.

B. Here is a list of items Facebook tracked without the Plaintiffs consent (Please note this list only includes items that the Plaintiff is aware of:

i. Information about his personal devices including (Hardware, Software Versions, Battery Level, Signal Strength, Storage, App, File names, etc.

ii. Device ID's and Identifiers

iii. Bluetooth, Wi-Fi, and other information

iv. Transactions (Both on Facebook products and off) (They track the

25

1 third-party transactions of the Plaintiff)

2               v. Plaintiffs communications with 3rd parties

3               vi. Information from third parties (Important to note that Facebook may

4
5 get information from advertisers, app developers, and publishers even when someone has not

6 consented to that information being released to Facebook)

7               C. Facebook exposed millions of people's data including the Plaintiffs

8 information when it allowed for the release of information without consent to Cambridge

9 Analytica. This information included public profile access, page likes, date of birth, current city,

10
11 newsfeed, timeline, and messages. It was a harvesting scheme to create a profile on subjects from

12 which the data was stolen. It also put people in danger by giving someone their locations. Not

13 only did Facebook not protect users from this scheme when it had a failure to warn but it was

14 negligent by attempting to cover up[26] the scheme. (Important to note that the 9th Circuit Court of

15 Appeals held in Jane Doe No. 14 v Internet Brands, Inc that immunity for claims of negligence

16
17 does not apply.)  They also attempted to mislead the public and journalists about how bad the

18 scheme was[27].

19 D. The Defendant allows individuals to track you using personally identifiable information and

20 then use that information to display ads in front of you. See Exhibit N. They do not give you the

21 ability to turn this off nor do they give you the ability to remove this information that was

22 uploaded to their systems without your consent.

23
24 **MISLEADING STATEMENTS, FRAUD, AND BREACH OF CONTRACT**

25 35. It's also important to note that when the plaintiff originally bought his Oculus Go device, he

26 did so with the premise that you did not need to have a Facebook account and while he used his

27 [26] https://www.documentcloud.org/documents/5777489-Search-Page-3-1.html
28 [27] https://www.vice.com/en/article/qv777x/facebook-lied-to-journalists-about-how-bad-the-cambridge-analytica-scandal-was

Facebook account to login at the time there was a way to set up an account completely separate from Facebook. They took this ability away thereby insuring that the Plaintiff could not use the device he paid for.

### ATTEMPT TO HONOR CONTRACT BY PLAINTIFF

36. The Plaintiff has approached the Defendant to attempt to resolve these situations. The Defendant chose to mislead the plaintiff by saying they would respond with more information and work to seek a resolution and then began ignoring and blowing off the Plaintiff. Evidence will be introduced in court do support this claim.

A. In accordance with the Statement of Rights and Responsibilities, the Plaintiff attempted to contact Facebook to resolve this dispute directly. The terms regarding the Plaintiffs contract with the Defendant states "If you have questions or complaints regarding our Data Use Policy or practices, please contact us by mail at 1601 Willow Road, Menlo Park, CA 94025 if you reside in the U.S. or Canada, or at Facebook Ireland Ltd., Hanover Reach, 5-7 Hanover Quay, Dublin 2 Ireland if you live outside the U.S. or Canada. Anyone may also contact us through this help page[28]." He also attempted to contact them via the form in the agreement which is broken. See Exhibit J.

### GRAND JURY SUBPOENA, DATA THEFT

37. At this time, the Plaintiff seeks to advise the court of a grand jury subpoena issued by the Southern District of New York in response to a criminal investigation where the Plaintiff is a witness. (See Exhibit L, please note the Plaintiff has blurred out identifying information of the investigated parties but is happy to submit to the court and the Defendant under seal to protect the government's investigation) The dad of that Facebook holds is required in order for the

---

[28] https://web.archive.org/web/20140708223752/https://www.facebook.com/about/privacy/other

Plaintiff to continue cooperating with the government. In addition, the information is vital to any

potential defense on the part of the Plaintiff. Facebook says on their website regarding data

"Parties to litigation may satisfy party and non-party discovery requirements relating to their

Facebook accounts by producing and authenticating the content of communications from their

accounts and by using Facebook's "Download Your Information" tool, which is accessible

through the Settings drop down menu. If a person cannot access their content, Facebook may, to

the extent possible, attempt to restore access to deactivated accounts to allow the person to

collect and produce their content. However, Facebook cannot restore account content that had

been deleted. Facebook preserves account content only in response to a valid government

request.[29]" Facebook has the ability to give the Plaintiff the data that they already admit belong to

the Plaintiff but are refusing to do so. This tool is called "Download Your Information.[30]" **Your**

**Information** being the keyword.

## BREACH OF CONTRACT, VIOLATION OF DUE PROCESS

### FACEBOOK OVERSIGHT BOARD

38. Facebook is in breach of contract and violation of due process. According to rules set

by Facebook, due process is required "People using Facebook's services and Facebook itself

may bring forward content for board review. The board will review and decide on content in

accordance with Facebook's content policies and values." A couple of issues with this whole

process. Facebook disabled the account of the Plaintiff without allowing him to appeal in

violation of their own standards." Facebook admits that the Plaintiff has the right to appeal their

decision in multiple forms.[31]" This includes disputing the ruling with Facebook (which the

Plaintiff did via email since he did not have access to the support panel anymore), and appealing

---

[29] https://www.facebook.com/help/1701730696756992/?helpref=hc_fnav
[30] https://www.facebook.com/help/212802592074644?helpref=faq_content
[31] https://www.oversightboard.com/sr/governance/bylaws

to the Oversight Board (which the Plaintiff was not allowed to do although the policy was already in place when they disabled his account). The bylaws state "The board will review cases where people disagree with the outcome of Facebook's decisions and have exhausted the appeals process with Facebook." They further state that all content is eligible for review except[32]:

> "The following types of content are not available for the board's review, unless reassessed in the future by Facebook:
>
> • Content types: content posted through marketplace, fundraisers, Facebook dating, messages, and spam.
>
> • Decision types: decisions made on reports involving intellectual property or pursuant to legal obligations.
>
> • Services: content on WhatsApp, Messenger, Instagram Direct, and Oculus.
>
> • Where the underlying content has already been blocked, following the receipt of a valid report of illegality, and not removed for a Community Standards violation;
>
> • Where the underlying content is criminally unlawful in a jurisdiction with a connection to the content (such as the jurisdiction of the posting party and/or the reporting party) and where a board decision to allow the content on the platform could lead to criminal liability for Facebook, Facebook employees, the administration, or the board's members; or
>
> • Where the underlying content is unlawful in a jurisdiction with a connection to the content (such as the jurisdiction of the posting party and/or the reporting party) and where a board decision to allow the content on the platform could lead to adverse governmental action against Facebook, Facebook employees, the administration, or the board's members."

---

[32] https://www.oversightboard.com/sr/governance/bylaws

29

**FACEBOOK ALLOWING CONTINUED USE STOLEN FACEBOOK GROUPS**

39. Facebook admits that when you create a Facebook group it belongs to you. Again, this goes back to their statements that it is "your group.[33]" The allow these groups to be active even after disabling the Plaintiffs account. See Exhibit M. They take away the ability for the Plaintiff to control his own groups. They allow others to continue using his groups.

**ALLEDGED PERJURY BEFORE THE COURT**

40. The Defendant submitted an affidavit by Jenny Pricer in the legal department at Facebook stating to the court "Facebook has retained account data for Plaintiff Michael Moates's known Facebook and Instagram accounts. Facebook will retain that account data for the duration of this litigation. This retained data is sufficient for purposes of reactivating Plaintiff's allegedly deactivated accounts, should Facebook be required to do so." However, this is not accurate. This does not include a declaration regarding the WhatsApp, Oculus, Crowdtangle, and Giphy accounts owned by the Plaintiff.

41. This would be perjury as it is inaccurate and she claims "I declare under penalty of perjury that the foregoing is true and correct."

**THIRD PARTY FACT CHECKERS**

42. Facebook pays "third party fact checkers" to check viral misinformation. However, this is actually not what they do. To start, Facebook hires biased fact checkers to check what is sometimes conflicting information. For example, by looking up some of the sources you will see that they favor one side or the other. The Daily Caller's Check Your Fact and the Dispatch favor conservatives while Science Feedback and USA Today favor liberals.

43. It's important to note that Facebook is liable under the Lachman Act when it competes against newspapers on its platform. They use an algorithm to determine what stories

---

[33] https://www.facebook.com/help/167970719931213?helpref=about_content

30

are performing well and then they try to prove them wrong and promote their own self stories. It is important to note that Facebook pays for the fact checking service[34][35]. Not only do they pay these companies to fact check but they then use techniques designed to shrink the reach of publishers[36] by making their algorithm not show posts that they disagree with. The Plaintiff has seen the fact checkers admit were wrong, and it caused the reach of his posts to be cut. This information will come out in discovery. Nieman Lab reported company's fact checking partners received between USD$850-$1790 per fact check in July 2019[37]. Facebook is actively competing against publishers by employing these individuals to censor posts using their algorithm. This is a violation Lachman Act. They are actively conspiring and competing with publishers. Additionally, they waived their First Amendment rights when they agreed to provide the plaintiff with an audience.

## VIOLATION OF STATE LAWS

### TEXAS PRIVACY PROTECTION ACT

44. TX HB 4390 states "(b) A person who conducts business in this state and owns or licenses computerized data that includes sensitive personal information shall disclose any breach of system security, after discovering or receiving notification of the breach, to any individual whose sensitive personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made without unreasonable delay and in each case not later than the 60th day after the date on which the person determines that the breach, except

---

[34] https://techcrunch.com/2020/02/12/reuters-facebook-fact-checker/
[35] https://www.buzzfeed.com/cameronwilson/australia-facebook-seven-fact-checkers-17-million-users
[36] https://www.facebook.com/business/help/297022994952764?id=673052479947730
[37] https://www.niemanlab.org/2019/07/full-fact-has-been-fact-checking-facebook-posts-for-six-months-heres-what-they-think-needs-to-change/

31

1    as provided by Subsection (d) or as necessary to determine the scope of the breach and restore

2    the reasonable integrity of the data system." Facebook failed to protect the privacy of its users

3    when it allowed millions of account data to be stolen[38][39]. They violated state law by not

4

5    informing the Plaintiff or those similarly situated within 90 days.

6            TEXAS BUSINESS AND COMMERCE CODE TITLE 2, CHAPTER 17 DECEPTIVE

7                                  TRADE PRACTICES

8          45. The code above says, "Except as provided in Subsection (d) of this section, the term

9    "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following

10

11   acts: (9) advertising goods or services with intent not to sell them as advertised" and "(7)

12   representing that goods or services are of a particular standard, quality, or grade, or that goods

13   are of a particular style or model, if they are of another." Facebook acted illegally when they sold

14   the oculus device and then rendering it useless based on the disabling of the users account and

15   access to the device.

16

17

18

19

20

21

22

23

24

25

---

26  [38] https://www.forbes.com/sites/zakdoffman/2020/04/20/facebook-users-beware-hackers-just-sold-267-million-of-your-profiles-for-540/?sh=5f2241cd7c85

27  [39] https://www.digitalinformationworld.com/2020/04/facebook-data-breach-hackers-sell-tens-of-millions-of-facebook-accounts-details-for-low-price.html

28

# IV. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Fraud – Violation of the Lanham Act, Texas Deceptive Trade Practices Act,**

**Electronic Fund Transfer Act, Regulation E**

1. From August to October the Plaintiff spent $10,546 on advertising with Facebook Inc.

2. The Defendant advertised these ads as giving the Plaintiff the ability to get people "engage with your posts through comments, shares and likes." They disabled his account so he could not get this benefit but still charged him. The Texas Deceptive Trade Practices Consumer Protection Act states "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3. The Defendant committed a second type fraud. They did so by placing ads in front of the Plaintiff that caused him to follow certain pages that have now lost their investment from the advertisement he clicked on.

4. The Defendant made multiple misstatements about products and how you can use them. For example, the Defendant advertised a private account for Oculus that was unrelated to any Facebook account. The subsequently changed their mind and required you to use Facebook. They then invalidate the device by making it so you cannot use it if your Facebook account is disabled. Again, the Texas Deceptive Trade Practices Consumer Protection Act states "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The sold a product under false pretenses then rendered it useless.

5. Finally, the Defendant continued to charge the plaintiff without consent after he revoked their rights to automatic charges on his account. See Exhibit P. Under the Restore

33

Online Shoppers' Confidence Act, companies are required to "Provides a simple mechanism" for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account. But they did the opposite. They disabled his access to stop these charges and after receiving in writing the request to stop they continued, trying different amounts to see what would go through. In addition, the Electronic Fund Transfer Act provides recourse when the law is violated. It was designed for protection from unauthorized electronic transfers.

## SECOND CAUSE OF ACTION

**Liability – Breach of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act, Uniform Trade Secrets Act**

1. The aforementioned banned accounts (that are owned by the Plaintiff and stolen by Facebook) caused the Plaintiff to lose his audience and revenue from said audience. The Defendant willingly entered into a contract to provide services. They then tried to change the rules in an attempt to invalidate the contract so they could censor him. There are 3 elements to the UTSA, subject matter involved must qualify for trade secret protection, holder of the subject matter must establish that reasonable precautions were taken to prevent disclosure of the subject matter, and the trade secret holder must prove that the information was misappropriated or wrongfully taken. The Plaintiff asserts that all 3 elements are met. For the first prong, we talk about customer lists and analytical data which are covered under the law. For the second, reasonable precautions were taken to protect this information including activating 2 factor verification before signing into the Plaintiffs account. Third, the Plaintiff has provide evidence that the data from these accounts where his in the form of "your pages" and "your groups."

34

2. The aforementioned banned accounts (that are owned by the Plaintiff and stolen by Facebook) caused the Plaintiff to lose value in his Oculus device he purchased from the company. Again, the Texas Deceptive Trade Practices Consumer Protection Act states "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The sold a product under false pretenses then rendered it useless.

3. The banned accounts has caused the Plaintiff emotional distress including anxiety and depression due to loss of all data, revenue, and communications.

### THIRD CAUSE OF ACTION

### Violation of Civil Rights – Violation of the Americans with Disabilities Act

1. Facebook is a physical place and an online forum. You can physically visit Facebook as a consumer. For example, you can see in a video with Laura Loomer that Facebook engages with customers. In fact, they have tablets laid out where you can sign in and communicate with their staff[40]. Due to the fact that they have a campus where they allow people to come in and write complaints, they are a physical public place and are subject to the Americans with Disabilities Act. Another example of Facebook having a public physical place is when they host Facebook Communities Summits[41]. They are clearly a public place. In Guillermo Robles v Domino's Pizza, the Ninth Circuit Court of Appeals found "The panel held that the ADA applied to Domino's website and app because the Act mandates that places of public accommodation, like Domino's, provide auxiliary aids and services to make visual materials available to individuals who are blind. Even though customers primarily accessed the website and app away from Domino's physical restaurants, the panel stated that the ADA applies to the services of a

---

[40] https://www.youtube.com/watch?v=sts3ugEZasw
[41] https://www.facebook.com/facebookapp/videos/314949872489189/

35

public accommodation, not services in a place of public accommodation." By this opinion, Facebook is subject to the ADA across its websites not just in person.

2. The Plaintiff suffers from Anxiety, Depression, Dysgraphia, Insomnia, and ADHD. These effect his day-to-day life. The Defendant violated the Americans with Disabilities Act when they did not provide reasonable accommodations and discriminated against the Plaintiff by the choosing to exclude and segregate him without cause. To date, they have no policies or procedures in place for those with mental health issues that are covered under the ADA laws. See (Guillermo Robles v Dominos Pizza, LLC) "Title III of the ADA, the section of the ADA in question, says that companies can't discriminate against disabled individuals "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation."

31. The Plaintiff also suffered from discriminatory actions by Facebook when they targeted him for ads based on disabilities or behaviors of disabilities that he has. For example, the Defendant targeted the Plaintiff for Cerebral[42] and Vyvanse[43] based on disability or behaviors of a disability. Example of how they target based on those with mental disability and disorders can be seen in Exhibit O. They will claim that they have a rule against this. But the problem is, if they don't enforce the rule then it doesn't matter whether or not they have the rule. Especially,

---

[42] https://www.facebook.com/ads/library/? active_status=all&ad_type=all&country=US&view_all_page_id=2620944111 252580&sort_data[direction]=desc&sort_data[mode]=relevancy_monthly_gr ouped
[43] https://www.facebook.com/ads/library/? active_status=all&ad_type=all&country=US&view_all_page_id=2577210512 505316&sort_data[direction]=desc&sort_data[mode]=relevancy_monthly_gr ouped

when Facebook's ad review team approves these kinds of ads. Having a rule in place does not remove liability if you don't enforce that rule.

### FOURTH CAUSE OF ACTION

### Violation of Anti-Trust Laws – Violation of the Sherman (Section 2) and Clayton Acts (Section 7)

1. The Sherman Act makes it a crime to monopolize any part of interstate commerce. An unlawful monopoly exists when one firm controls the market for a product or service, and it has obtained that market power. The Defendant has acquired multiple companies in violation of anti-trust laws in order to dominate the market. They acquired Instagram, WhatsApp, CrowdTangle, Giphy, Oculus, and others. Evidence is presented in this complaint to support this argument.

2. This is shown in their behavior when the not only disabled the Facebook account of the Plaintiff but his Instagram, Crowdtangle, and Oculus accounts.

3. They violated the Clayton Act which says it prohibits mergers or acquisitions that are likely to lessen competition. This happened when they acquired Instagram, WhatsApp, CrowdTangle, Giphy, Oculus, and others.

4. Detail of Facebooks history regarding dominating the market are clearly documented in FTC v Facebook[44] and New York et al v Facebook Inc.

5. Facebook has engaged in conduct that maintained its monopoly power through anti-competitive behaviors including its buy-or-bury process.

6. Facebook's contact has harmed and continues to harm the Plaintiff and others.

7. Facebook's anticompetitive conduct constitutes unlawful monopoly maintenance in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

---

[44] https://www.ftc.gov/system/files/documents/cases/1910134fbcomplaint.pdf

8. Facebook's acquisition of Instagram destroyed the market and competition. It allowed Facebook to gain control over the competition and they have executed this power by targeting individuals and engaging in bad faith anti-competition practices.

9. The acquisition of Instagram completely caused significant depressive actions to the marked by engaging in behavior that sought to crush or remove the competition.

10. The acquisition violated and continues to violate Section 7 of the Clayton Act, 15 U.S.C. § 18.

11. As stated with Instagram, the acquisition of WhatsApp created the same problems by seeking to destroy competition. Facebook engaged in bad faith acquisition in order to eliminate a company that is saw as a threat.

12. The acquisition violated and continues to violate Section 7 of the Clayton Act, 15 U.S.C. § 18.

### FIFTH CAUSE OF ACTION

### Data Theft – Breach of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act

1. Defendant claim "You can download a copy of your data at any time" in their terms of service. However, this is not true. If this were the case, the Plaintiff would have access to his data. What they really mean is you have access to your data at any point that we allow you to have it. They have stolen and hijacked the Plaintiffs data across all of the platforms. Again, the Texas Deceptive Trade Practices Consumer Protection Act states "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Making statements that are inaccurate are violation of Texas law. The Plaintiff not only asserts for this purpose that he was a regular Facebook product user but that he paid to use said services.

2. The Defendant have tools that would allow them to release this data[45][46][47] but they continue to hold it hostage even though they admit it belongs to the Plaintiff.

3. Again, the Defendant has manipulated its Terms of Service which used to state, "you own all of the content and information you post on Facebook, and you can control how it is shared.[48]" The removed this sometime between March 2018 and September 2020. The reasoning behind this is because they don't want you to have access to your own data. When the Plaintiff entered into Facebooks Terms of Service, they allowed voting by members on policies, they took input from the public, and they posted proposed changes for comment[49]. They now make changes and attempt to hide them from the public in an effort to not be transparent. Again, the Texas Deceptive Trade Practices Consumer Protection Act states "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Making statements that are inaccurate are a violation of Texas law. The Defendant continue to hold the Plaintiffs data hostage.

4. The Defendant assert multiple times and various ways that it is your content, and they are your pages and your groups. They acknowledge the content is owned by you. They then unilaterally disable your account without cause and withhold access to the data that belongs to you. It's important to know that they have the ability to produce this data but choose not to. As more time goes on and this data is not produced it causes more damage. They essentially hold

---

[45] https://www.facebook.com/help/1701730696756992/?helpref=hc_fnav
[46] https://help.instagram.com/contact/505535973176353
[47] https://faq.whatsapp.com/general/account-and-profile/how-to-request-your-account-information/?lang=en
[48] https://www.latimes.com/business/lazarus/la-fi-lazarus-facebook-cambridge-analytica-privacy-20180320-story.html#:~:text=The%20reality%20is%3A%20Your%20data,free%2C%E2%80%9D%20said%20Scott%20J.
[49] https://www.facebook.com/fbsitegovernance/videos/vb.69178204322/718903095373/?type=2&theater

1   your data hostage without any way to get it back even though they claim that you own it. Again,

2   the Texas Deceptive Trade Practices Consumer Protection Act states "false, misleading, or

3   deceptive acts or practices in the conduct of any trade or commerce are hereby declared

4   unlawful."

5        5. The Defendant created an agreement where they would allow for due process but

6   failed to allow the Plaintiff that due process. The Plaintiff does not have the ability to seek

7   review from the Oversight Board as required by Facebook rules. Again, the Texas Deceptive

8   Trade Practices Consumer Protection Act states "false, misleading, or deceptive acts or practices

9   in the conduct of any trade or commerce are hereby declared unlawful." The Plaintiff has the

10  right to have the Oversight Board review actions taken by Facebook, but they are making it

11  impossible. Furthermore, they invoked the right to due process but then took it away when it

12  suited them.

## SIXTH CAUSE OF ACTION

### Violation of Contract, Violation of the Lanham Act, Texas Deceptive Trade Practices Act

1. The Defendant violated their own terms of service[50] when they allowed high profile sex offenders to join[51][52][53].

---

[50] https://web.archive.org/web/20140526070122/https://www.facebook.com/terms.php

[51] https://www.facebook.com/billcosby

[52] https://www.facebook.com/miketyson

[53] https://www.facebook.com/tupacshakur/

40

2. The Defendant violated their own terms of service when they allowed illegal multi-level marketing pyramid schemes on Facebook[54]. The Defendant suffered from a multi-level marketing scheme that Facebook allowed on its platform. Facebook did not just miss the multi-level marketing scheme they allowed it to continue by approving it on their site in violation of their Terms of Service[55]. They profited from marketing schemes by approving these ads on their site[56].

3. The Defendant violated their own terms of service by allowing people "transfer your account (including any Page or application you administer) to anyone without first getting our written permission."

4. The Defendant violated their own terms of service by allowing people to "bully, intimidate, or harass any user."

5. The Defendant violated their own terms of service by allowing content that is "hate speech, threatening, or pornographic; incites violence; or contains nudity or graphic or gratuitous violence."

6. The Defendant violated their own terms of service by doing actions that are "unlawful, misleading, malicious, or discriminatory."

7. The Defendant violated their own terms of service by allowing content that is a violation of intellectual property laws.

---

[54] https://www.facebook.com/advocare/

[55] https://www.facebook.com/ads/library/?active_status=all&ad_type=all&country=US&view_all_page_id=258046150625&sort_data[direction]=desc&sort_data[mode]=relevancy_monthly_grouped

[56] https://www.ftc.gov/system/files/documents/cases/advocare_signed_advocare_connolly_order_0.pdf

8. The Defendant violated their own community standards by allowing violence and threats. Including messages to the Plaintiff telling him to "kill himself."

9. The Defendant violated their own community standards by allowing bullying and harassment, hate speech, graphic content, nudity and pornography, and spam.

10. The Defendant violated their own community standards by disabling the Plaintiff's account claiming he violated community standards when in fact he did not.

### SEVENTH CAUSE OF ACTION

### Violation of Regulation FD, Unfair Practices, Insider Trading

1. The Defendant selectively give information to certain shareholders while discriminating against others by not providing this information under required rules set by the Security and Exchange Commission.

2. The Defendant makes information inaccessible that is vital to the operational trading of the company. It is also used by shareholders for oversight of daily operations.

3. The Defendant fail to disclose information that is readily available to all shareholders.

### EIGHTH CAUSE OF ACTION

### Violation of Right to Privacy Based on the Texas Constitution

4. As the federal trade commission has alleged and Facebook settled, Facebook has violated the rights to privacy of its user's time and time again. They did so in 2011, 2016, and in 2019. This included the Cambridge Analytical scandal, using people's photos for Facial Recognition

42

Technology[5758], tracking their movements, and conspiring with banks to get access to its user's financial records[596061].

5. This information has led to multiple lawsuits and actions taken by the Federal Trade Commission[62]. In addition, Facebook continues to violate the FTC and court orders.

6. The Plaintiff alleges, that Facebook used information that is protected by law to target consumers with advertising. For example, Facebook admits that they read the content of your private messages and your interactions. Therefore, they have access to medical and educational information that is otherwise protected by HIPPA and FERPA laws. Not only is this a violation of privacy but it's also targeting ads by discriminating based on mental, educational, and medical disabilities. In addition, Texas law specifically, Medical Records Privacy Act applies to any entity (and employee of such entity) that possesses PHI, regardless of whether it is involved in providing health care services. Facebook clearly collected the Plaintiffs medical information and used it for advertising purposes[63]. Following that, Texas laws specifically the Texas Student Privacy Act, expressly prohibits knowingly implementing interest-based/behavioural advertising on such Sites, creating profiles about student users of the Sites (unless the profile is created for a

---

[57] https://www.nbcchicago.com/news/local/more-than-1-4m-facebook-users-in-illinois-filed-claim-for-payout-in-650m-settlement-attorney-says/2379492/
[58] https://www.vox.com/recode/2020/7/23/21335806/facebook-settlement-illinois-facial-recognition-photo-tagging
[59] https://www.wsj.com/articles/facebook-to-banks-give-us-your-data-well-give-you-our-users-1533564049#:~:text=AnnaMaria%20Andriotis,-Biography&text=Facebook%20Inc.,offer%20new%20services%20to%20users
[60] forbes.com/sites/curtissilver/2018/08/06/quit-facebook-before-it-inevitably-accesses-your-banking-data/?sh=65b9f8116877
[61] https://www.inc.com/erik-sherman/as-facebook-gets-slammed-for-data-practices-it-wants-your-financial-info-from-banks.html
[62] https://www.ftc.gov/enforcement/cases-proceedings/092-3184/facebook-inc
[63] https://preventivehealth.facebook.com/#:~:text=Preventive%20Health%20is%20a%20new,recommendations%20from%20leading%20health%20organizations.&text=Tens%20of%20millions%20of%20people,for%20Disease%20Control%20and%20Prevention.

43

school purpose), and selling or renting student personal information collected on Sites except in certain limited circumstances (Tex. Educ. Code § 32.152). Yet, Facebook does just that. They use information collected and then rent that information int the form of advertising to third party companies.

7. Facebook takes it a step further when they've continued to advocate against Apple protecting the rights of its users. Facebook has declared war on Apple for protecting its users by allowing them to know how Facebook is tracking them on Apple devices and for asking for their consent[64][65].

8. Facebook violated Tex. Bus. & Com. Code § 503.001 et seq when they captured biometric data for commercial purposes without informed consent. The law prohibits the capture of biometric identifiers for commercial purposes without informed consent (Tex. Bus. & Com. Code § 503.001 et seq.). A 'biometric identifier' is defined as 'a retina or iris scan, fingerprint, voiceprint, or record of hand or face geometry' (Tex. Bus. & Com. Code § 503.001(a))[66][67][68].

See Exhibit U

[64] https://www.inc.com/justin-bariso/facebook-declared-war-on-apple-it-just-may-signal-end-of-facebook.html
[65] https://www.theverge.com/2020/12/16/22178068/facebook-apple-newspaper-ads-ios-privacy-changes
[66] https://www.thefashionlaw.com/facebook-is-allegedly-collecting-sharing-instagram-users-biometric-data-without-their-consent/
[67] https://fortune.com/2019/08/08/facebook-lawsuit-biometric-data/
[68] https://money.cnn.com/2018/04/17/technology/facebook-lawsuit-facial-recognition/index.html

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST REQUEST FOR RELIEF**

1. Accordingly, Plaintiff seeks injunctive relief in court to end Facebook's unreasonable and unlawful practices. Facebook's conduct has caused and continues to cause financial and emotional harm.

**Punitive Damages**

1. The conduct of the Defendant described above is outrageous. The Defendant conduct demonstrates a lack of respect for the law and shows that they are interested in only earning a profit. They have committed theft, fraud, civil rights violations, and many other violations of the law.

**V. PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully pray for a judgment against the Defendant for:

1. Injunctive and equitable relief as the Court deems appropriate including:

    i. Requiring Defendant reactivate all accounts on the products; and

    ii. Providing data from all accounts; and

    iii. Providing a court order stating that the Defendant cannot use its anti-trust violations to cross-platform target users;

2. Compensatory damages to be paid to Plaintiff, according to proof at trial;

3. Punitive damages as the court deems appropriate;

4. That Facebook's acquisition of Instagram be adjudged to be in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

5. That Facebook's acquisition of WhatsApp be adjudged to be in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

6. Injunctive relief in court to end Facebook's unreasonable and unlawful practices. Facebook's conduct has caused and continues to cause financial and emotional harm;

7. Any other relief as the court deems appropriate.

Dated: 26 Dec 2020

Michael Moates

Pro Se

2700 Colorado Boulevard, #1526

Denton, TX 76201

817-999-7534

michaelsmoates@gmail.com

46

**U.S. DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

Mr. Michael Moates                              Case No.: 4:20-cv-00896

          Plaintiff

      v.                                              **JURY TRIAL DEMANDED**

Facebook Inc.                                   Judge: Kimberly Priest Johnson

        Defendant

---

**VERIFICATION OF COMPLAINT**

1. The Plaintiff asserts the following:

   a. The plaintiff has reviewed the complaint.

   b. The plaintiff knows or believes that all allegations that the plaintiff has personal knowledge of to be true.

   c. The plaintiff believes the allegations that the plaintiff does not have personal knowledge of to be true based on specified information, documents, or both.

2. The Plaintiff makes these statements under penalty of perjury.

/s/ Michael Moates

2700 Colorado Blvd #1526

Denton, TX 76210

817-999-7534

michaelsmoates@gmail.com

- 1 -