**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

MICHAEL MOATES,

                              Plaintiff,

    v.

FACEBOOK, INC.,                                    Case No. 4:20-CV-00896-ALM-KPJ

                              Defendant.

---

**<u>DEFENDANT FACEBOOK INC.'S MOTION TO DISMISS</u>**

1635555

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................1

II.  ISSUE TO BE DECIDED ......................................................................................1

III.  BACKGROUND ....................................................................................................1

IV.  LEGAL STANDARD.............................................................................................2

V.  ARGUMENT ..........................................................................................................3

    A.  Plaintiff's lengthy and redundant complaint fails to satisfy Rule 8......................3

    B.  Plaintiff does not plead a single claim upon which relief could be granted. ........4

        1.  First Cause of Action (Fraud) ....................................................................5

        2.  Second Cause of Action (Trade-Secret Misappropriation)......................8

        3.  Third Cause of Action (Americans With Disabilities Act)......................10

        4.  Fourth Cause of Action (Antitrust)..........................................................12

            a.  Plaintiff's Antitrust Claims Are Time Barred............................12

            b.  Plaintiff Failed to Plausibly Define a Relevant Antitrust
                Market ........................................................................................ 14

            c.  Plaintiff Lacks Antitrust Standing ...............................................16

            d.  Plaintiff Has Not Stated A Section 2 Claim................................17

            e.  Plaintiff Has Not Stated A Section 7 Claim................................19

        5.  Fifth Cause of Action ("Data Theft") .......................................................20

        6.  Sixth Cause of Action (Breach of Contract) ............................................21

        7.  Seventh Cause of Action ("Violation of Regulation FD, Unfair
            Practices, Insider Trading") .......................................................................22

        8.  Eighth Cause of Action (Right to Privacy) ..............................................23

        9.  The court should disregard the SAC's scattered allusions to other
            sources of law. ..........................................................................................24

i

C.      Plaintiff's claims are barred by the First Amendment and the Communications
        Decency Act...........................................................................................................24

        1.      Plaintiff's claims are barred by the CDA...................................................24

        2.      Plaintiff's claims are barred by the First Amendment. .............................27

D.      Plaintiff should not be granted leave to amend any of his claims, or to plead any
        new claims. ...........................................................................................................28

VI.    CONCLUSION................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abraham v. Alpha Chi Omega*,
    708 F.3d 614 (5th Cir. 2013) ....................................................14

*Academy of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co.*,
    2020 WL 4050243 (E.D. La. July 17, 2020) ...............................15

*Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*,
    300 F.3d 620 (5th Cir. 2002) ....................................................15

*Aspen Skiing Co. v. Aspen Highlands Skiing Co.*,
    472 U.S. 585 (1985)..................................................................19

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)..................................................................16

*Belfiore v. New York Times Co.*,
    826 F.2d 177 (2d Cir.1987), *cert. denied*, 484 U.S. 1067 (1988)...........15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................3, 4, 24

*Berry v. Indianapolis Life Ins. Co.*,
    608 F. Supp. 2d 785 (N.D. Tex. 2009) ....................................6, 21

*Bracken v. G6 Hosp. LLC*,
    2016 WL 3946791 (E.D. Tex. June 3, 2016), *report and recommendation adopted sub nom. Bracken v. G6 Hosp. Corp.*, 2016 WL 3917701 (E.D. Tex. July 20, 2016).................................................................10, 12

*Brittain v. Twitter, Inc.*,
    2019 WL 2423375 (N.D. Cal. June 10, 2019) ...............................26

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)..................................................................16

*Broxterman v. State Farm Lloyds*,
    2016 WL 397560 (E.D. Tex. Feb. 2, 2016) ....................................6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)..................................................................17

*Carlucci v. Chapa*,
884 F.3d 534 (5th Cir. 2018) ................................................................................3

*Coleman v. Lincoln Par. Det. Ctr.*,
858 F.3d 307 (5th Cir. 2017) ................................................................................3

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ................................................................................9

*Crabb v. United States*,
2012 WL 12893489 (S.D. Tex. Feb. 29, 2012) ....................................................3

*Def. Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) ................................................................................1

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ..............................................................................25

*Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*,
732 F.2d 480 (5th Cir. 1984) ..............................................................................20

*Ebeid v. Facebook, Inc.*,
2019 WL 2059662 (N.D. Cal. May 9, 2019) ......................................................26

*Federal Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) ..............................................................26

*Garabet, M.D., Inc. v. Autonomous Techs Corp.*,
116 F. Supp. 2d 1159 (C.D. Cal. 2000) ..............................................................14

*Ginsburg v. InBev NV/SA*,
623 F.3d 1229 (8th Cir. 2010) ............................................................................14

*Griffin v. Am. Zurich Ins. Co.*,
697 F. App'x 793 (5th Cir. 2017) ........................................................................12

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
302 F.3d 552 (5th Cir. 2002) ................................................................................5

*Herron v. Herron*,
255 F.2d 589 (5th Cir. 1958) ..............................................................................13

*Hugh Symons Grp. Plc v. Motorola, Inc.*,
292 F.3d 466 (5th Cir. 2002) ........................................................................6, 7, 8

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
515 U.S. 557 (1995) ............................................................................................27

iv

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
892 F.3d 719 (5th Cir. 2018) ...........................................................................2, 5

*International Tel. & Tel. Corp. v. General Tel. & Electronics Corp.*,
518 F.2d 913 (9th Cir. 1975) ................................................................................14

*Jaser v. AT&T Servs. Inc.*,
2020 WL 1329151 (N.D. Tex. Mar. 23, 2020) ......................................................3

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
677 F.2d 1045 (5th Cir. 1982) ..............................................................................13

*Kiepfer v. Beller*,
944 F.2d 1213 (5th Cir. 1991) ..............................................................................16

*King v. Facebook, Inc.*,
2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) .......................................................26

*La'Tiejira v. Facebook, Inc.*,
272 F. Supp. 3d 981 (S.D. Tex. 2017) ......................................................25, 26, 28

*Lancaster v. Alphabet Inc.*,
2016 WL 3648608 (N.D. Cal. July 8, 2016)..........................................................27

*Langdon v. Google, Inc.*,
474 F. Supp. 2d 622 (D. Del. 2007).......................................................................28

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020) ............................................................25, 26

*Magee v. Coca-Cola Refreshments USA, Inc.*,
833 F.3d 530 (5th Cir. 2016) ................................................................................11

*Mann v. Louisiana High Sch. Athletic Ass'n*,
535 F. App'x 405 (5th Cir. 2013) ..........................................................................12

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
925 F.3d 1263 (D.C. Cir. 2019) ............................................................................25

*Marucci Sports, L.L.C. v. NCAA*,
751 F.3d 368 (5th Cir. 2014) ..........................................................................16, 29

*Mathias v. Daily News, L.P.*,
152 F. Supp. 2d 465 (S.D.N.Y. 2001).....................................................................15

*MetroNet Services Corp. v. Qwest Corp.*,
383 F.3d 1124 (9th Cir. 2004) ..............................................................................19

v

*Miami Herald Publ'g Co. v. Tornillo,*
   418 U.S. 241 (1974)...................................................................................................28

*Midwestern Machinery Co., Inc. v. Northwest Airlines, Inc.,*
   392 F.3d 265 (8th Cir. 2004) .................................................................................13

*MM Steal, LP v. JSW Steel (USA) Inc.,*
   806 F.3d 835 (5th Cir. 2015) .................................................................................16

*Molina-Aranda v. Black Magic Enterprises, L.L.C.,*
   983 F.3d 779 (5th Cir. 2020) ..........................................................................5, 6, 7

*Muniz v. Medtronic, Inc.,*
   2014 WL 1236314 (W.D. Tex. Mar. 20, 2014) ......................................................3

*Norris v. Hearst Trust,*
   500 F.3d 454 (5th Cir. 2007) .................................................................................16

*Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.,*
   555 U.S. 438 (2009)...............................................................................................19

*PruneYard Shopping Center v. Robins,*
   447 U.S. 74 (1980).................................................................................................27

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.,*
   615 F.3d 412 (5th Cir. 2010) .................................................................................14

*Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.,*
   422 Fed. App'x 344 (5th Cir. 2011) ......................................................................20

*Reno v. Am. Civil Liberties Union,*
   521 U.S. 844 (1997)...............................................................................................28

*Reveal Chat Holdco, LLC v. Facebook, Inc.,*
   471 F. Supp. 3d 981 (N.D. Cal. 2020) ..................................................................13

*Riggs v. MySpace, Inc.,*
   444 Fed. App'x 986 (9th Cir. 2011) ......................................................................27

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,*
   487 U.S. 781 (1988)...............................................................................................27

*Robles v. Domino's Pizza, LLC,*
   913 F.3d 898 (9th Cir. 2019) .................................................................................11

*SEC v. Siebel Sys., Inc.,*
   384 F.Supp.2d 694 (S.D.N.Y. 2005).....................................................................23

*Shushany v. Allwaste, Inc.*,
   992 F.2d 517 (5th Cir. 1993) ..................................................................................5

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................................26

*Smith v. EMC Corp.*,
   393 F.3d 590 (5th Cir. 2004) ................................................................................29

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993) ..............................................................................................15

*Stackla, Inc. v. Facebook Inc.*,
   2019 WL 4738288 (N.D. Cal. Sept. 27, 2019) .....................................................18

*Stearns Airport Equip. Co. v. FMC Corp.*,
   170 F.3d 518 (5th Cir. 1999) ................................................................................18

*Taleff v. Southwest Airlines Co.*,
   828 F. Supp. 2d 1118 (N.D. Cal. 2011) ...............................................................14

*Taylor v. Christus St. Joseph's Med. Ctr.*,
   2006 WL 1582097 (E.D. Tex. Mar. 28, 2006) .....................................................17

*Turner Broadcasting System, Inc. v. F.C.C.*,
   512 U.S. 622 (1994) ..............................................................................................27

*United States v. American Airlines, Inc.*,
   743 F.2d 1114 (5th Cir. 1984) ..............................................................................18

*United States v. AT&T, Inc.*,
   916 F.3d 1029 (D.C. Cir. 2019) ...........................................................................19

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982) ..............................................................................................25

*Zaid v. Smart Fin. Credit Union*,
   2019 WL 314732 (S.D. Tex. Jan. 24, 2019) .........................................................10

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) ..............................................................................................12

*Zhang v. Baidu.com, Inc.*,
   10 F. Supp. 3d 433 (S.D.N.Y. 2014) ....................................................................28

**State Cases**

*Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*,
   661 S.W.2d 933 (Tex. 1983) .................................................................................21

*Brooks v. Excellence Mortg., Ltd.*,
   486 S.W.3d 29 (Tex. App. 2015) ........................................................22

*Coles v. Glaser*,
   2 Cal. App. 5th 384 (2016) ...............................................................22

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
   51 S.W.3d 573 (Tex. 2001) .............................................................6, 7

*Republican Party of Tex. v. Dietz*,
   940 S.W.2d 86 (Tex. 1997) ...............................................................23

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) ...................................................................6, 7

*Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*,
   2020 WL 7332677 (Tex. App. Dec. 14, 2020) ...................................10

*Texas State Employees Union v. Texas Dep't of Mental Health & Mental Retardation*,
   746 S.W.2d 203 (Tex. 1987) .............................................................24

**Federal Statutes**

15 U.S.C. § 15b .............................................................................12, 13

15 U.S.C. § 18 ...................................................................................19

15 U.S.C. §§ 8401–8405 ......................................................................7

18 U.S.C. § 594 .................................................................................24

42 U.S.C. § 12181(7) ..........................................................................11

42 U.S.C. § 12182 ..............................................................................10

Americans with Disabilities Act ...........................................10, 11, 12

CDA ............................................................................................25, 26, 27

Clayton Act ....................................................................................12, 16, 19

Communications Decency Act ........................................................ *passim*

Electronic Fund Transfer Act ...............................................................7

Lanham Act .....................................................................................4, 5

Restore Online Shoppers' Confidence Act ..........................................7

Sherman Act ...................................................................................................12, 16, 17, 18

**State Statutes**

Texas Deceptive Trade Practices Act ........................................................................ *passim*

Tex. Bus. & Com. Code Ann. § 17.505 (a) ...................................................................6

Tex. Civ. Prac. & Rem. Code Ann. § 134A.002.............................................................8

Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6)(A) ...................................................9

**Rules**

Federal Rule of Civil Procedure 8 ........................................................................... *passim*

Federal Rule of Civil Procedure 9(b).................................................................5, 6, 21

Federal Rule of Civil Procedure 12 ......................................................................1, 9, 29

Federal Rule of Civil Procedure 15 ...............................................................................28

**Regulations**

12 C.F.R. §§ 1005.1–1005.20..........................................................................................5

17 C.F.R. § 243 ..............................................................................................................23

**Other Authorities**

Camelia Lopez-Fernandini, *Regulation FD of the SEC's Selective Disclosure and
     Insider Trading Rule: Finally, Full and Fair Disclosures*, 53 Admin. L. Rev.
     1353, 1355 (2001).............................................................................................23

5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217
     (3d ed.) ..............................................................................................................3

## I.      INTRODUCTION[1]

Defendant Facebook, Inc. seeks to dismiss Plaintiff Michael Moates's Second Amended

Complaint ("SAC").  The SAC fails to state a single claim upon which relief could be granted.

Moreover, Plaintiff's claims are barred by the First Amendment as well as the Communications

Decency Act.  Because the fatal defects in Plaintiff's claims are incurable, the Court should grant

this motion in its entirety, deny leave to amend, and enter judgment for Facebook.[2]

## II.     ISSUE TO BE DECIDED

Whether Plaintiff's SAC should be dismissed for failure to state a claim under Rule

12(b)(6) because it fails to allege any facts sufficient to create a plausible inference that

Facebook is liable under any one of the various causes of action alleged by Plaintiff.

## III.    BACKGROUND[3]

Plaintiff Michael Moates claims to be a user of Facebook and of various Facebook-

owned or Facebook-related products and services, including Facebook, Facebook Messenger,

Instagram, CrowdTangle, WhatsApp, GIPHY, and Oculus.  *See* Dkt. 20 ¶ 1 & p. 12.  His

sprawling SAC—which, at 325 pages including exhibits, is the third complaint filed in this

action—raises a host of claims that purport to arise under various federal and state laws.

---

[1] Throughout this brief, unless otherwise stated, emphases were added to quotations and internal punctuation, alternations, and citations were omitted from them.

[2] In the alternative, should any of Plaintiff's claims survive, or should Plaintiff be granted leave to amend, Facebook requests—as detailed in the contemporaneously filed Motion to Transfer—that this Court transfer this action to the U.S. District Court for the Northern District of California pursuant to a forum-selection clause in Facebook's Terms of Service.  *See* Declaration of Jenny Pricer ¶¶ 5, 8–9 & Ex. C § 4.4.

[3] This section is based entirely on the SAC's allegations, which "must be taken as true" for purposes of a motion to dismiss.  *Def. Distributed v. Grewal*, 971 F.3d 485, 497 n.1 (5th Cir. 2020).  Facebook does not concede that Plaintiff's allegations are accurate.

1635555

Broadly speaking, the SAC's allegations fall into three categories.[4]  ***First***, Plaintiff claims that Facebook wrongfully disabled his Facebook and Instagram accounts, and that those actions have deprived Plaintiff of the opportunity to use Facebook, Instagram, Facebook Messenger, CrowdTangle, WhatsApp, and Oculus, or to access the data associated with those accounts and features.  *See, e.g.*, SAC ¶¶ 1, 11–13.  ***Second***, Plaintiff claims that the disabling of his accounts has deprived him of the benefit of advertising services he purchased from Facebook, and that Facebook attempted to collect allegedly "fraudulent and unauthorized" advertising charges after disabling Plaintiff's accounts.  *See, e.g.*, *id.* ¶¶ 2, 8–9, 18–19.  ***Third***, Plaintiff avers that he has been deprived of access to information to which he is allegedly entitled as a Facebook shareholder.  *See, e.g.*, *id.* ¶¶ 3, 33.

To remedy these alleged harms, Plaintiff seeks compensatory damages, punitive damages, and injunctive relief that would (i) require Facebook to reactivate all of Plaintiff's accounts; (ii) require Facebook to provide Plaintiff the data "from all accounts"; (iii) prohibit Facebook from using its alleged "anti-trust violations to cross-platform target users"; and (iv) "end Facebook's unreasonable and unlawful practices."  *Id.* at 45–46 (V. Prayer For Relief ¶¶ 1–3, 6).  Additionally, Plaintiff seeks a declaration that Facebook's acquisitions of Instagram and WhatsApp violated the Clayton Act.  *Id.* at 45–46 (V. Prayer For Relief ¶¶ 4–5).

## IV.    LEGAL STANDARD

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states a claim to relief that is plausible on its face."  *Innova Hosp. San*

---

[4] *See* SAC at 8 (setting out these three categories under the heading "Nature of the Case").  Apart from these three categories, numerous other accusations are scattered throughout the SAC.  Facebook will address those allegations where they appear relevant to Plaintiff's eight asserted causes of action.

*Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).  *Pro se* complaints receive a "liberal construction," *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), but "even for *pro se* plaintiffs, . . . conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to state a claim for relief." *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017).

## V.  ARGUMENT

### A.  Plaintiff's lengthy and redundant complaint fails to satisfy Rule 8.

Federal pleading standards require that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  "Taken together, Rules 8(a) and 8(d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules."  5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217 (3d ed.). Considering these requirements, courts throughout the Fifth Circuit routinely hold that "[c]omplaints that are vague, rambling, difficult to understand, and needlessly long violate Rule 8." *Crabb v. United States*, 2012 WL 12893489, at *2 (S.D. Tex. Feb. 29, 2012); *see also Jaser v. AT&T Servs. Inc.*, 2020 WL 1329151, at *5 (N.D. Tex. Mar. 23, 2020) (dismissing 180-page complaint for failure to satisfy Rule 8); *Muniz v. Medtronic, Inc.*, 2014 WL 1236314, at *2 (W.D. Tex. Mar. 20, 2014) (dismissing 77-page complaint for the same reason).

The SAC's treatment of Plaintiff's claims is difficult to follow.  Rule 8 serves "to give the defendant fair notice of" (1) "what the claim is" as well as (2) "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Many of Plaintiff's claims fail to

do either.  The SAC purports to raise eight causes of action,[5] but many of those individual causes of action purport to rely on various and disparate sources of law that cannot jointly support a single claim for relief.  For example, the Second Cause of Action invokes contract law, the federal Lanham Act, the Texas Deceptive Trade Practices Act (DTPA), *and* the Uniform Trade Secrets Act—all while failing to identify a theory of liability that could conceivably apply to all four sources of law.  Similarly, Plaintiff's First, Fifth, and Sixth causes of action each rely on several disparate laws that target different types of injury.  Meanwhile, Plaintiff invokes certain sources of law in a redundant fashion across various causes of action without explanation:  the DTPA and the Lanham Act are raised in his First, Second, Fifth, and Sixth Causes of Action, but Plaintiff nowhere explains which provision(s) of the Lanham Act he is relying on for relief.  This disorganized and redundant style of pleading deprives Facebook of the fair notice to which it is entitled under Federal Rule 8.  *See Twombly*, 550 U.S. at 555.

Given Plaintiff's broad-based failure to comply with federal pleading standards, it is well within the Court's discretion to dismiss any cause of action that does not fairly provide notice of (1) "what the claim is" and (2) "the grounds upon which it rests."  *See id.*  In the meantime, Facebook has endeavored herein to identify the most appropriate sources of law applicable to each of Plaintiff's eight causes of action.

**B.    Plaintiff does not plead a single claim upon which relief could be granted.**

Apart from broadly failing to comply with federal notice pleading standards, Plaintiff also fails to allege sufficient facts showing that he is plausibly entitled to relief for any one of the

---

[5] *See* SAC at 33–44.

numerous claims he asserts.  *See Innova Hosp. San Antonio*, 892 F.3d at 726 (a complaint's

factual allegations must "state[] a claim to relief that is plausible on its face").

1.      **First Cause of Action (Fraud)**[6]

In his First Cause of Action, Plaintiff alleges that Facebook committed fraud in various

respects, including by: (i) using "false, misleading, or deceptive" advertising to induce him into

purchasing advertising services, only then to deprive him of the benefit of those services by

disabling his account; (ii) "placing ads in front of the Plaintiff that caused him to follow certain

pages that have now lost their investment from the advertisement he clicked on," and (iii)

making advertising-related misstatements about the Oculus device and selling the product "under

false pretenses" that "rendered it useless."  SAC at 33–34.

As an initial matter, any claim sounding in fraud must comply with the heightened

pleading standards of Rule 9(b), which requires that a plaintiff "must state with particularity the

circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *Shushany v. Allwaste, Inc.*, 992 F.2d

517, 521 (5th Cir. 1993) ("[A]llegations of fraud must meet a higher, or more strict, standard

than the basic notice pleading required by Rule 8.").  The Fifth Circuit has construed this

"particularity" requirement as demanding, at a minimum, that a plaintiff must describe "the who,

what, when, and where" supporting their fraud allegations.[7]  *Molina-Aranda v. Black Magic

Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020).  For purposes of a common-law fraud

---

[6] The First Cause of Action invokes the DTPA, the Lanham Act, and Regulation E of the Electronic Fund Transfer Act.  But Plaintiff fails to specify what type of Lanham Act claim he seeks to bring, and he cites nowhere to any particular provision of the Act.  He likewise does not identify or explain which of Regulation E's twenty subparts might support his allegations.  *See* 12 C.F.R. §§ 1005.1–1005.20.  Accordingly, Facebook construes this claim as one arising primarily under common law and the DTPA.

[7] Put another way, a plaintiff alleging fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).

5

claim, this means Plaintiff must particularly allege and describe that (1) Facebook made a material representation that was false; (2) Facebook knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) Facebook intended to induce Plaintiff to act on the representation; and (4) Plaintiff actually and justifiably relied on the representation and thereby suffered damages.  *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).[8]  Similarly, for purposes of a DTPA claim grounded in fraud, Plaintiff must particularly[9] allege and describe that "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages."  *Hugh Symons Grp. Plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002).

Plaintiff does not particularly plead adequate facts to support any one of his three theories of fraud liability, whether under the DTPA[10] or common law.  ***First***, as to his theory that Facebook induced him with its own advertising into purchasing Facebook advertising, Plaintiff fails particularly to describe <u>what</u> specific advertisement(s) he relied upon, <u>when</u> and <u>where</u> those advertisements were made, and <u>how</u> the particular advertisement(s) were false or misleading.  *See Black Magic Enterprises*, 983 F.3d at 784 (setting out the "who, what, when,

---

[8] The elements of common-law fraud are substantially identical under California law.  *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).  Plaintiff agreed that California law would apply to "any claim, cause of action, or dispute . . . that arises out of or relates to" the Terms of Service between Facebook and Plaintiff.  Declaration of Jenny Pricer, Ex. C § 4.4.  But this choice-of-law agreement does not materially impact Plaintiff's case because—as shown herein—Plaintiff's common-law claims fail under Texas *or* California law.

[9] "It is well-established that claims alleging violations of the DTPA are subject to the requirements of Rule 9(b)." *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009).  *See also, e.g.*, *Broxterman v. State Farm Lloyds*, 2016 WL 397560, at *2 (E.D. Tex. Feb. 2, 2016) (Mazzant, J.) (applying Rule 9(b) to DTPA claims).

[10] In addition to these substantive defects in his fraud allegations, Plaintiff also failed to comply with the DTPA's notice requirement.  *See* Tex. Bus. & Com. Code Ann. § 17.505 (a) ("As a perquisite to filing a suit seeking damages" under the DTPA, "a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint . . . .").

1635555

and where" pleading requirements).  ***Second***, for his allegation that Facebook defrauded him by "placing ads in front of the Plaintiff that caused him to follow certain pages that have now lost their investment from the advertisement he clicked on" (SAC at 33), Plaintiff similarly fails to describe the "what," "when," and "how" of his fraud theory.  Additionally, Plaintiff pleads no facts to suggest that ***he*** incurred any damages—as is required under the DTPA and common law—in connection with some other Facebook advertiser's alleged loss of investment.  *See Motorola*, 292 F.3d at 468 (DPTA); *Ernst & Young*, 51 S.W.3d at 577 (Texas fraud); *Robinson Helicopter Co.*, 34 Cal. 4th at 990 (California fraud).  ***Third***, he claims that Facebook "made multiple misstatements" about its products, including that Facebook "advertised a private account for Oculus that was unrelated to any Facebook account," but Plaintiff again fails to specify <u>what</u> these statements contained, <u>when</u> and <u>where</u> the statements were made, or <u>how</u> specifically they were fraudulent or misleading.  *See Black Magic Enterprises*, 983 F.3d at 784. And to the extent Plaintiff contends that Facebook affirmatively misrepresented the relationship between Plaintiff's Facebook account and his Oculus device, Plaintiff fails to explain how he justifiably relied on any such representations, or how that reliance gave rise to any damages.  *See Ernst & Young*, 51 S.W.3d at 577; *Robinson Helicopter Co.*, 34 Cal. 4th at 990.

Finally, Plaintiff alleges that Facebook attempted to charge him for advertising services after his accounts were disabled.  This allegation—which bears no apparent relationship to the First Cause of Action's "fraud" heading—appears to rely upon the Restore Online Shoppers' Confidence Act (ROSCA) and/or Regulation E of the Electronic Fund Transfer Act, but Plaintiff fails to explain which provision(s) of those laws Facebook allegedly violated.  SAC at 34–35. Moreover, the ROSCA does not appear to contain any private right of action.  *See* 15 U.S.C. §§ 8401–8405.

## 2.    Second Cause of Action (Trade-Secret Misappropriation)

Although captioned as a claim for "liability" arising under various laws, Plaintiff's

Second Cause of Action is primarily one for trade-secret misappropriation.  *See* SAC at 33–34.

Plaintiff claims that Facebook misappropriated trade secrets by deactivating his accounts,

thereby depriving him of access to "customer lists and analytical data" stored on those

accounts.[11]  SAC at 34.  These allegations fall far short of pleading a claim for misappropriation

under the Texas Uniform Trade Secrets Act (TUTSA), which requires first that Plaintiff establish

ownership of a trade secret.  Information cannot qualify as a "trade secret" unless "(A) the owner

of the trade secret has taken reasonable measures under the circumstances to keep the

information secret," and "(B) the information derives independent economic value . . . from not

being generally known to, and not being readily ascertainable through proper means by, another

person who can obtain economic value from the disclosure or use of the information."  Tex. Civ.

Prac. & Rem. Code Ann. § 134A.002.

Plaintiff fails to plead sufficient facts to satisfy either of those components.  First, the

SAC is devoid of allegations suggesting that Plaintiff's "customer lists and analytic data" are

information that derive independent economic value from being kept secret.  *See id.*

§ 134A.002(6)(B).  The SAC fails to provide any information about what Plaintiff's "customer

lists" contain or what his "analytical data" pertain to.  And while the SAC contains a handful of

passing references to the fact that Plaintiff engages in "business" (*see, e.g.*, SAC at 8), it does not

---

[11] To the extent the Second Cause of Action also seeks to state a claim under the DTPA, Plaintiff fails again to particularly describe the "what," "when," "where," and "why" of the alleged misrepresentation(s) made by Facebook.  *See Motorola*, 292 F.3d at 468.

explain the nature of Plaintiff's business, how his business utilizes customer lists and analytic data, or why that information derives independent value by being kept secret from others.[12]

Second, even if Plaintiff's customer lists and analytic data could constitute trade secrets, Plaintiff fails to plead adequate facts to plausibly suggest that he took "reasonable measures under the circumstances to keep the information secret."  Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6)(A).  To the contrary, Plaintiff concedes that he supposedly stores his alleged trade secrets on Facebook itself.  SAC at 34.  To be sure, Plaintiff avers that his own Facebook account access is protected by two-factor verification, but he fails to acknowledge that Facebook's Terms of Service ("Terms")—which he references elsewhere in his complaint— expressly grant Facebook a license to use any uploaded content belonging to Plaintiff "that is covered by intellectual property rights":

> [W]hen you share, post, or upload content that is covered by intellectual property rights on or in connection with our Products, you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content.

Pricer Decl., Ex. C § 3.3.1.[13]  Plaintiff cannot plausibly allege that granting this license to Facebook and sharing his information with Facebook—instead of storing it elsewhere— constituted "reasonable measures under the circumstances" to protect his alleged trade secrets.[14]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6)(A).

---

[12] During the TRO hearing, Plaintiff claimed that he is in the business of journalism.  *See* Dkt. 27.  Even if that allegation were present in the SAC (which it is not), it would not suffice to explain why Plaintiff's vaguely described "customer lists and analytic data" derive economic value from their alleged secrecy.

[13] Ordinarily, a court entertaining a Rule 12 motion to dismiss must limit its analysis to the face of the claimant's pleading.  But where a plaintiff references a contract in their complaint, and that contract is central to one of Plaintiff's claims—such as Plaintiff's various breach-of-contract claims asserted here—the defendant may attach that contract to its motion to dismiss.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[14] Moreover, Facebook's Terms—to which Plaintiff agreed—expressly provide that "under no circumstance will we

Nor, for that matter, can Plaintiff plausibly allege that Facebook misappropriated or misused any information shared by him pursuant to that license.  *See Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, 2020 WL 7332677, at *4 (Tex. App. Dec. 14, 2020) (holding that a TUTSA claim requires that "the trade secret was acquired through a breach of a confidential relationship or discovered by improper means").

### 3.    Third Cause of Action (Americans With Disabilities Act)

Plaintiff next contends that Facebook violated the Americans with Disabilities Act ("ADA") by failing to provide reasonable accommodations for his disabilities, by discriminating against Plaintiff "by the choosing to exclude and segregate him without cause," and by displaying targeted ads "based on disabilities or behaviors of disabilities that he has."  SAC at 36.  None of these allegations suffice to state a claim under Title III[15] of the ADA, which requires Plaintiff plead facts showing that "(1) he has a disability within the meaning of the Act; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the plaintiff was denied public accommodations by the defendant because of his disability."  *Bracken v. G6 Hosp. LLC*, 2016 WL 3946791, at *5 (E.D. Tex. June 3, 2016), *report and recommendation adopted sub nom. Bracken v. G6 Hosp. Corp.*, 2016 WL 3917701 (E.D. Tex. July 20, 2016) (Mazzant, J.).

First, Plaintiff cannot show that Facebook owns, leases, or operates a place of public accommodation because "a website is not a place of public accommodation under the ADA." *Zaid v. Smart Fin. Credit Union*, 2019 WL 314732, at *6 (S.D. Tex. Jan. 24, 2019).  *See also*

---

be liable to you for any lost profits, revenues, ***information***, or ***data*** . . . ."  Pricer Decl., Ex. C § 4.3.

[15] Because these allegations clearly do not arise in the context of employment discrimination (covered by Title I of the ADA) or discrimination by government entities (Title II), Facebook construes Plaintiff's claim as arising under Title III, which applies to places of public accommodation.  *See* 42 U.S.C. § 12182.

*Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534–35 (5th Cir. 2016) (holding that Coca-Cola vending machines are not "places of public accommodation" as defined by 42 U.S.C. § 12181(7), because "a vending machine is not akin to any of the listed examples" in that provision, which exclusively references "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services").

Plaintiff's sole authority on this issue—*Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019)—is not to the contrary.  In *Robles*, the Ninth Circuit addressed whether Title III applies to Domino's website and app, which Domino's customers use "to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-store pickup."  *Id.* at 905.  The court held that the website and app qualify as places of public accommodation under the ADA because those platforms' alleged inaccessibility "impedes access to the goods and services of [Domino's] physical pizza franchises—which are places of public accommodation."  *Id.*  In so holding, the court emphasized that customers use the Domino's app *in conjunction with* purchasing pizza from nearby physical Domino's locations, which are indisputably places of public accommodation.  *See id.*  "This nexus between Domino's website and app and physical restaurants—which Domino's does not contest—is *critical* to our analysis."[16]  *Id.*  Plaintiff pleads no facts to suggest a comparable nexus between Facebook's online platforms and the physical spaces (e.g., office space) it operates.  Indeed, Plaintiff's use of Facebook's online platforms is entirely unrelated to the accessibility of the physical properties Facebook occupies or operates, which are not otherwise open to the general public.

---

[16] The Ninth Circuit in *Robles* expressly noted that its opinion does not address whether "the ADA covers the websites or apps of a physical place of public accommodation where their inaccessibility does not impede access to the goods and services of a physical location."  913 F.3d at 905 n.6.

1635555

Second, even if Facebook's website were a "place of public accommodation" for purposes of the ADA (it is not), Plaintiff has not pleaded facts to show that he was denied any public accommodations by Facebook "**because of** his disability."  *See Bracken*, 2016 WL 3946791, at *5.  Although Plaintiff claims to have received targeted ads for certain medications "based on disabilities or behaviors of disabilities that he has" (SAC at 36), Plaintiff cannot show that his mere exposure to third-party advertisements somehow constitutes denial of any public accommodation.[17]  Nor does he plead any facts to substantiate his conclusory allegations that Facebook excluded him from its platform on the basis of his disabilities.

### 4.     Fourth Cause of Action (Antitrust)

#### a.     Plaintiff's Antitrust Claims Are Time Barred

Private lawsuits seeking damages for alleged violations of Sections 2 of the Sherman Act and Section 7 of the Clayton Act are subject to a four-year statute of limitations.  *See* 15 U.S.C. §15b.  An antitrust "cause of action accrues" and the limitations period begins to run "when a defendant commits an act that injures a plaintiff[]."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).  Here, Plaintiff purports to challenge five allegedly anticompetitive acts (though only the first two are referenced in anything more than passing): The 2012 acquisition of Instagram, the 2014 acquisition of WhatsApp, the 2014 acquisition of Oculus, the 2016 acquisition of CrowdTangle, and the 2020 acquisition of GIPHY.  SAC ¶ 29. With the exception of GIPHY, each of these acquisitions occurred five to nine years before the SAC was filed.  To the extent Plaintiff seeks damages related to these acquisitions, the statute of

---

[17] Moreover, although Plaintiff claims that he suffers from various disabilities that affect "his day-to-day life" (SAC at 36), he does not plead sufficient facts to explain how his disabilities "substantially limit[] a major life activity," as he must.  *Mann v. Louisiana High Sch. Athletic Ass'n*, 535 F. App'x 405, 411 (5th Cir. 2013); *see also Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017).

limitations has run for all but the GIPHY acquisition, about which Plaintiff has alleged no facts whatsoever and thus cannot possibly have stated a claim.

While there is no statute of limitations for antitrust claims seeking injunctive relief, the equitable defense of laches applies, is apparent from the face of the SAC, and operates to bar these claims. *See, e.g.*, *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958) (the "defense[] of . . . laches may be asserted by motion to dismiss for failure to state a claim—provided that the complaint shows affirmatively that the claim is barred"). When a plaintiff brings antitrust claims "outside the analogous [statutory] limitations period, the bare fact of delay creates a rebuttable presumption of prejudice to the defendant." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). To rebut this presumption, a plaintiff must show that the delay is excusable and that there is no prejudice to the defendant. *Id*. Neither showing is possible here. Indeed, *last year*, a district court evaluated a private challenge to Facebook's years-old acquisitions of Instagram and WhatsApp and held that laches applied and barred the claims at the motion to dismiss stage. *See Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 991-95 (N.D. Cal. 2020) (holding four-year statute of limitations in 15 U.S.C. § 15b furnishes a guideline for the computation of the laches period and that antitrust challenges to acquisition of Instagram and WhatsApp were barred by laches). The doctrine of laches similarly applies here.

First, Plaintiff's years-long delay in bringing this action is inexcusable. Plaintiff knew or should have known of each highly publicized acquisition when it was announced. *See Midwestern Machinery Co., Inc. v. Northwest Airlines, Inc.*, 392 F.3d 265, 272 (8th Cir. 2004) ("Mergers occur in the public eye and at a reasonably certain date."). Plaintiff offers no reason for his delay in filing a lawsuit.

Second, Plaintiff's unreasonable delay prejudiced Facebook.  A defendant is unduly prejudiced when it makes "makes major business investments or expansions."  *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 624 (5th Cir. 2013).  This Court should not permit "plaintiffs to sleep through . . . [alleged] antitrust violations and then sue many years later." *International Tel. & Tel. Corp. v. General Tel. & Electronics Corp.*, 518 F.2d 913, 927 (9th Cir. 1975); *Garabet, M.D., Inc. v. Autonomous Techs Corp.*, 116 F. Supp. 2d 1159, 1173 (C.D. Cal. 2000) (plaintiffs' failure to take any action for "months" after knowing about the merger "fatal to their claims for equitable relief").  Facebook has already acquired the assets in question and spent billions of dollars in doing so.  SAC ¶ 29.  In these circumstances, courts routinely reject antitrust claims brought by private plaintiffs seeking injunctive relief.  *See, e.g.*, *Taleff v. Southwest Airlines Co.*, 828 F. Supp. 2d 1118, 1124–25 (N.D. Cal. 2011) (citing cases and granting motion to dismiss because plaintiffs were not entitled to their requested injunctive relief); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235 (8th Cir. 2010) (plaintiff who waited only two months after announced agreement to merge to bring lawsuit engaged in "inexcusable delay[]").

**b.      Plaintiff Failed to Plausibly Define a Relevant Antitrust Market**

An antitrust complaint must plausibly define a relevant product and geographic market. *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010).  "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is legally insufficient, and a motion to dismiss may be granted."  *Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2002).  "[D]efining the relevant market requires some particularity." Dkt. 26 ("TRO Order") at 10.  Plaintiff's SAC falls far short.

Plaintiff's alleged product and geographic market—"journalism in the United States" or "journalism relevant to users belonging to the 'Misc. Freedom,' 'Conservative Engagement,' and 'DJT, GOP, Moderate' readerships," *id*. at 12—fail to meet these minimal pleading requirements.  *See id.* (holding Plaintiff's purported relevant market was "legally insufficient" for preliminary injunctive relief).  Plaintiff has not pled any facts to support a journalism product market, or defined the contours of the market, including who participates and who does not. *Moreover,* there is no allegation setting forth the products that are reasonably interchangeable with Facebook's products nor any allegations regarding cross-elasticity of demand.  See *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 481–82 (S.D.N.Y. 2001) (where plaintiff alleged a relevant market for the home delivery of the Daily News, "failure to reference the rule of interchangeability is alone grounds for dismissal").  Furthermore, courts have rejected attempts to narrowly define media markets based on their target audiences.  *Belfiore v. New York Times Co.*, 826 F.2d 177, 180 (2d Cir.1987) ("general interest daily newspapers directed primarily to upscale readers" as a market definition trying to isolate *The New York Times* was implausible), *cert. denied*, 484 U.S. 1067 (1988).  Finally, the SAC fails to allege any facts in support of its purported geographic market, which is independently fatal to Plaintiff's antitrust claims.  *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993).

Based on Plaintiff's allegations, there is no way to assess Facebook's ability to "lessen or destroy" competition in the alleged journalism markets, so the SAC's antitrust claims, however styled, must be dismissed.  *See Academy of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co.*, 2020 WL 4050243, at *9 (E.D. La. July 17, 2020) ("Without a definition of a relevant market, there is no way to measure a defendant's ability to lessen or

1635555

destroy competition.").[18]

### c.    Plaintiff Lacks Antitrust Standing

The antitrust laws were enacted for "the protection of competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962).   Thus, "a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990); *see also Kiepfer v. Beller*, 944 F.2d 1213, 1221 (5th Cir. 1991) ("An antitrust plaintiff must show not just that the defendants' actions injured him, but that they unreasonably restrained competition.").  The SAC fails to plausibly allege any antitrust injury.

The only harms Plaintiff alleges are tied to Facebook's decision to disable his account after he violated Facebook's policies.  *See* SAC ¶ 13.  Ostensibly, this resulted in a loss of advertising dollars he had provided to Facebook and the loss of access to "business data" that Plaintiff wished to have.  Because Plaintiff is not a competitor of Facebook at all, this "injury" is not an antitrust injury at all.  *See, e.g.*, *Norris v. Hearst Trust*, 500 F.3d 454, 468 (5th Cir. 2007).  But even assuming *arguendo* that Plaintiff (who purportedly works in "side journalism") and Facebook are competitors, this is not an antitrust injury, because Plaintiff's loss of access to Facebook's platforms in no way diminishes competition.  *See, e.g.*, *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 376 (5th Cir. 2014) ("[The plaintiff's] predominate focus on its own injury is misguided because antitrust laws are designed to protect competition, not competitors").  Plaintiff is free to continue "competing" with Facebook, he just may not do so on Facebook.

---

[18] Plaintiff did not plead a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, but he appeared to make a Section 1 argument at the January 13, 2021 hearing.  *See* TRO Order at 11.  Like Section 2 of the Sherman Act and Section 7 of the Clayton Act, Section 1 requires the plaintiff to plead a "particular market."  *See MM Steal, LP v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015).  Plaintiff failed to plausibly define any relevant market, and as a result, any Section 1 claim fails.

Moreover, Plaintiff has failed to allege any facts to support the notion that competition in the market as a whole could be affected, not the least of which because Plaintiff's allegations that he competes with Facebook are implausible.  Courts have dismissed comparable complaints by single doctors who are terminated by a single hospital because termination could not plausibly impact competition in the market as a whole.  *See, e.g., Taylor v. Christus St. Joseph's Med. Ctr.*, 2006 WL 1582097, at \*3–4 (E.D. Tex. Mar. 28, 2006) (holding a doctor's alleged harm to his own practice resulting from the loss of privileges at a single hospital is "plainly insufficient" to survive a motion to dismiss).

Further, the SAC fails to meet the required standard of pleading an injury "that flows from that which makes [the] defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  The acts alleged in the SAC—the acquisitions of Instagram, WhatsApp, and other companies—have no connection to Plaintiff's alleged injury—deactivation of his Facebook account.  Plaintiff does not allege—because he cannot—that Facebook would not have deactivated him but for the challenged acquisitions.  And there is no allegation that a standalone Instagram or WhatsApp would have applied a different policy to Plaintiff's content, or even would have served as venues for Plaintiff's content to be shared.  Thus, as the Supreme Court explained in *Brunswick*, a competitor has no antitrust injury where it "would have suffered the identical loss" absent a challenged acquisition.  *Id.* at 487.

### d.      Plaintiff Has Not Stated A Section 2 Claim

Plaintiff's Section 2 claim fails across every dimension.  Even accepting the alleged journalism markets as true, which the court should not do, Plaintiff has not plausibly alleged that Facebook has monopoly power in any market—a necessary element of a Section 2 claim—nor are there any facts to suggest that Facebook is a monopolist in "journalism."  *See* TRO Order at

17

13 ("Plaintiff has not carried his burden at this early stage to define a relevant market, let alone Facebook's monopoly power in that relevant market."); *United States v. American Airlines, Inc.*, 743 F.2d 1114, 1117 (5th Cir. 1984) (illegal monopolization requires a showing of "the possession of monopoly power in the relevant market.").

Plaintiff also fails to plausibly allege any exclusionary conduct. *See* TRO Order at 13. "The key factor courts have analyzed in order to determine whether challenged conduct is or is not competition on the merits is the proffered business justification for the act." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 522 (5th Cir. 1999). Here, the face of the Complaint supplies ample business justification for Facebook's decision to disable Plaintiff's account. Specifically, Plaintiff concedes that he "had a page titled QAnon" and acknowledges that this violated Facebook's Terms. SAC ¶ 15. Critically, another district court recently recognized the importance of "allowing Facebook to exclude those who act impermissibly on its platform." *Stackla, Inc. v. Facebook Inc.*, 2019 WL 4738288, at *5 (N.D. Cal. Sept. 27, 2019). While Plaintiff says that he "was attempting" to comply with Facebook's policies, this does not change the fact that Plaintiff was not in compliance with those policies and therefore deactivation was justified. SAC ¶ 17.

Further, Plaintiff's Section 2 claim fails because it is premised on the theory—contrary to the antitrust laws—that Facebook had a duty to deal with Plaintiff. But the Supreme Court has long held that, "[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). The narrow exception to that rule identified in *Aspen Skiing Co. v. Aspen Highlands Skiing Co.*, 472 U.S. 585 (1985), is not alleged here. At a minimum, the *Aspen Skiing*

exception requires that the defendant terminate a profitable course of dealing in favor of long-term monopoly gains.  *MetroNet Services Corp. v. Qwest Corp.*, 383 F.3d 1124, 1132-33 (9th Cir. 2004).  Plaintiff alleges no facts to support this narrow exception.

### e.      Plaintiff Has Not Stated A Section 7 Claim

Section 7 of the Clayton Act proscribes only those mergers whose effect "may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.  To state a Section 7 claim, a plaintiff must define a relevant product and geographic market, and prove that a transaction, on consummation, had "a probable anticompetitive effect"—that is, it must prove that the "but for" world would have likely been substantially more competitive than the world with the merged firm.  *See United States v. AT&T, Inc.*, 916 F.3d 1029, 1032 (D.C. Cir. 2019).  Plaintiff has not alleged any facts to support the notion that there was any increase in market concentration as a result of any of the acquisitions identified in the Complaint.  And there are no allegations outlining any competition between Facebook and any of the acquired companies pre-merger, nor are there allegations to suggest that any of the acquired companies competed in the same relevant market as Facebook.  Instead, the Complaint merely makes the conclusory allegation that Facebook acquired Instagram, WhatsApp, CrowdTangle, Giphy, Oculus, "and many others," in violation of the Clayton Act.[19]  This is plainly insufficient.  *See Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 493 (5th Cir. 1984) (plaintiff failed to allege that "the market is in such a condition that [the challenged acquisition] threatens competition").

---

[19] *See* SAC ¶ 29 (reciting the text of Section 7 and asserting "this is exactly what they have done.").

### 5.      Fifth Cause of Action ("Data Theft")

Plaintiff's Fifth Cause of Action accuses Facebook of "data theft" by relying on two sources of law:  contract law and the DTPA.  *See* SAC at 38.  Neither theory entitles him to relief.

First, Plaintiff claims that Facebook breached its own Terms by withholding the data associated with Plaintiff's deactivated accounts (*id.* at 39–40), but he fails to identify any Terms provision(s) Facebook allegedly breached.  *See Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.*, 422 Fed. App'x 344, 350 (5th Cir. 2011) (holding that plaintiff failed to state a breach-of-contract claim because plaintiff did "not attach, identify, or describe the terms of any contract" between the parties).

Plaintiff references two Terms provisions in passing, but neither is applicable to this breach-of-contract theory.  First, he describes the Terms as providing that "You can download a copy of your data at any time."  SAC at 38.  But in fact, the Terms more specifically state that "You can download a copy of your data at any time ***before deleting your account***."  Declaration of Jenny Pricer, Ex. C, § 3.1.  On its face, that provision only applies to a user's ability to access data before an account is deleted; it provides no recourse to a user whose account has been disabled by Facebook.  Second, Plaintiff notes that an earlier version of Facebook's Terms provided that "you own all of the content and information you post on Facebook, and you can control how it is shared."  SAC at 39.  But as Plaintiff concedes, the Terms were subsequently modified, and the current and valid version of the Terms contain no such provision.  *See id.* (alleging that Facebook "removed this sometime between March 2018 and September 2020").  Finally, Plaintiff implies that he was deprived of some sort of contractual "due process" right under "an agreement where [Facebook] would allow for due process" in connection with its

20

Oversight Board (*id.* at 40), but he fails to describe the alleged agreement in any detail, much less cite to and indicate what provision of that purported agreement provides the "due process" rights of the sort he describes in his SAC.

Second, Plaintiff claims that Facebook violated the DTPA by failing to abide by these same alleged contract representations. But "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983). To the extent Plaintiff seeks to rely on any representation other than the aforementioned contractual provisions, he has failed to identify those representations with particularity under Rule 9(b). *See Berry*, 608 F. Supp. 2d at 800.

### 6.      Sixth Cause of Action (Breach of Contract)

Again invoking contract law, Plaintiff claims in his Sixth Cause of Action that Facebook violated its own Terms in numerous respects, including by "allow[ing] high profile sex offenders to join" Facebook; "allow[ing] illegal multi-level marketing pyramid schemes on Facebook"; and by not removing content that is bullying, harassing, violent, pornographic, or that otherwise violates Facebook's own community standards. SAC at 41–42. These allegations generally fail to comply with Rule 8, because the SAC provides no factual detail to put Facebook on adequate notice of its alleged breaches. For example, Plaintiff suggests that Facebook "allow[ed] people [to] 'transfer your account . . . to anyone without first getting our written permission'" (SAC at 41), but the SAC contains no allegations explaining what account transfer(s) occurred, or what contract provision(s) Facebook's alleged conduct may have violated. Similarly, Plaintiff claims that Facebook "allowe[d] content that is a violation of intellectual property laws" (*id.*), but he fails to allege any facts in support of this conclusory statement. Plaintiff likewise alleges that

Facebook "violated their own community standards" by disabling his account and "claiming he violated community standards when in fact he did not" (*id.* at 42), but he does not identify any provision of the Terms that prevents Facebook from enforcing its Community Standards as it sees fit.  Indeed, the Terms clearly vest Facebook with the discretion to do exactly that:  "If **we** determine that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards, we may suspend or permanently disable access to your account."  Pricer Decl., Ex. C, § 4.2.

Moreover, Plaintiff generally fails to allege any facts plausibly suggesting that **he** suffered damages from these breaches, as is required for any breach-of-contract claim.  *See Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App. 2015); *Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016).  The bulk of Plaintiff's Sixth Cause of Action appears to raise generalized complaints about Facebook's alleged failure to enforce its contract rights against **other** users.  And while Plaintiff does allege that he was injured by an "illegal multi-level marketing pyramid scheme[] on Facebook" (SAC at 41), he does not plead any facts indicating that he actually incurred damages as a result.  Nor does he identify any provision whereby Facebook undertook a contractual duty to protect Plaintiff from that alleged scheme, or from any other harm allegedly occasioned to him by third parties via Facebook's platforms.

### 7.   Seventh Cause of Action ("Violation of Regulation FD, Unfair Practices, Insider Trading")

Next, Plaintiff claims that Facebook violated Regulation FD (for "fair disclosure"), which was promulgated by the Securities and Exchange Commission.  *See* 17 C.F.R. § 243.  This claim fails for a simple reason:  there is no private right of action to vindicate an alleged violation of Regulation FD.  *See generally id.*; *see also* Camelia Lopez-Fernandini, *Regulation FD of the*

*SEC's Selective Disclosure and Insider Trading Rule: Finally, Full and Fair Disclosures*, 53 Admin. L. Rev. 1353, 1355 (2001) ("Only the SEC can bring legal actions" for alleged violations of Regulation FD, "usually in the form of cease-and-desist orders.").  Moreover, Plaintiff fails to allege facts suggesting that a violation occurred in any event.  "In general terms, Regulation FD prohibits a company and its senior officials from ***privately*** disclosing any material nonpublic information regarding the company or its securities to certain persons such as analysts and institutional investors."  *SEC v. Siebel Sys., Inc.*, 384 F.Supp.2d 694, 696 (S.D.N.Y. 2005). Plaintiff does not allege that any required disclosures were made ***exclusively*** on Mark Zuckerberg's Facebook profile.  Indeed, according to the very website hyperlinked at Footnote 25 of the SAC, "Facebook uses the **investor.fb.com** and **newsroom.fb.com** websites *as well as* Mark Zuckerberg's Facebook Page (facebook.com/zuck) as means of disclosing material non-public information and for complying with its disclosure obligations under Regulation FD." Those "fb.com" sites are fully accessible to the public.

### 8.      Eighth Cause of Action (Right to Privacy)

Lastly, Plaintiff claims that Facebook violated his right to privacy under the Texas Constitution through various acts, including by "target[ing] consumers with advertising."  SAC at 43.  But this cause of action suffers a fatal flaw:  a claim under Article I of the Texas Constitution requires state action, and Facebook is not a state actor.  *See Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 91, 93 (Tex. 1997) (holding that state action is required before litigant can maintain claim under Article I of Texas Constitution); *Texas State Employees Union v. Texas Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987) (observing that while the Texas Constitution "contains no express guarantee of a right of privacy, it contains several provisions" in Article I that "have been recognized as implicitly creating

protected zones of privacy").  Because Facebook is a corporation, and not an arm of the government, Plaintiff's Texas constitutional claim fails.

### 9. The court should disregard the SAC's scattered allusions to other sources of law.

Apart from the aforementioned causes of action, the SAC includes passing references to various other sources of law, such as 18 U.S.C. § 594 (which imposes criminal liability for voter intimidation), the Health Insurance Portability and Accountability Act of 1996, the Family Educational Rights and Privacy Act, the Due Process Clause of the United States Constitution, and the federal prohibition on insider trading, among others.  Plaintiff's scattershot allusions to other sources of law must be disregarded, for Plaintiff has failed to place Facebook on adequate notice of any claims he might seek to bring under these laws.  *See Twombly*, 550 U.S. at 555 (noting that Rule 8 serves to provide fair notice of (1) "what the claim is" as well as (2) "the grounds upon which it rests").

### C. Plaintiff's claims are barred by the First Amendment and the Communications Decency Act.

In addition to failing to state a claim upon which relief can be granted, Plaintiff's causes of action are barred by the Communications Decency Act ("CDA") and the First Amendment of the United States Constitution.

### 1. Plaintiff's claims are barred by the CDA.

Because the gravamen of each of Plaintiff's claims is Facebook's decision to disable his accounts, thereby removing content Plaintiff had posted to the platform, each of those claims is barred by the CDA.[20]  By enacting the CDA, "Congress provided broad immunity . . . to Web-

---

[20] The Court should reject Plaintiff's meritless argument that Section 230 (and indeed, the entire Communications

1635555

based service providers for all claims stemming from their publication of information created by third parties." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  This immunity is codified at 47 U.S.C. § 230, which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  *Id.* § 230(c)(1).  "At its core, the CDA bars lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content." *La'Tiejira*, 272 F. Supp. 3d at 992.  The CDA has been held to bar a wide variety of claims, including federal antitrust claims and state-law fraud claims.  *See Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1266, 1272 (D.C. Cir. 2019) (holding CDA barred federal antitrust claims premised on website's publication of categories of content that allegedly "severely restricted" consumers' ability to "discover and contact Plaintiffs and other legitimate locksmiths"); *Lewis*, 461 F. Supp. 3d at 955 (holding CDA barred common-law fraud claim).

Facebook is unquestionably an "interactive computer service" provider under the Act. *La'Tiejira*, 272 F. Supp. 3d at 993 ("Many courts have held that Facebook satisfies the definition for 'interactive computer service'" under the CDA).  And the accounts and content at issue constitute "information provided by another information content provider," as they were all

---

Decency Act) is unconstitutional.  He claims the Act violates the First Amendment because it "restricts speech." SAC at 18.  Plaintiff's constitutional rights are not implicated when a private, non-state actor (Facebook) chooses not to host his speech.  *See, e.g.*, *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 953 (N.D. Cal. 2020) (rejecting constitutional challenge to Section 230(c)(1) and holding that the provision "does not ban or restrict any speech").  Nor can Plaintiff complain that the Act's definition of "interactive computer service" would be unconstitutional *as applied* (in some other case) to the federal government, when in ***this*** case there is no question that Facebook qualifies as an interactive computer service under the Act.  *See, e.g.*, *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 993 (S.D. Tex. 2017) ("Many courts have held that Facebook satisfies the definition for 'interactive computer service'" under the CDA).  *Cf. Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.  A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.").

created by Plaintiff, not Facebook.  *See, e.g.*, *Brittain v. Twitter, Inc.,* 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019) (user accounts "qualify as 'information provided by another information content provider'" where user "expressly acknowledges that he, not Twitter, created and operated the accounts").

Moreover, the SAC here focuses on exactly the sort of "publisher" conduct to which CDA immunity applies—Facebook's alleged decision to remove or restrict Plaintiff's accounts or other third-party content.  This sort of conduct—Facebook's regulation of the material hosted on its platforms—falls squarely within the CDA's broad immunity.  Indeed, courts have repeatedly held that a website's blocking or removing a plaintiff's posts or suspending a plaintiff's account is among the types of "publisher conduct immunized" by section 230(c)(1) of the CDA.  *See Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015); *Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119–20 (N.D. Cal. 2020) (holding that CDA applied to claims "based on Facebook's decision to remove [plaintiff's] account, postings, and content"); *King v. Facebook, Inc.*, 2019 WL 4221768, at *3–4 (N.D. Cal. Sept. 5, 2019) (holding that CDA applied to plaintiff's claims based on Facebook "either removing his posts, blocking his content, or suspending his accounts" because such claims "are barred by the immunity provided under Section 230 of the CDA"); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *4–5 (N.D. Cal. May 9, 2019) (holding that CDA applied to claims "stem[ming] from [Facebook's] decision to remove plaintiff's post or restrict plaintiff's ability to publish new posts" because the "decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct"); *Riggs v. MySpace*, *Inc.*, 444 Fed. App'x 986, 987 (9th Cir. 2011) (Section 230(c)(1) immunizes "decisions to delete [plaintiff's] user profiles"); *Lancaster v.*

*Alphabet Inc.*, 2016 WL 3648608, at *2–3 (N.D. Cal. July 8, 2016) (dismissing claims based on removal of plaintiff's videos under Section 230(c)(1)).

Because CDA immunity precludes Plaintiff from holding Facebook liable for disabling his account—the alleged injury that underscores each of his claims—the Court should dismiss the SAC.

### 2.     Plaintiff's claims are barred by the First Amendment.

Enforcing Plaintiffs' claims would also violate Facebook's First Amendment rights under the U.S. Constitution.  The First Amendment protects "the decision of both what to say and what not to say."  *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 797 (1988); *see also Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994).  Plaintiff cannot, consistent with the First Amendment, tell Facebook "what it must print."  *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 88 (1980).  This, however, is precisely what the SAC requests: Plaintiff asks the Court to hold Facebook liable for declining to carry his content on its platform. Indeed, he seeks an injunction *requiring* Facebook to host that content, despite Facebook's decision not to.  *See* SAC at 45.  But the First Amendment safeguards Facebook's "exercise of editorial control and judgment."  *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 575 (1995).  Just as a newspaper cannot be required to publish op-ed columns, Facebook cannot be required to host content on its platform that it chooses to reject.  *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Courts have consistently held that these First Amendment principles protect editorial judgments made by social media companies—including Facebook—about third-party content on their platforms.  *See, e.g.*, *La'Tiejira*, 272 F. Supp. 3d at 991 (finding Facebook had made a sufficient showing under Texas's anti-SLAPP statute that the plaintiff's claims "arise directly

and exclusively from Facebook's First Amendment right to decide what to publish and what not

to publish on its platform"); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y. 2014)

(concluding the First Amendment barred claims against search engine for excluding from its

search results information about certain political topics); *Langdon v. Google, Inc.*, 474 F. Supp.

2d 622, 629–30 (D. Del. 2007) (concluding Google and Microsoft could not be compelled to

"place Plaintiff's ads for his websites in prominent places on their search engine results" because

such relief would "contravene[] Defendants' First Amendment rights"); *Reno v. Am. Civil*

*Liberties Union*, 521 U.S. 844, 885 (1997) (holding that First Amendment protections extend to

the Internet).   Because Facebook's decisions to remove content from its service are squarely

protected by the First Amendment, and because *each* of Plaintiff's claims seeks (directly or

otherwise) to hold Facebook liable for those decisions, the Court should dismiss the SAC.

>    **D.     Plaintiff should not be granted leave to amend any of his claims, or to plead**
>    **any new claims.**

Plaintiff has already amended his complaint twice:  once as a matter of course pursuant to

Rule 15(a)(1)(A), and once with Facebook's written consent pursuant to Rule 15(a)(2).  Dkt.

Nos. 5, 15, and 20.  Should Plaintiff seek leave to file a ***fourth*** complaint, this Court should

reject that request for at least two reasons.[21]  First, amendment would be futile because Plaintiff's

claims are fatally flawed.  *See Marucci Sports*, 751 F.3d at 378 ("An amendment is futile if it

would fail to survive a Rule 12(b)(6) motion.").  Plaintiff's lawsuit proceeds upon the theory—

contrary to Facebook's rights under the First Amendment and the Communications Decency

---

[21] "[T]his Circuit examines five considerations to determine whether to grant a party leave to amend a complaint: 1)
undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4)
undue prejudice to the opposing party, and 5) futility of the amendment."  *Smith v. EMC Corp.*, 393 F.3d 590, 595
(5th Cir. 2004).

Act—that Facebook should be required by law to reactivate his accounts.  No amendment could cure that critical defect to Plaintiff's core theory of the case.  Moreover, Plaintiff's individual Causes of Action are riddled with fundamental pleading defects that no amendment is likely to cure.  *See* Section IV(B), *supra*.   Second, the Court should deny leave to amend because Plaintiff's prior amendments have failed to cure the deficiencies in his pleadings.  *See EMC Corp.*, 393 F.3d at 595.  To the contrary, Plaintiff's prior amendments have exacerbated those deficiencies by expanding his meritless lawsuit to include layers of additional baseless claims.  Plaintiff should not be afforded a fourth opportunity to state his case.

## VI.    CONCLUSION

For the foregoing reasons, Facebook respectfully requests that this Court grant this motion in its entirety and dismiss all claims and causes of action in the SAC.  Moreover, the Court should decline to grant Plaintiff leave to amend any one of his claims.

1635555

Dated:  February 3, 2021

Respectfully submitted,

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.
Texas Bar Number 00785097
glennthames@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone:  903 597-8311
Facsimile:  903 593-0846

KEKER, VAN NEST & PETERS LLP
Christopher C. Kearney - # 154101
ckearney@keker.com
W. Hamilton Jordan - # 295004
wjordan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

ATTORNEYS FOR DEFENDANT
FACEBOOK, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with this document via the Court's CM/ECF system pursuant to Local Rule CV-5. Service outside the court's electronic-filing system has been completed on February 3, 2021, per the Plaintiff's consent to electronic service, as follows:

Michael Moates at the following email addresses:
michael.moates@thenarrativetimes.org
michaelsmoates@gmail.com

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

30

1635555