# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| MICHAEL MOATES, <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No. 4:20-CV-00896-ALM-KPJ |

**DEFENDANT FACEBOOK, INC.'S**
**MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

1637924

## STATEMENT OF THE ISSUE PRESENTED

Whether this case should be transferred to the Northern District of California pursuant to the forum-selection clause in Plaintiff's contract with Defendant?

## INTRODUCTION

When Plaintiff created his Facebook accounts, he affirmed that he had read Facebook's Terms of Service ("Terms") and agreed to those Terms. Plaintiff also acknowledged that, by continuing to use Facebook's services, he assented to modifications of the Terms posted on the Facebook website. As relevant here, the Terms provide that any claim arising out of the use of Facebook's platform "will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Declaration of Jenny Pricer ("Pricer Decl.") Ex. C § 4.4. As the Supreme Court has recognized, such "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (emphasis added and alteration omitted). This is not an exceptional case, so it must be transferred to the Northern District of California.

## BACKGROUND

Defendant Facebook, Inc. operates a social media platform, through which users can share messages, photos, videos, and links to content on other websites. It is headquartered in California. *See* Pricer Decl. ¶ 3.[1] Plaintiff was a Facebook account holder. Second Amended Complaint ("SAC") ¶ 1. As part of the user-registration process in place when Plaintiff opened his accounts in 2014 and 2017, Plaintiff was required to acknowledge that he had read and agreed to Facebook's Terms. *See* Pricer Decl. ¶¶ 5, 10, 11. He was also required to

---

[1] *See also* Second Amended Complaint, Ex. T (Dkt. 20-21) ¶ 21; *id.* Ex. U (Dkt. 20-22) ¶ 17.

acknowledge that, by continuing to use Facebook's services, he assented to modifications to those Terms posted on the Facebook website. *Id.* ¶ 5. Indeed, as Plaintiff acknowledges, Facebook's Terms served as his "contract with the Defendant." SAC ¶ 36; *see also id.* at 39 (Fifth Cause of Action ¶ 3) (alleging that "Plaintiff entered into Facebook[']s Terms of Service").

Those Terms require that claims arising out of or relating to the use of Facebook's services be resolved in Northern California. Pricer Decl., Ex. C § 4.4. The Terms also provide that California law will govern any state-law claim. *Id.* In particular, the Terms state:

> For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products … you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

The Terms also provide that users "may not use [Facebook's] Products to do or share anything … [t]hat is unlawful, misleading, discriminatory, or fraudulent." *Id.* § 3.2.1. And they explain that Facebook "can remove or restrict access to content that is in violation of these provisions." *Id.* § 3.2. Further, if Facebook determines that a user has "clearly, seriously or repeatedly breached [Facebook's] Terms or Policies, including in particular [Facebook's] Community Standards," Facebook reserves the right to "suspend or permanently disable access" to the user's account. *Id.* § 4.2.

Plaintiff filed this lawsuit in November 2020, seeking equitable and injunctive relief for the disabling of his accounts on certain Facebook services, as well as damages for "fraudulent and unauthorized charges or attempted charges" for advertising on Facebook after his accounts were disabled. SAC ¶¶ 1–2, 8. According to Plaintiff, Facebook violated myriad state and

federal laws, as well as its own Terms, through these actions. *See id.* ¶¶ 1–3 (summarizing Plaintiff's case); *id.* at 33–44 (alleged causes of action).

## ARGUMENT

When Plaintiff signed up for and continued using Facebook's services, he contractually agreed (as Plaintiff himself concedes, *see* SAC ¶ 36) to bring any claims arising out of or relating to his use of those services in the courts of Northern California. This Court should hold Plaintiff to his agreement and transfer this case to the Northern District of California.

### I.  THE COURT SHOULD ENFORCE FACEBOOK'S FORUM-SELECTION CLAUSE

A forum-selection clause is properly enforced by a motion to transfer under 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co.*, 571 U.S. at 52. Although a court ordinarily evaluates a section 1404(a) motion by considering factors like the convenience of the parties and interests of justice, *id.* at 62, "[t]he calculus changes … when the parties' contract contains a valid forum-selection clause," *id.* at 63. Because such a clause "represents the parties' agreement as to the most proper forum," the Supreme Court has held that it "should be given controlling weight in all but the most exceptional cases." *Id.* (alteration omitted). In other words, so long as a forum-selection clause is valid and encompasses a plaintiff's claims, it should be enforced unless a plaintiff can show that "public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. Plaintiff cannot meet that burden here, as the public interest favors transferring the case to the Northern District of California. The Court should therefore enforce Facebook's forum-selection clause.

#### A.  Facebook's forum-selection clause is valid and encompasses Plaintiff's claims.

Forum-selection clauses are "prima facie valid." *ABC Rental Sys., Inc. v. Colortyme, Inc.*, 893 F. Supp. 636, 638 (E.D. Tex. 1995) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407

U.S. 1, 10 (1972)).  This principle applies equally in the context of consumer form contracts, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-595 (1991), including those in click-through user agreements like Facebook's Terms, *see, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-840 (S.D.N.Y. 2012) (collecting cases).  To show that Facebook's forum-selection clause is invalid, then, Plaintiff must "clearly show that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reason as fraud or overreaching."  *ABC Rental*, 893 F. Supp. at 638 (quoting *M/S Bremen*, 407 U.S. at 15).  Plaintiff offers no argument to that effect—let alone a clear showing.

Indeed, Plaintiff himself affirms that Facebook's Terms served as his "contract with the Defendant."  SAC ¶ 36; *see also id.* at 39 (Fifth Cause of Action ¶ 3) (alleging that Plaintiff "entered into Facebook[']s Terms of Service").  To be sure, Plaintiff alleges that Facebook breached this contract, *id.* at 40–42 (Sixth Cause of Action), but "by asserting a cause of action for breach of contract, Plaintiff necessarily implies his belief that the [contract—including the forum-selection clause—] is enforceable."  *Emrit v. Watts, Guerra, L.L.P.*, 2014 WL 3970172, at *2 (W.D. Tex. Aug. 13, 2014); *see also CK DFW Partners Ltd. v. City Kitchens, Inc.*, 2007 WL 2381259, at *6 n.16 (N.D. Tex. Aug. 17, 2007) ("If a material breach of a contract were deemed to excuse further performance of the contract's forum selection clause, forum selection clauses could essentially be rendered meaningless in actions for breach of contract."); *Beaubois v. Accolade Constr. Grp., Inc.*, 2016 WL 94255, at *1 (S.D.N.Y. Jan. 7, 2016) (courts "routinely enforce forum-selection clauses against plaintiffs alleging breach of contract").  Plaintiff also insists that "he is not bound by" Facebook's "current Terms of Service" because "he never consented nor received notification of [them]."  SAC ¶ 34(A).  That is incorrect for the reason explained above—i.e., that Plaintiff, in creating his Facebook accounts, affirmed that by

continuing to use Facebook's services, he assented to modifications of the Terms posted on the Facebook website. *See supra* p. 2. But it is also irrelevant for purposes of the forum-selection clause: That clause is not contained only in the current Terms (the only iteration Plaintiff asserts "he is not bound by," SAC ¶ 34(A)); the forum-selection clause was the same in all material respects when Plaintiff created his accounts and "entered into Facebook['s] Terms of Service," *Id.* ¶ 36 & p. 39 (Fifth Cause of Action ¶ 3). *See* Pricer Decl., Exs. A & B.

Plaintiff is correct that an agreement was formed (*see* SAC ¶ 36) when he opened his Facebook accounts: During the user-registration process, he saw a bright-blue, underlined hyperlink of the phrase "Terms of Use" that directed him to Facebook's terms of service, *see* Pricer Decl. ¶ 5, and he was required to acknowledge that he had read and agreed to those Terms, *id.*; *see also, e.g.*, *In re Facebook Biometric Privacy Litig.*, 185 F. Supp. 3d 1155, 1164-67 (N.D. Cal. 2016) (finding that the plaintiffs had "assented to the user agreement when they signed up for Facebook"); *Fteja*, 841 F. Supp. 2d at 838-840 (same); *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *7 n.20 (N.D. Cal. July 20, 2010) (same).

Numerous courts have accordingly held that Facebook's forum-selection clause is valid and enforceable. *See, e.g.*, *We Are the People, Inc. v. Facebook, Inc.*, 2020 WL 2908260, at *2 (S.D.N.Y. June 3, 2020); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1159-60 (D. Haw. 2018) (collecting cases); *Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (collecting cases); *Franklin v. Facebook, Inc.*, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015). This Court should do the same.

Facebook's forum-selection clause also encompasses Plaintiff's claims. Those claims are all grounded in Facebook's allegedly unlawful decision to disable Plaintiff's accounts on some of Facebook's services. *See* SAC ¶¶ 1–3. As explained, moreover, Plaintiff agrees that he

"entered into Facebook['s] Terms of Service," which served as his "contract with the Defendant," SAC ¶ 36 & p. 39 (Fifth Cause of Action ¶ 3), and he alleges that Facebook breached that contract by disabling his accounts, *id.* ¶ 38; *see also id.* ¶¶ 40–42. In other words, Plaintiff purports to sue Facebook to *enforce* Facebook's Terms. Given this, and the fact that Facebook's Terms allow for the disabling of accounts for breaches of Facebook's Terms or Community Standards, *supra* p. 2, this lawsuit plainly "arises out of or relates to [Facebook's] Terms," as well as to Plaintiff's use of "the Facebook Products." *See id.* (quoting Facebook's forum-selection clause).

Because Facebook's forum-selection clause is valid and enforceable here, this case should have been brought in—and must now be transferred to—the Northern District of California, unless Plaintiff can show that "public-interest factors overwhelmingly disfavor a transfer," *Atl. Marine Constr. Co.*, 571 U.S. at 67. He cannot.

### B. No extraordinary circumstances permit disregarding Facebook's forum-selection clause.

Where, as here, a forum-selection clause is valid and applicable, a plaintiff "bear[s] the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine Constr. Co.*, 571 U.S. at 64; *see also Carnival Cruise Lines*, 499 U.S. at 595 (party seeking to avoid a forum-selection clause bears a "heavy burden of proof"). In this analysis, "the plaintiff's choice of forum merits no weight" and a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine Constr. Co.*, 571 U.S. at 63–64. Thus, a court "may consider arguments about public-interest factors only," such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 64 & n.6. Such factors "will rarely defeat a

- 6 -

transfer motion," so the "practical result is that forum-selection clauses should control except in unusual cases." *Id*. at 64.  In other words, "a district court should transfer the case unless *extraordinary circumstances unrelated to the convenience of the parties* clearly disfavor a transfer." *Id.* at 52 (emphasis added).

There are no such extraordinary circumstances here.  To the contrary, it is in the public interest to enforce Facebook's forum-selection clause.  As an initial matter, the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 63.  Protecting parties' legitimate expectations is particularly important "for businesses with nationwide customers[,] to limit the risk and expenses of litigation under different laws in every state." *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010).  Indeed, because the services of web-based companies with social media platforms, like Facebook, can be accessed almost anywhere, "striking [Facebook's] forum-selection clause could wreak havoc on the entire social-networking internet industry" and force Facebook to "face litigation in every state in this country and in nations around the globe." *Miller v. Facebook, Inc.*, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010).  That would not only harm Facebook, it could also have "adverse consequences for the users of Facebook's social-networking site and for other internet companies." *Id.*; *see also Carnival Cruise Lines*, 499 U.S. at 593 (summarizing benefits of a forum-selection clause for multi-jurisdiction businesses *and their customers*).

The public-interest factors outlined in *Atlantic Marine Construction Company* confirm that this Court should transfer the case to the Northern District of California.  Facebook has experienced no "administrative difficulties," *Atl. Marine Constr. Co.*, 571 U.S. at 64 n.6, in resolving disputes in that forum, and the courts of the Northern District of California have

- 7 -

considerable experience handling lawsuits against Internet companies like Facebook. To the extent "local interest[s]" are at play, *Atl. Marine Constr. Co.*, 571 U.S. at 64 n.6, this case has greater ties to California, where Facebook principally operates and where most of the relevant witnesses and evidence are located. California-based courts are also more "at home with the law" of California, *id.*, which governs Plaintiff's state-law claims. *See supra* p. 2. To be sure, Plaintiff purports to bring his state law claims under *Texas* law, but he is bound by Facebook's Terms, SAC ¶ 36; *supra* p. 2, and those Terms provide that "the laws of the State of California will govern the[] Terms and any claim, without regard to conflict of law provisions," *supra* p. 2. *See also Emrit*, 2014 WL 3970172 at *2 (by asserting breach of contract, a plaintiff agrees that the contract is enforceable); *Atl. Marine Constr. Co.*, 571 U.S. at 64 ("when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules").

In short, this is not one of the "rare[]" cases (*id.* at 64) in which extraordinary circumstances permit a plaintiff to disregard a valid forum-selection clause. The case belongs in California.

## CONCLUSION

For the foregoing reasons, Defendant Facebook, Inc. respectfully asks that the Court hold Plaintiff to his contract and transfer this case to the Northern District of California.

- 9 -

Dated:  February 3, 2021

Respectfully submitted,

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.
Texas Bar Number 00785097
glennthames@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone:  903 597-8311
Facsimile:  903 593-0846

KEKER, VAN NEST & PETERS LLP
Christopher C. Kearney - # 154101
ckearney@keker.com
W. Hamilton Jordan - # 295004
wjordan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

ATTORNEYS FOR DEFENDANT
FACEBOOK, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with this document via the Court's CM/ECF system pursuant to Local Rule CV-5. Service outside the court's electronic-filing system has been completed on February 3, 2021, per the Plaintiff's consent to electronic service, as follows:

Michael Moates at the following email addresses:
michael.moates@thenarrativetimes.org
michaelsmoates@gmail.com

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

- 10 -

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), no meet and confer was required on the present motion because the Plaintiff is proceeding *pro se*.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

1637924