**U.S. DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

FILED
MAR 03 2021
Clerk, U.S. District Court
Eastern District of Texas

Mr. Michael Moates

    Plaintiff

v.

Facebook Inc.

    Defendant

Case No.: 4:20-cv-00896

**RESPONSE TO DEFENDANTS FACEBOOK INC.'S MOTION TO DISMISS**

    Defendant Facebook Inc. seeks to dismiss this lawsuit on multiple grounds. But the Motion for Dismissal makes many inaccurate statements and leaves out various claims that need to be addressed. Both the Plaintiff and Defendant agree on the legal standard for which a complaint must address in order to survive dismissal.

    It's important to note the defendants make a lot of arguments that should be made in a courtroom. The only standard the pleading is required to meet is to "present sufficient facts which, if taken as true, would indicate that a violation of law had occurred or that the claimant was entitled to a legal remedy." The Plaintiff has done such. The arguments about the First Amendment, Communications Decency Act, and all other excuses the Defendants have for violating the law are not relevant because the statements made argue that they broke the law. Once evidence is gathered in discovery the Plaintiff will be able to provide more information. The problem is the Defendants have stolen the evidence needed to answer many of their own questions.

### Response to Argument A

To start, Argument A is a result of the Defendants own actions. In the Defendants' Response to Plaintiff's Emergency Motion for Temporary Restraining Order, they stated "Defendants object to the incomplete evidence contained in the exhibits to the unverified amended complaint." To satisfy the Defendants, the Plaintiff included every piece of evidence including information that supported the timeline of such events. The Plaintiff could not only put forth part of these pieces of evidence as the Defendants stated object to incomplete evidence. They claim that the complaint is "difficult to follow" but were able to respond very clearly to the pleading without issue. The complaint is organized into sections and is supported by evidence and the law. The Defendants will argue that the pleading is not evidence, but the Plaintiff intends to use the governments pleading as a statement of facts and evidence. It will be treated as an affidavit from a 3rd party. Just like the declaration from Jenny Pricer, which included perjury I might add.

### Response to Argument B

Obviously, the Plaintiff and Defendant have different versions of which relief can be granted. It is important to note that the Defendants seek to dismiss this lawsuit due to information that is not provided. The problem here lies with the Defendants. Information that they are asking for such as the exact circumstances regarding fraud will come out in the discovery phase of the trial. The information the Plaintiff needs to support these claims is behind the Facebook login platform and since the Defendants decided to block the Plaintiff from the platform, he does not have the information he needs. But he will provide it once the Defendants turn it over in discovery. With regards to their question "the who, what, when, and where" it is clear the Defendant Facebook and its other corporations are the who, the what is described

- 2 -

generally as ads, when and where is information that the Defendant has seeked to hide from the Plaintiff.

The Plaintiff has already provided evidence that the Defendants have lied on multiple occasions. For example, Conrad Gibson made the promise in writing stating he was providing me with "information on how to request data from a closed account." Another example would be when Jenny Pricer made a declaration before the court "under penalty of perjury" that the Plaintiff created an account in 2017. This is simply inaccurate. There are many other lies and fraud that have been committed by the Defendant and the Plaintiff will endeavor to get this evidence for the court.

This court should not allow the Defendants to argue lack of evidence in a Motion to Dismiss when the evidence needed is as a result of the Defendants cover up and blocking of said accounts. It should be noted that the Plaintiff has requested the data needed multiple times to support his claims and the Defendants are refusing to provide said data. All of the information the Defendants seek is not present due to their own blocking of the Plaintiff.

**Response to Argument 2**

The Defendants response to the Plaintiffs second cause of action is simply without merit. The information does qualify, and the Plaintiff did support the trade secret argument by stating that 2 factor verification was enabled. This was a way of securing said data. The economic value has been discussed multiple times. For example, in the hearing on the Motion for Temporary Restraining Order the Plaintiff made clear that the data, email, name, analytic data was valuable because of the income from these pieces of information. In fact, the Defendants admit this when they stated in their Response on the Plaintiffs Motion for Temporary Restraining Order that the Plaintiff suffered "monetary loss" due to loss of access to said information. They claim they

don't understand what the lists or data pertain to but the Plaintiff made clear in the pleading that the information was in reference to pages and groups.

The Defendants then argue that their Terms of Service state:

> "[W]hen you share, post, or upload content that is covered by intellectual property rights on or in connection with our Products, you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings)."

I consider this misleading to the court. At best, they should know that the Plaintiff never agreed to these Terms of Service. The Plaintiff has only agreed to one set of the Terms of Service on 13 July 2014. As the courts have previously determined in Douglas v Talk America and Harris v Blockbuster, Inc, users cannot assent to terms that do not exist. I have never agreed to any Terms of Service beyond the initial Terms of Service in 2014. They cannot subsequently add this term and expect to hold me accountable to it without notification.

They again lie and mislead the court. They state "Moreover, Facebook's Terms—**to which Plaintiff agreed**—expressly provide that "under no circumstance will we be liable to you for any lost profits, revenues, information, or data . . . ." This is a bold face lie. The Plaintiff never agreed to such a statement. This is a second point of perjury the court should recognize.

### Response to Argument 3

Defendants make many assumptions with their response here. The Plaintiff showed facts that established he has multiple disabilities. He showed not only that Facebook operates a private

- 4 -

entity that requires public accommodation. They also assume the argument is based solely on Facebook.com, it is not. There are many different arguments that will be presented on the basis for which Facebook is a public physical place. At the very basic level, the Defendants argue there is no "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services" but they fail to address their office and in their lobby in which they provide services to Facebook members. Facebook argues that "Plaintiff's use of Facebook's online platforms is entirely unrelated to the accessibility of the physical properties Facebook occupies or operates, which are not otherwise open to the general public" again this statement is false[1][2][3][4][5]. You can see in the video with Laura Loomer that they have drinks for the public and the person directs her to fill out a form in their lobby. They are clearly open to the public. The Defendants claim that the Plaintiff did not make reasonable requests for accommodations, but this is not accurate. The Plaintiff submitted multiple requests for accommodations via the Facebook contact us form inside Facebook in the week prior to Facebook disabling his account. Facebook chose instead to segregate and disable his account rather than provide the accommodations.

Also, they address the concern of receiving ads based on disabilities incorrectly. For example, this is issue is not about failure to meet ADA requirements but rather discrimination based on disability.

**Response to Argument 4**

---

[1] https://www.youtube.com/watch?v=Xe1ALPemzOI
[2] https://www.youtube.com/watch?v=xK0RwubFi-U&list=PLb0IAmt7-GS1fAT0UHQNV2YOcx8CDjrWl
[3] https://www.youtube.com/watch?v=STm_Lu1X3HY
[4] https://www.youtube.com/watch?v=93-IeVey4_0
[5] https://www.youtube.com/watch?v=WCuvzENr4oY

The statute of limitations is irrelevant to the claims the Plaintiff brings in regard to the Sherman and Clayton Acts because the relief for such actions is not monetary but injunctive. As the Defendants admit, "there is no statute of limitations for antitrust claims seeking injunctive relief." The plaintiff disagrees with the assertion that he should have known. The Plaintiff was a minor child in high school. But this again is irrelevant as the relief sought is injunctive not monetary. The Plaintiffs request for injunctive relief is simple. Facebook should be ordered not to use its anti-trust mergers as a basis for wiping someone from the internet or making products bought useless. The Plaintiff once again disagrees with the Defendants, he did define an anti-trust market in multiple ways including, social networking, and journalism. The plaintive will be more specific once he has access to the relevant information that he needs from discovery. Many of the demographics that the Defendants seek are connected to the Facebook account that the Plaintiff no longer has access too. **This is due to the Defendants actions, not the Plaintiffs.** The Plaintiff has shown that these mergers not only injured him but relevant competition. Also, the Defendants state "The only harms Plaintiff alleges are tied to Facebook's decision to disable his account after he violated Facebook's policies" and the Plaintiff objects to this statement as the facts that he violated their polices are not in evidence.

The Plaintiff disagrees with the assertion that he is not a competitor of Facebook. It's important to note, that Facebook competes with many businesses in its newsfeed feature. This has been stated multiple times not only in the pleading but also in the initial hearing. They also pay for competition article to compete against journalism agencies. They then promote their own articles ahead of regular journalism agencies.

The Defendants claim, the Plaintiff has not alleged a relevant market. To that, the Plaintiff would ask did the Defendants review the pleading and evidence? The Defendants

further state, "Plaintiff concedes that he "had a page titled QAnon" and acknowledges that this violated Facebook's Terms." This could not be farther from the truth. First, the page did not violate any Terms that the Plaintiff agreed to. He simply attempted to delete the page as a courtesy at the request of the Defendants. The Plaintiff and Defendant agree, "[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." Where they disagree is that the Plaintiff holds that they choose to do business with the Plaintiff and by entering into a contract to provide services to the Plaintiff they had a legal obligation to follow through. The Defendants believe they can disregard contracts anytime they want and that is not acceptable, and the court should not allow it.

### Response to Argument 5

The data theft in the Plaintiffs fifth cause of action is very clear. The Defendants stole data that the Plaintiff owned and was entitled to. Facebook Employee Jenn Pricer admitted this when she submitted Ex. A to Pricer Declaration - Statement of Rights and Responsibilities 2013-11 as Attachment 2 on Docket 28. It states very clearly, "You own all of the content and information you post on Facebook…" If the Plaintiff "own(s) all of the content" then he has the legal right to said content and yet the Defendants have stolen that content and data in bad faith and in violation of the contract they agreed to with the Plaintiff. The Defendants also claim, "But as Plaintiff concedes, the Terms were subsequently modified, and the current and valid version of the Terms contain no such provision." The Plaintiff never agreed to any updated Terms of Service and again in keeping with in Douglas v Talk America and Harris v Blockbuster, Inc the Defendants cannot update the contract without getting the notification and consent of the Plaintiff.

With regard to due process and the Oversight Board, you can see here[6] that Facebook created a mutual assent valid offer that was accepted by the Plaintiff to arbitrate cases that are disputed between Facebook and its users that fall within the scope of its bylaws. This case squarely falls in line with its bylaws. Facebook CEO Mark Zuckerberg has described the Oversight Board as the Facebook Supreme Court that can adjudicate content disputes which Facebook admits is the reason for the Plaintiffs removal[7].

The Defendants claim, "Plaintiff claims that Facebook violated the DTPA by failing to abide by these same alleged contract representations. But "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." Ashford Dev., Inc. v. USLife Real Estate Servs. Corp., 661 S.W.2d 933, 935 (Tex. 1983). To the extent Plaintiff seeks to rely on any representation other than the aforementioned contractual provisions, he has failed to identify those representations with particularity under Rule 9(b). See Berry, 608 F. Supp. 2d at 800." The Plaintiff does not just allege a mere breach of contract, but rather fraudulent statements made in writing via email, misleading statements regarding advertising, etc. He has presented evidence to that effect. See exhibits F, G, H, I.

### Response to Argument 6

One thing that is important to note is that the Plaintiff only addresses statement of responsibilities that were in affect when he set up his account. As stated previously, he has not agreed to any other Terms of Service.

### Response to Argument 7

The Defendants claim "Plaintiff does not allege that any required disclosures were made exclusively on Mark Zuckerberg's Facebook profile" but the Plaintiff does allege just that. There

---

[6] https://about.fb.com/wp-content/uploads/2020/01/Bylaws_v6.pdf
[7] https://www.businessinsider.com/meet-the-first-20-members-of-facebook-supreme-court-2020-5

is information that was made public on Mr. Zuckerberg's profile that effects the value of the stocks the Plaintiff owns. Posting this information exclusively or even on the profile prior to anywhere else is a violation of the legal right the Plaintiff has to disclosure. It directly effects the values of the stocks because the Plaintiff cannot access Mr. Zuckerberg's profile. The information represented on Mr. Zuckerberg's profile is not the same as what is released publicly.

### Response to Argument 8

The argument here is simple. The law applies when Facebook is acting on behalf of the government.

### Response to Argument 9

It is very clear from the multiple documents that have been filed with the court the Plaintiff is challenging the constitutionality of the Communications Decency Act, Section 230. The fact that the Defendants numerously stated that the Plaintiff does not have a case because of the Communications Decency Act is wrong. Arguments for the constitutional challenge have not yet been heard in full and the idea that the Plaintiff doesn't have the right to due process on these claims is simply false. The Plaintiff has been blocked from commenting on multiple United States officers official Facebook accounts. This is applicable theory of law. The Plaintiff requests a hearing to make arguments regarding the constitutionality of the Communications Decency Act. Facebook and members of the Federal Government have blocked the Defendant from communicating with the federal government that is not a hypothetical, that is a fact. The Plaintiff will be in a better position to provide said information once the discovery phase takes place.

Whether or not the court enforces the Communication Decency Act, it nor the First Amendment are a blanket law that allow for fraud, violation of the Americans with Disabilities

Act, violation of the Sherman and Clayton Acts, breach of contract, or data theft. The court should proceed and allow this case to be heard.

For all the reasons listed above, the Plaintiff prays the court will deny the Motion to Dismiss. The Plaintiff also renews his request for a hearing on the matter.

*/s/ Michael Moates*

Michael Moates

2700 Colorado Boulevard #1526

Denton, TX 76210

(817)999-7534

michael.moates@thenarrativetimes.org

CERTIFICATE OF SERVICE:

The Plaintiff certifies to the court that the counsel of record has been sent the response via electronic mail which was consented to by the Defendant.

*/s/ Michael Moates*

Michael Moates