IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MICHAEL MOATES,<br><br>                Plaintiff,<br><br>  v.<br><br>FACEBOOK, INC.,<br><br>                Defendant. | Case No. 4:20-CV-00896-ALM-KPJ |

**DEFENDANT FACEBOOK INC.'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

1660077

Plaintiff Michael Moates repeatedly insists that once ample "evidence is gathered in discovery," he will "be able to provide more information" to substantiate the many claims set out in his Second Amended Complaint.  Response to Facebook's Motion to Dismiss ("Resp.") at 1; *see also id.* at 2, 6, 9.  But at the pleading stage, a complaint must set out "sufficient factual matter"—not mere legal conclusions—"which, when taken as true, states a claim to relief that is plausible on its face."[1]  *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).  As explained in Facebook's motion, Plaintiff's SAC fails to state a plausible claim for relief under any of the eight Causes of Action set out therein, each of which is fatally flawed.  None of the arguments in his Response can cure those defects.

**A.  The First Cause of Action (Fraud) Fails Under Rule 9(b)**

The heightened pleading requirement for claims sounding in fraud or mistake in Rule 9(b) ensures that the complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs."  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).  Here, this Court should hold Plaintiff to the bedrock "who, what, when, and where" pleading requirements and reject his attempt to salvage claims by claiming not to remember the content, timing, and circumstances of the alleged misrepresentations underlying his fraud Cause of Action.  *See* Resp. at 2–3.  Because the First Cause of Action fails to satisfy Rule 9(b), it must be dismissed.

Rather than defend his fraud claim on the merits, Plaintiff turns to levying baseless attacks on Facebook's credibility, claiming that Facebook has "lied on multiple occasions,"

---

[1] Throughout this brief, unless otherwise stated, emphases were added to quotations and internal punctuation, alternations, and citations were omitted from them.

including in correspondence with Plaintiff and in a sworn declaration submitted to this Court. *Id.* at 3. These accusations are groundless.[2] They are also irrelevant, because both statements that Plaintiff characterizes as "lies"—an October 23, 2020 email from Conrad Gibson (SAC Ex. F, p. 62) and the February 3, 2021 Declaration of Jenny Pricer submitted in support of the present motion (Dkt. No. 28-1)—post-date Plaintiff's alleged injuries and therefore cannot conceivably serve as the basis for any of the fraud theories set out in the First Cause of Action.

### B. Plaintiff Has No Viable Trade Secrets and Licensed His Content to Facebook

To show that he owns a trade secret (such that he can state a claim for trade-secret misappropriation), Plaintiff must plead facts to support a plausible inference that "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6)(B). Plaintiff's Response makes no attempt to indicate how his alleged trade secrets—unspecified "customer lists" and unidentified "analytical data," SAC at 34—derive independent economic value *from* being kept secret. It is not enough that the information is allegedly "valuable because of the income from these pieces of information." Resp. at 3.

Nor does Plaintiff grapple with the fact that—contrary to his obligation to "take[] reasonable measures under the circumstances to keep the information secret," Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6)(A)—he granted Facebook a license to use any uploaded content "that is covered by intellectual property rights." *See* MTD at 9. Although Plaintiff now disputes

---

[2] First, Plaintiff contends that a Facebook employee lied when he "made the promise in writing stating he was providing me with 'information on how to request data from a closed account.'" Resp. at 3. But as the underlying document makes clear, the Facebook employee did not "promise" anything to Plaintiff. See SAC Ex. F, p. 62. Moreover, the employee never represented that Facebook *would* return Plaintiff's data; he merely indicated how Plaintiff could request the return of such data. Second, Plaintiff accuses Facebook of perjury due to its sworn statement that Plaintiff created an additional Facebook account in 2017. Resp. at 3. Facebook stands by this statement, which is based on Facebook's records regarding the account https://www.facebook.com/michaelsmoates, which is a URL that Plaintiff provided to Facebook's counsel in November 2020 after filing this lawsuit.

that he agreed to the October 1, 2020 Terms referenced in Facebook's motion (*id.*), he admits agreeing to the Terms then in effect when he joined Facebook in 2014.  *See* Resp. at 4.  Those Terms similarly provide:

> For content that is covered by intellectual property rights . . . **you grant us a non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use any IP content that you post on or in connection with Facebook (IP License)**.  This IP License ends when you delete your IP content or your account unless your content has been shared with others, and they have not deleted it.

Pricer Decl., Ex. A § 2.1.[3]  In the face of this license, Plaintiff cannot plausibly allege that his "customer lists and analytical data"—the content and nature of which are still unknown to Facebook, due to Plaintiff's vague allegations—were subject to "reasonable measures under the circumstances to keep the information secret."  Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6)(A).  These flaws doom Plaintiff's trade-secret claim.

### C.  Plaintiff's Third Cause of Action (ADA Title III) is Baseless

Plaintiff now suggests that his ADA Title III claim is premised, at least in part, on the theory that Facebook's "office" and "lobby" constitute places of public accommodation for purposes of the Act.  Resp. at 4–5.  But even if Facebook's offices qualified as places of public accommodation (and they do not), the SAC contains no allegations that Plaintiff ever visited those offices, much less that he "was denied public accommodations by the defendant because of his disability" there.  *Bracken v. G6 Hosp. LLC*, 2016 WL 3946791, at *5 (E.D. Tex. June 3, 2016) (setting out the elements of an ADA Title III claim).  And as explained in Facebook's Motion, there is no "nexus" between Facebook's online platforms and physical spaces to justify

---

[3] Moreover, the November 15, 2013 Terms expressly provide that Plaintiff's "continued use of Facebook following changes to our terms constitutes [Plaintiff's] acceptance of our amended terms."  Pricer Decl., Ex. A § 14.3; *see also* Section E, *infra*.

application of the narrow and specific rule announced in *Robles v. Domino's Pizza*, LLC, 913 F.3d 898 (9th Cir. 2019).  *See* MTD at 11.

Nor does Plaintiff's Response add any color to his conclusory allegation that Facebook somehow violated the ADA by exposing him to targeted advertisements for pharmaceutical products like Cerebral and Vyvanse.  SAC at 36.  Nowhere does Plaintiff explain how his alleged receipt of those advertisements amounts to disability discrimination, much less how it constitutes an injury of the sort that is remediable by any provision of the ADA.  Indeed, Plaintiff does not allege that Facebook was even *aware* of his alleged disabilities prior to this lawsuit.

### D.  The Fourth Cause of Action (Antitrust Violations) Fails

#### 1.   Plaintiff's Antitrust Claims Remain Untimely

Plaintiff does not credibly dispute the fact that his claims are untimely.  His opposition argues only that the statute of limitations is irrelevant because he does not seek damages.  Resp. at 6.  But Facebook did not argue his claim for injunctive relief was barred by the statute of limitations, it argued the claim as a whole was barred by laches.  MTD at 13–14.  And it is the doctrine of laches that bars Plaintiff's claims for injunctive relief.  *See, e.g.*, *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958) ("[L]aches may be asserted by motion to dismiss for failure to state a claim—provided that the complaint shows affirmatively that the claim is barred").  As another federal court recently decided, comparable delays in challenging the Instagram and WhatsApp acquisitions by Facebook were unreasonable and warranted dismissal under the doctrine of laches.  *See Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 990-92 (N.D. Cal. 2020) (dismissing Clayton Act Section 7 and Sherman Act Section 2 claims in putative class action because laches barred a "challenge [to] Facebook's 2012 and 2014 acquisitions of Instagram and WhatsApp").

Plaintiff does not dispute that he challenges conduct that occurred over four years ago, creating a presumption that laches applies. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). Plaintiff's sole rejoinder is his unpled claim (Resp. at 6) that he was once a minor child in high school; but this does not excuse his years-long delay in bringing this action. Further, Plaintiff fails to offer any argument as to why the delay would not be prejudicial to Facebook, nor could he. Facebook has already acquired the assets in question, and courts routinely reject merger challenges by private plaintiffs based on laches, even when the case is brought before the acquisition closes, let alone years after the fact. *See, e.g.*, *Reveal Chat*, 471 F. Supp. 3d at 990-93; *Taleff v. Southwest Airlines Co.*, 828 F. Supp. 2d 1118, 1124 (N.D. Cal. 2011) (citing cases).

## 2. Plaintiff Has Not Alleged Causal Antitrust Injury

Plaintiff continues (Resp. at 6) to point to his individual injury—his claimed loss of access to Facebook's platforms—but makes no attempt to explain how his loss of access to Facebook could have been the result of diminished competition in the relevant market. This is plainly insufficient to state an antitrust claim. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) ("[A] plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."); *see also See Norris v. Hearst Tr.*, 500 F.3d 454, 468 (5th Cir. 2007) (no antitrust injury where plaintiff challenging acquisition failed to allege "any adverse effect on anyone else").

Instead, Plaintiff simply reasserts that the challenged acquisitions "not only injured him but relevant competition." Resp. at 6. But saying competition was harmed does not make it so. The Court need not and should not credit this conclusory allegation. *See Ashcroft v. Iqbal*, 556

- 5 -

U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").

### 3. Plaintiff's Relevant Markets Fail as a Matter of Law

Plaintiff's Response mischaracterizes Facebook's argument with respect to market definition. Facebook does not contend that Plaintiff failed to *name* relevant markets, but rather Plaintiff failed to meet the minimum pleading requirement of plausibly *defining* the purported product and geographic markets. *See PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) ("[T]o state an antitrust claim . . . [a] complaint must plausibly define the relevant product and geographic market"). Plaintiff alleges no facts in support of any geographic market or product market, nor does he make any attempt to define the contours of the market, who participates, and who does not. His contention (Resp. at 6) that he is a competitor of Facebook's in the markets alleged because "Facebook competes with many businesses in its newsfeed feature" is unpersuasive, both because Plaintiff also alleges Facebook is a monopolist *and* the Complaint fails to establish that Plaintiff is one of the "many businesses" with whom Facebook competes. This too dooms all of his antitrust claims. *See Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2002) ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is legally insufficient, and a motion to dismiss may be granted.").

### 4. The Complaint Does Not State an Antitrust Claim

Plaintiff fares no better in contending that he has plausibly alleged exclusionary conduct. Even assuming that Plaintiff and Facebook were competitors, Plaintiff concedes that Facebook has no duty to deal with him. Resp. at 7. To cure this fatal deficiency, Plaintiff attempts to

recast his theory of exclusionary conduct as akin to a breach of contract. But this effort is unavailing. A breach of contract is also not cognizable under the antitrust laws absent a duty to deal. *See, e.g.*, *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 733–34 (N.D. Tex. 2020) (a violation of a contractual obligation to license a patent is not an antitrust violation). Thus, Plaintiff's new argument runs into the same obstacle.

Indeed, Plaintiff never moves beyond his own grievances to explain how competition was affected by any of the challenged conduct. But "[a]n antitrust plaintiff must show not just that the defendants' actions injured him, but that they unreasonably restrained competition." *Kiepfer v. Beller*, 944 F.2d 1213, 1221 (5th Cir. 1991).

Finally, Plaintiff ignores Facebook's argument that the SAC does not state a Section 7 claim. MTD at 19. This is not an oversight. In his SAC, Plaintiff offers no facts to support the notion that there was any harm to competition because of the challenged acquisitions, or even that Facebook acquired competitors. *Id*. This remains insufficient. *See Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 493 (5th Cir. 1984) (Dismissal appropriate where plaintiff failed to allege that "the market is in such a condition that [the challenged acquisition] threatened competition").

### E.  Plaintiff Pleads No Facts Plausibly Suggesting "Data Theft" by Facebook

Plaintiff insists that he only agreed to Facebook's Terms one time, in 2014, when he first joined Facebook. Resp. at 4. But the Terms were explicit that Plaintiff would be bound by any subsequent amendments to those Terms, so long as he continued using Facebook:

> Your continued use of Facebook following changes to our terms constitutes your acceptance of our amended terms.

Pricer Decl., Ex. A § 14.3; *see also* Pricer Decl. ¶ 6. Accordingly, Plaintiff is bound by the subsequent amendments to Facebook's Terms.

- 7 -

But even if Facebook's Terms remained unchanged since Plaintiff joined Facebook in 2014, those Terms still reserved Facebook's right to remove user content or revoke users' access to Facebook at Facebook's sole discretion. *See, e.g.*, Pricer Decl., Ex. A § 5.2 ("We can remove any content or information you post on Facebook if we believe that it violates [these Terms] or our policies."); *id.* § 15 ("If you violate the letter or spirit of [these Terms], or otherwise create risk or possible legal exposure for us, we can stop providing all or part of Facebook to you."). Plaintiff's pleadings nowhere indicate how Facebook's exercise of these rights could possibly constitute "data theft" of any sort.

Next, in response to Facebook's argument that he fails to identify the contractual "due process" rights alluded to in the SAC (MTD at 20–21), Plaintiff provides a hyperlink to the January 2020 Bylaws of Facebook's Oversight Board. Resp. at 8 & n.6. But he fails to explain how those bylaws constitute any sort of contract between Plaintiff and Facebook. Nor does he point to a single provision in the bylaws that could be construed as granting Plaintiff any rights—"due process" or otherwise—that are enforceable in this Court.

Lastly, Plaintiff suggests that the communications in SAC Exhibits F, G, H, and I each constitute misrepresentations that are actionable under the DTPA. But he stops short of explaining how any one of these communications constitutes a "false, misleading, or deceptive act" that "constituted a ***producing cause*** of the consumer's damages." *See Hugh Symons Grp. Plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (summarizing the elements of a DTPA claim). Because the communications in Exhibits F, G, and H each post-date the deactivation of Plaintiff's accounts, those communications could not possibly have caused the alleged damages flowing from the account deactivation. Meanwhile, Exhibit I merely purports to contain a

receipt for advertising services purchased by Plaintiff. None of these documents suffices to support a claim for relief (for "data theft" or otherwise) under the DTPA or any other law.

### F. The Sixth Cause of Action (Breach of Contract) is Nonsensical

The SAC generally fails to provide *any* factual detail to support Plaintiff's scattershot accusations that Facebook violated its own Terms in numerous respects, including by "allow[ing] high profile sex offenders to join" Facebook and by not removing content that is bullying, harassing, violent, pornographic, or that otherwise violates Facebook's own community standards. MTD at 21–22 (quoting SAC at 41–42). In response, Plaintiff argues (again) that he is not bound by any Terms amendments occurring after 2014. In addition to being factually wrong,[4] this argument is legally irrelevant. Regardless of which Terms apply, the SAC lacks any facts plausibly showing that Facebook violated those terms, or that Plaintiff himself (and not some unspecified third party) was harmed by any such violations.

### G. Facebook Complies With Regulation FD (Which Plaintiff Cannot Enforce in Any Event)

Plaintiff completely ignores the fact that, according to a website cited in his own SAC, Facebook uses publicly accessible sources for purposes of complying with its disclosure obligations under Regulation FD. *See* MTD at 23. And he fails to allege a single fact supporting his theory that Facebook posted any material nonpublic information *exclusively* on Mark Zuckerberg's Facebook profile. Moreover, he offers no response to Facebook's argument that there is no private cause of action for a violation of SEC Regulation FD. *See id.* at 22–23.

---

[4] *See* Section E, *supra* (describing Plaintiff's agreement to be bound by subsequent amendments if he continues using Facebook).

1660077

### H. Plaintiff's Right to Privacy Claim Fails Because He Has Not Plausibly Alleged Facebook Acted on Behalf of the Government

Confronted with the requirement that he allege state action to support his Texas constitutional claim (*id.* at 23–24), Plaintiff merely argues—without providing any examples or explanation—that "[t]he law applies when Facebook is acting on behalf of the government." Resp. at 9. Nowhere does Plaintiff's SAC allege facts plausibly suggesting that Facebook was acting on behalf of any government at any point or in any capacity.

### I. Plaintiff Cannot Ignore Facebook's Statutory and Constitutional Defenses

Instead of engaging with Facebook's well-supported arguments under the First Amendment and Section 230 of the Communications Decency Act, both of which foreclose all the relief he seeks here (MTD at 24–28), Plaintiff argues that those defenses are not "relevant" at the pleadings stage, in part because his constitutional challenge to the CDA has "not yet been heard in full." Resp. at 1, 9. To the contrary, courts routinely apply the First Amendment and Section 230 at the pleadings stage to dismiss meritless lawsuits like this one. *See, e.g.*, *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1116–20 (N.D. Cal. 2020) (applying Section 230 and dismissing claims); *King v. Facebook, Inc.*, 2019 WL 4221768, at *1 (N.D. Cal. Sept. 5, 2019) (same); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 995 (S.D. Tex. 2017) (same); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y. 2014) (applying First Amendment and granting Rule 12 motion for judgment on the pleadings); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629–30 (D. Del. 2007) (applying First Amendment and granting-in-part motion to dismiss). This Court should apply the First Amendment and the Communications Decency Act and dismiss the SAC.

Dated:  March 17, 2021

Respectfully submitted,

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.
Texas Bar Number 00785097
glennthames@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone:  903 597-8311
Facsimile:  903 593-0846

KEKER, VAN NEST & PETERS LLP
Christopher C. Kearney - # 154101
ckearney@keker.com
W. Hamilton Jordan - # 295004
wjordan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

ATTORNEYS FOR DEFENDANT
FACEBOOK, INC.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with this document via the Court's CM/ECF system pursuant to Local Rule CV-5. Service outside the court's electronic-filing system has been completed on March 17, 2021, per the Plaintiff's consent to electronic service, as follows:

Michael Moates at the following email addresses:
michael.moates@thenarrativetimes.org
michaelsmoates@gmail.com

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

- 11 -

1660077