# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| MICHAEL MOATES,<br><br>                Plaintiff,<br><br>     v.<br><br>FACEBOOK, INC.,<br><br>                Defendant. | Civ. Action No. 4:20-cv-00896-ALM-KPJ |

**DEFENDANT FACEBOOK, INC.'S REPLY IN SUPPORT OF
ITS MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

1663604

## INTRODUCTION

Plaintiff does not dispute that he agreed to a contract with Facebook containing a forum-selection clause. That clause states that any claim arising out of the use of Facebook's platform "will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Pricer Decl., Ex. C § 4.4. Because the forum-selection clause is valid and encompasses Plaintiff's claims, *see* Mot. to Transfer at 3–6, it must be enforced unless Plaintiff can show that "public-interest factors overwhelmingly disfavor a transfer," *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013). He cannot. This case should therefore be transferred to the Northern District of California.

## ARGUMENT

### I. Plaintiff's Travel-Related Arguments Are Misplaced

Plaintiff's primary argument is that transfer should be denied because it is "impossible" for him to attend court proceedings in the Northern District of California. Opp. at 1. That argument is both factually and legally off-base.

As to the facts, Plaintiff can litigate this case remotely. The Northern District of California has for months operated under General Order No. 72-6, which states that all civil "[h]earings will be held via telephone or videoconference." U.S. District Court for the Northern District of California, General Order No. 72-6 (Sept. 16, 2020).[1] It is therefore exceedingly unlikely that Plaintiff would be required to appear in person during the present public health emergency (let alone prior to the widespread availability of a COVID-19 vaccine). Facebook's counsel, for example, have not appeared in person in the District for more than a year. Further, *pro se* parties may now utilize electronic filing without prior permission, or they may mail

---

[1] *Available at* https://cand.uscourts.gov/wp-content/uploads/general-orders/GO_72-6_In_Re_COVID_Public_Health_Emergency_9-16-2020.pdf.

- 1 -

filings. *See* General Order No. 72-6; *see also* U.S. District Court for the Northern District of California, General Order No. 73 (May 21, 2020).[2] Transferring this case to California would therefore not necessitate Plaintiff's travel to California during the public health emergency.

In any case, Plaintiff's arguments regarding the inconvenience of litigating in the Northern District of California are also irrelevant as a matter of law. As the Supreme Court has instructed, where, as here, a forum-selection clause is valid and applicable, a court "should not consider arguments about the parties' private interests," *Atl. Marine Constr. Co*, 571 U.S. at 64, including any contentions "[]related to the convenience of the parties," *id.* at 52. Instead, the court "must deem the private interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Accordingly, even if Plaintiff's travel-related objections had merit as a matter of fact—and they do not—his arguments are beside the point as a matter of law.

## II. Plaintiff's Remaining Objections To The Forum-Selection Clause Are Baseless

Plaintiff makes various threshold arguments contesting the enforceability of the forum-selection clause. *See* Opp. at 3-6. But as noted in Facebook's motion, "by asserting a cause of action for breach of contract, Plaintiff necessarily implies his belief that the [contract—including the forum-selection clause—] is enforceable." *Emrit v. Watts, Guerra, L.L.P.*, 2014 WL 3970172, at *2 (W.D. Tex. Aug. 13, 2014). Plaintiff cannot dispute that the Terms of Service apply to him when his claims are premised on that very contract. *See* SAC at 39 (Fifth Cause of Action); *id.* at 34 (Second Cause of Action); *id.* ¶ 36.

In any event, Plaintiff's threshold enforceability arguments fail on their own terms. The *force majeure* clause Plaintiff identifies is not in the contract at issue (i.e., Facebook's Terms of Service), and it would not apply here even if it were: Facebook does not seek to hold Plaintiff

---

[2] *Available at* https://cand.uscourts.gov/wp-content/uploads/general-orders/GO_73_amended_5-21-2020.pdf (providing for filing by mail).

"liable" for anything. *See* Facebook Advertising Terms and Conditions ("[N]either party will be liable for any . . . default in the performance of its obligations if such . . . default is caused by conditions beyond its reasonable control . . . (collectively, 'Force Majeure')").[3] Nor does the authority Plaintiff cites in support of his *force majeure* argument (Opp. at 4) help him. In *Conduent Business Services, LLC v. Skyview Capital LLC*, the Delaware Court of Chancery issued an oral ruling finding a forum selection clause nonbinding with respect to a plaintiff's request for emergency relief because the designated forum was *entirely closed* to new civil cases involving expedited proceedings. Transcript of Order, No. 2020-0232-JTL, at 33-34 (Del. Ch. Mar. 20, 2020). As the court made clear, however, "everyone agree[d]" the forum selection clause would control were the designated forum "[]available," *id.*, as it is here.

The frustration-of-purpose and impossibility doctrines are similarly inapplicable. *See* Opp. at 4. Plaintiff has not identified an intervening event that frustrated the purpose of his agreement with Facebook, nor has he demonstrated the sort of "excessive and unreasonable expense" that would render compliance with the forum-selection clause impossible. *Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 96 Cal. Rptr. 3d 813, 843 (Cal. Ct. App. 2009); *see id.* (impossibility applies "when performance would require excessive and unreasonable expense"). Indeed, even if Plaintiff's travel-related concerns were cognizable under these doctrines, *but see id.*, his objections are inapposite for the reasons explained, *see supra* pp. 1–2.

Plaintiff also appears to argue that forum-selection clauses in form contracts are necessarily unconscionable (Opp. at 5–6), but the Supreme Court has rejected that argument. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-595 (1991). Courts routinely enforce such provisions, including Facebook's Terms. *See* Mot. to Transfer at 3–4 (collecting

---

[3] *Available at* https://www.facebook.com/business/direct_terms_ads_en.php.

cases); *see also Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 63 (D.D.C. 2014) (enforcing forum-selection clause in YouTube terms of service and noting that "courts routinely enforce such terms in form contracts"); *Evans v. Linden Rsch., Inc.*, 763 F. Supp. 2d 735, 740–741 (E.D. Pa. 2011) (finding forum-selection clause in click-through terms of service conscionable under California law).

Plaintiff's authority is not to the contrary. *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965), merely states the general rule that *some* form contracts are "so extreme as to appear unconscionable according to the mores and business practices of the time and place," *id.* at 449-450 (internal quotation marks omitted). Forum-selection clauses, however, are common in form contracts, including terms of service, and Plaintiff does not explain how or why the contract at issue here falls outside current mores and business practices. The other case cited by Plaintiff, *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007), simply quotes the same general rule and is equally unhelpful to Plaintiff: The *Phillips* court *enforced* the disputed forum-selection clause as to all claims within the provision's "ambit." *Id.* at 393. Here, all of Plaintiff's claims are covered by the forum-selection clause because they are grounded in Facebook's allegedly unlawful decision to disable Plaintiff's accounts on some of Facebook's services. *See* Mot. to Transfer at 5–6; SAC ¶¶ 1–3. Plaintiff does not argue otherwise.

Finally, Plaintiff argues that "[t]he public interest favors using the State of Texas as a venue for this litigation." Opp. at 4. To be sure, a court may consider such arguments even in the context of a valid and applicable forum-selection clause. *Atl. Marine Constr. Co.*, 571 U.S. at 64. But a plaintiff bears the burden of showing that the "public-interest factors *overwhelmingly* disfavor a transfer," *id.* at 67 (emphasis added)—a standard that will only "rarely" be met in "the most exceptional cases," *id.* at 63-64 (emphasis added). Plaintiff's

- 4 -

argument comes nowhere close to that exacting standard. He identifies three points that he says suffice: (1) he brings Texas statutory claims; (2) Texas does not have a mask mandate; and (3) Texas is "100% open with no plans to close down." Opp. at 4. But none is an "exceptional factor[]" warranting the disregard of a valid forum-selection clause, *Atl. Marine Constr. Co.*, 571 U.S. at 62.

As to the first, "federal judges routinely apply the law of a State other than the State in which they sit," *id.* at 67, and Plaintiff has not identified "any exceptionally arcane features of Texas . . . law that are likely to defy comprehension by a federal judge sitting in" the Northern District of California, *id.* at 68. Moreover, *California* law governs Plaintiff's common law claims, *see* Pricer Decl., Ex. C § 4.4, so the public interest would be better served by litigating those aspects of the case in a California court. Nor do Plaintiff's latter two contentions favor Texas as a forum. Litigation can proceed in the Northern District of California under that court's COVID-19 protocols, and Plaintiff has identified no way in which Texas's current public health measures would benefit these proceedings. This case, in short, is not the sort of "localized controversy" that Texas federal courts have a strong interest in adjudicating—let alone an overwhelming one. *Atl. Marine Constr. Co.*, 571 U.S. at 62 n.6. Facebook's forum-selection clause should therefore "be given controlling weight." *Id.* at 63 (alteration omitted).

## CONCLUSION

For the reasons explained here and in Facebook's Motion to Transfer, Defendant Facebook, Inc. respectfully requests that the Court grant Facebook's motion and transfer this case to the Northern District of California.

Dated:  March 17, 2021 

Respectfully submitted,

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.
Texas Bar Number 00785097
glennthames@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone:  903 597-8311
Facsimile:  903 593-0846

KEKER, VAN NEST & PETERS LLP
Christopher C. Kearney - # 154101
ckearney@keker.com
W. Hamilton Jordan - # 295004
wjordan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

ATTORNEYS FOR DEFENDANT
FACEBOOK, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with this document via the Court's CM/ECF system pursuant to Local Rule CV-5. Service outside the court's electronic-filing system has been completed on March 17, 2021, per the Plaintiff's consent to electronic service, as follows:

Michael Moates at the following email addresses:
michael.moates@thenarrativetimes.org
michaelsmoates@gmail.com

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

1663604